**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

JANE DOE (T.W.), an individual,

                   Plaintiff,                        Case No. 5:24-cv-0008-BJB

     v.

WYNDHAM HOTELS AND RESORTS, INC.,
WYNDHAM HOTEL GROUP, LLC; et al.

                   Defendants.

## STATEMENT ON ORAL ARGUMENT

Plaintiff has requested oral argument. The Wyndham Defendants do not believe that oral argument would aid the Court in resolving the issues of law and pleading deficiencies raised in their Motion to Dismiss. Of course, the Wyndham Defendants will abide by the Court's preferences.

## WYNDHAM DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants, Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, and Super 8 Worldwide, Inc. (collectively, the "Wyndham Defendants") for their Reply brief in support of their Motion to Dismiss, state as follows:

## I.    INTRODUCTION

Plaintiff has not stated a claim for "participant" liability against the Wyndham Defendants under section 1595(a) of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), for several reasons:

- Participant liability requires Plaintiff to "connect the dots" between the Wyndham Defendants and Plaintiff's alleged traffickers, *i.e.*, that

the Wyndham Defendants actively participated in a venture that trafficked her;

- Knowledge, whether actual or constructive, requires Plaintiff to show that the Wyndham Defendants knew or should have known about the venture that is alleged to have been trafficking Plaintiff, as opposed to general awareness of human trafficking in the hotel industry;

- A franchisor acting in accordance with a franchisee agreement is not sufficient to establish agency liability under Kentucky or federal common law; and

- Plaintiff's time-barred claims are not saved by the application of the continuing tort doctrine, which has not been adopted by the Sixth Circuit in the context of the TVPRA.

Section 1595 provides victims of sex trafficking with a private cause of action in limited situations. Section 1595 does not impose strict liability against hotels, let alone franchisors, for failing to prevent trafficking. Taking all the allegations in the Complaint as true, Plaintiff cannot impose liability under the TVPRA against a franchisor and its parent companies like the Wyndham Defendants[1] based on general industry knowledge or suggestions that crime may have occurred at the franchised hotel at issue. Plaintiff has failed to state a claim against the Wyndham Defendants upon which relief can be granted, and this Court should dismiss her Complaint against them.

## II.    ARGUMENT

### A. Plaintiff failed to plead claim for "participant" liability.

#### 1. Plaintiff does not plausibly allege facts showing the Wyndham Defendants participated in a venture that violated Section 1591.

To state a civil TVPRA claim, a plaintiff must plausibly allege a defendant's "participation in a venture" with one or more criminal traffickers. *See* 18 U.S.C. § 1595(a). To plausibly show a

---

[1] Wyndham Hotels & Resorts, Inc. currently is the ultimate parent company, Wyndham Hotel Group, LLC is a subsidiary and the direct parent of Super 8 Worldwide, Inc., the franchisor of the Super 8® brand.

"venture" between a hotel operator (as opposed to a franchisor or the parent of a franchisor) and a trafficker, a complaint must "at least" allege "a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *L.H. v. Red Roof Inn., Inc.*, No. 3:22-CV-625, 2023 WL 5725574, at \*9 (W.D. Ky. Sept 5, 2023); *M.A. v. Wyndham Hotels & Resorts, Inc.* 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019); *J.B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2020 WL 4901196, at \*9 (N.D. Cal. Aug. 20, 2020). A "venture" is "an undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021) ("*Red Roof*"). A TVPRA plaintiff must "connect the dots" between her trafficking experience and a franchisor to satisfy the "participation in a venture" element. *L.H.*, 2023 WL 5725574, at \*6. Allegations that a defendant failed to prevent sex trafficking, engaged in "passive nonfeasance," or provided routine/standard services are not enough. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 1220-21 (2023) ("[O]ur legal system generally does not impose liability for mere omissions, inactions, or nonfeasance; although inaction can be culpable in the face of some independent duty to act, the law does not impose a generalized duty to rescue."); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 563 (7th Cir. 2023) ("'mere passive nonfeasance' or an 'arm's length, passive, and largely indifferent' relationship with the criminal" is not enough to show participation under Section 1595).

In attempting to show participation in this case, Plaintiff alleges two different types of ventures involving the Paducah Super 8® (the "Ky Motel Property"). First, Plaintiff alleges that the Wyndham Defendants engaged in a business relationship with Plaintiff's alleged traffickers[2]

---

[2] Plaintiff identifies her trafficker as a single individual, Bobby Ward, but the Complaint repeatedly alleges that the Wyndham Defendants knew or should have known about the criminal actions of more than one alleged trafficker without identifying anyone other than Ward. *Compare, e.g.* Complaint ¶ 30 to ¶¶ 117-120. The Complaint uses the word "widespread" 48 separate times,

because the franchisee continued to rent rooms to them and provided standard hotel services, "in a way that made the [Ky Motel Property] a favorable venue for trafficking …." (ECF # 35, p. 9). Plaintiff calls this "Venture 1." (*Id.* at pp. 7-10).  Plaintiff characterizes the Wyndham Defendants as being "intimately involved" with the operations of the Ky Motel Property because the Wyndham Defendants allegedly controlled the guest reservation system, check-in, and payment process, among other processes. *See e.g.* Complaint ¶ 96.[3]  Plaintiff then asks the Court to accept the illogical inference that the Ky Motel Property must have been a hospitable environment for criminal traffickers due to the operational aspects that the Wyndham Defendants allegedly controlled, and thus the Wyndham Defendants facilitated Plaintiff's alleged trafficking. (*See also e.g.* ECF 35 at p. 10). This reverse-engineering of allegations fails to "connect the dots" between Plaintiff's alleged sex trafficking and the Wyndham Defendants. *E.S. v. Best W. Int'l, Inc.,* 510 F. Supp. 3d 420, 428 (N.D. Tex. 2021); *K.B. v. Inter-Cont'l Hotels Corp.*, No. 19-CV-1213-AJ, 2020 WL 8674188, at *5 (D.N.H. Sept. 28, 2020).[4]  These types of conclusory allegations without factual support for how a *franchisor*, as opposed to the franchisee, acted are not sufficient to withstand a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The Court in *Red Roof* rejected similar allegations as a basis for stating a claim against hotel brand owners:

including in a conclusory manner to describe the trafficking that supposedly occurred at the Paducah ABV Inn, at the Paducah Super 8®, and at all of the Defendants' branded properties. *See e.g. id.* at ¶ 53.

[3] The Wyndham Defendants did not directly rent rooms to guests at the Ky Motel Property and have no control over day-to-day operations at this franchised location.

[4] Plaintiff's reliance on *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672, 2023 WL 3456619 (E.D. Cal. May 15, 2023) is unavailing.  Plaintiff *J.M.* alleged that the hotel staff "not only witnessed her being trafficked but helped her trafficker perpetrate the crime," including by instructing johns to "hurry up" as they entered and left her room.  *Id.* at *1-2.  There are no such allegations here.  *Doe v. Rickey Patel, LLC*, No. 0:20-60683, 2020 WL 6121939 (S.D. Fla. Sept. 30, 2020) found sufficient more detailed allegations related to the franchisee's knowledge of the Plaintiff's trafficking.  *Id.* at *1.

They also alleged that each of the franchisors "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at the hotels. These allegations may suggest that the franchisors financially benefitted from renting hotel rooms to the Does' sex traffickers. But they do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures.

*Red Roof*, 726-27; *see also B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) ("While these allegation[s] might be sufficient to state a plausible claim against the specific hotels where Plaintiff was trafficked (who Plaintiff has not sued), they do not make a plausible claim that Wyndham and Choice directly participated in a venture that *trafficked B.M.* at the specific facilities she alleges her traffickers used."); *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024).[5]

Second, Plaintiff offers a "commercial venture" theory ("Venture 2") based on the argument that the Wyndham Defendants and the franchisee, Ky Motel,[6] shared the objective of maximizing revenue. ECF # 35, p 11. Of course, this is true of every franchisor-franchisee relationship. The existence of a franchisor/franchisee relationship is not sufficient to establish participation.[7] Plaintiff's allegations of routine or passive acts by the Wyndham Defendants, such as conclusory allegations of controlling the guest reservation, check-in, and payment processes, are not sufficient. *See e.g.* Complaint ¶ 96. Plaintiff's "commercial venture" theory equates failing to prevent sex trafficking with facilitating sex trafficking. *See* ECF # 35, p. 13. *See, e.g., A.B. v.*

---

[5] Plaintiffs dispute the precedential value of *Riti* as an unpublished opinion, citing to the Internal Operating Procedures of the Eleventh Circuit. *See* ECF # 35 at p. 11. Even if the Eleventh Circuit's procedures applied (they do not), *Riti*'s holding is consistent with the "passive nonfeasance" distinction highlighted by the Seventh Circuit in *G.G.*, 76 F.4th at 563.

[6] Ky Motel denies that it operated or maintained control over the Paducah Super 8® during the relevant timeframe, claiming it sold the property as a lease to purchase option to a company called Vidhi, Inc. effective February 11, 2011. *See* ECF # 8.

[7] Plaintiff relies on *C.T. v. Red Roof Inns, Inc.*, 2:22-cv-834, 2023 WL 3510879 (M.D. Fla. March 11, 2023) to claim that a "venture to operate hotels" is sufficient to show the existence of a venture, but it is insufficient to establish the participation element. *Id.* at *4.

*Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020) ("We do not read the Act as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking.").

Plaintiff relies on the Seventh Circuit's opinion in *G.G.* to support this theory, but *G.G.* supports dismissal under the facts alleged here. *G.G.* distinguished defendant Salesforce's extensive support of Backpages' business which "was almost exclusively a sex-trafficking business" from the relationship between a franchisor and franchisee, where the franchisor is "one step removed" from the traffickers. *G.G.*, 76 F.4th at 560-62. There are no plausible allegations in this case that the franchisee was a sex trafficking business. Simply, there are no well-pled facts that could suggest that the Wyndham Defendants participated in a venture or even that they had a continuous or "tacit agreement" with Plaintiff's alleged traffickers. Thus, her TVPRA claim fails.

### 2. Plaintiff failed to plausibly allege the Wyndham Defendants had actual or constructive knowledge of a violation of the TVPRA involving Plaintiff.

Plaintiff has also failed to plausibly allege actual or constructive knowledge. A participant liability claim requires well-pled allegations showing the Wyndham Defendants *themselves* "knew or should have known" that the venture in which they are alleged to have participated was violating Section 1591 by trafficking Plaintiff. *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F.Supp.3d 921, 938 (D. Or. 2020) ([A]lthough Plaintiff's allegations indicate that Defendants had notice of sex trafficking generally occurring at their hotels, Plaintiff has not alleged facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants."). The Complaint fails to do so.

As a preliminary matter, there are no allegations even suggesting that the Wyndham Defendants had actual knowledge of participating in a venture that trafficked Plaintiff. (*Cf.* ECF # 35, p. 13 (claiming that Ky Motel had actual knowledge of the trafficking or was at least willfully

blind to it)). Rather, Plaintiff alleges the Wyndham Defendants had the required knowledge at the so-called "venture level" based on Plaintiff's allegation of "widespread trafficking" at the Ky Hotel Property. The Complaint's allegations, however, are conclusory and lack supporting details. *Compare e.g.* Complaint ¶ 70 ("Sex trafficking was widespread and pervasive at the Paducah Super 8 specifically") *with* ¶ 60 (citing news stories about arrests at other Wyndham properties) *and* ¶ 62 (enumerating reviews with complaints of illegal activities at other Super 8® branded hotels). *See A.B.*, 484 F.Supp.3d at 938. Moreover, the TVPRA makes clear that knowledge cannot be general, but must be specific to the venture and the Plaintiff. *See .e.g., H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020) (explaining that, under Section 1595(a), "a plaintiff must plead facts showing that the defendant knew or should have known of sex trafficking *by the particular venture in which the defendant allegedly participated*" (emphasis in the original)). To meet this requirement, Plaintiff must plausibly plead that the Wyndham Defendants knew or should have known about trafficking crimes committed by Plaintiff's traffickers. *S.J.*, 473 F.Supp.3d 147, 154 (E.D.N.Y. 2020). This requirement is not limited to cases where the alleged venture only involved the plaintiff. 18 U.S.C. 1595(a); *A.D.*, 2023 WL 2991042, at *2. The Wyndham Defendants' alleged failure to fully combat human trafficking on all branded properties does not equate to actual or constructive knowledge that Plaintiff was trafficked. *Cf.* Complaint ¶¶ 68-84.

Plaintiff's generic allegations about "red flags" of trafficking at the Ky Motel Property are similarly insufficient to satisfy the knowledge requirement. It is not enough to allege "knowledge or willful blindness of a general sex trafficking problem in low-budget lodgings…." *S.J.*, 473 F. Supp. 3d at 154. Plaintiff must tie these "red flags" to the Wyndham Defendants or explain how these observations connect to her alleged trafficking. *L.H.*, 2023 WL 5725574, at *6. Yet, there

are no well-pled allegations about Plaintiff's alleged trafficking at the Ky Motel Property in the Complaint. Plaintiff alleges that "staff and management" of the Ky Motel Property (*i.e.* the franchisee) observed her, Complaint ¶ 32; *cf.* ¶ 41 (enumerating warning signs and indicators of sex trafficking, none of which Plaintiff alleges as to her experience at the Ky Hotel property) and that her alleged trafficker operated with little regard for concealment …." *Id.* at ¶ 72. Plaintiff further alleges that there were "other victims being trafficked" who, "upon information and belief" exhibited "red flags" of trafficking observed by franchisee hotel staff and management, such as "paying with cash or prepaid cards, having high volumes of men who [were] not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs …." *Id.* ¶ 74.

Allegations on information and belief are not well-pled, but, even if the Court accepts Plaintiff's allegations of "red flags," Plaintiff does not allege that the Wyndham Defendants had actual or constructive knowledge. Rather, Plaintiff alleges the Wyndham Defendants "should have known" of the red flags because of the "robust channels" that they use to monitor the hotel and because Ky Motel was required to report signs of sex trafficking. *See* ECF 35 at pp. 17-18. The Complaint does not set forth well-pled allegations that Ky Motel, Inc. (or whomever was operating the property) was aware of trafficking and reported it, or that, those reports (if made) would have revealed Plaintiff's alleged trafficking. The Complaint fails to allege any facts showing that the Wyndham Defendants knew or should have known about Plaintiff or her trafficker. *See A.B.*, 484 F. Supp.3d at 939 ("To support her direct liability theory, Plaintiff must allege facts showing how Hilton, Wyndham, Marriott, and Red Lion received notice that Plaintiff A.B. was trafficked at their respective properties and she has not done so.").

Plaintiff next argues that her trafficking was "knowable with the exercise of ordinary diligence." This argument, along with other statements in the Response Brief, misconstrues the TVPRA as creating affirmative duties on franchisors that have no basis in the law. (*See also* ECF # 35, p. 14 ("Defendants had a duty to **stop profiting** by **facilitating** what they **should have known** was trafficking.") (emphasis in original)). Section 1595 does not impose a general affirmative duty on franchisors to prevent sex trafficking; rather, it allows civil liability for wrongful conduct. 18 U.S.C. 1595(a). Nothing in the statutory language supports the heightened common law duties or statutory affirmative duties Plaintiff seeks to impose here.

Finally, Plaintiff argues that the Ky Motel Property's alleged knowledge of Plaintiff's trafficking can be imputed to the Wyndham Defendants under agency principles. But, as discussed below, the Wyndham Defendants cannot be vicariously liable for alleged conduct of the franchisee. *See, e.g.*, *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022) (finding that the plaintiff's indirect liability claims "come up short" because, at most, the plaintiff alleged the "ability to maintain consistent brand standards without creating an agency relationship"); *H.G.*, 489 F. Supp. 3d at 708 (dismissing TVPRA claim based on agency because the plaintiff "failed to plausibly allege" that the franchisor defendants had "'day-to-day' control" over the franchised hotels); *S.J.*, 473 F. Supp. 3d at 156 (dismissing the TVPRA claim based on agency because the plaintiff's allegations, "even if proven true, would fail to sufficiently demonstrate that the franchisor defendants exercised [] complete control over the day-to-day operations of the franchisee's business" (internal quotations omitted)). And even if the Wyndham Defendants could be vicariously liable for the actions of a franchisee (they cannot), imputing the franchisee's knowledge to the Wyndham Defendants goes one step further, and Plaintiff cites no cases supporting this argument in the context of a TVPRA claim.

### B.  Plaintiff's Vicarious Liability Claims Fail

Plaintiff's Response offers no basis for departing from a general rule that a franchisee is not an agent of a franchisor.  *See Red Roof*, 21 F.4th at 727; *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 56 (Ky. 2008).   Instead, establishing agency requires facts showing a direct right of supervision that exceeds the right to inspect the operation and of general control over routine business practices. *Id.* at 726-727.  The existence of a franchise relationship is not enough.  *See L.H.*, 604 F. Supp. 3d at 1361; *H.G.*, 489 F. Supp. 3d at 708; *S.J.* 473 F. Supp. 3d at 156; *Red Roof*, 21 F.4th at 729.  Agency—under federal common law and Kentucky law—requires Plaintiff to plead facts showing that the Wyndham Defendants controlled the day-to-day operations of the Ky Motel Property and this control went beyond compliance with brand standards.  Plaintiff does not allege that the Wyndham Defendants had the right to run the Ky Motel Property on a daily basis.  Plaintiff's Complaint, while making conclusory allegations of "magic words" (*e.g.*, Complaint ¶ 96 ("The Wyndham Brand Defendants directly participated in and retained day-to-day control over renting rooms at the Paducah Super 8.")), does not allege anything beyond the normal features of a franchisor-franchisee relationship, including that Ky Motel Property used Wyndham systems for reservations, check-in, payment, pricing, and data management. (*See id.*).  Plaintiff does not meet the *Iqbal* standard of providing factual support for the allegation that Wyndham Defendants acted unlawfully. *See e.g. J.L. v. Best W. Int'l, Inc.*, 521 F.Supp.3d 1048, 1064-65 (D. Colo. 2021).

Plaintiff's Response does not refute the Wyndham Defendants' arguments for dismissal of the joint employer claims, and therefore those allegations must fail as a matter of law.  *See Erwin v. Correct Care Solutions, LLC*, No. 2022-CA-1188, 2023 WL 8286633, at *3 (Ky. App. Dec. 1, 2023) (setting forth the requirements of a joint employer claim, including that the employees are "under [] simultaneous control" of two or more employers).

### C. The continuing tort doctrine does not apply to save Plaintiff's time-barred claims.

In arguing that the continuing tort doctrine saves her otherwise time-barred claims, Plaintiff claims that federal common law, and not Kentucky common law, is controlling. But the outcome is the same in both scenarios. Under controlling Sixth Circuit precedent, as under Kentucky law, the continuing tort doctrine has been narrowly adopted only in specific contexts, and the Court has emphatically declined to extend the doctrine beyond those circumscribed applications when given the opportunity to do so. The Sixth Circuit has not adopted this doctrine in the context of TVPRA claims, and this Court should not do so here. .

The TVPRA contains a ten-year statute of limitations. *See* 18 U.S.C. § 1595(c)(1). Plaintiff filed her Complaint on January 16, 2024, and her claims are therefore time-barred for any alleged conduct that occurred in 2011, 2012, or 2013. Of the four years of alleged conduct described by Plaintiff's complaint, only one falls within the statute of limitations. Plaintiff argues that any of the alleged acts prior to 2014 should be considered in supplementary fashion alongside those alleged acts that do fall within the statute of limitations through application of the continuing tort doctrine. Under the continuing tort doctrine, otherwise known as the continuing-violation doctrine, a court can consider as timely all relevant violations "including those that would otherwise be time [-]barred." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (internal quotation marks omitted), cert. denied, 540 U.S. 876, 124 S.Ct. 228, 157 L.Ed.2d 138 (2003). *See also Gandy v. Sullivan Cnty*, 24 F.3d 861, 864 (6th Cir.1994) ("The doctrine ... may allow a court to impose liability on [a defendant] for acts committed outside the limitations period.").

The Sixth Circuit has generally disfavored the continuing tort doctrine, choosing instead to discern whether its application is warranted in particular contexts. Despite analyzing whether to do so under a varied array of statutory regimes and as to claims of differing character, this Circuit

has limited its application of the doctrine to "claims for deprivations of civil rights and employment discrimination." *Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 480 F.3d 410, 417 (6th Cir. 2007). In 2023, the court noted that it has been selective in its application of the doctrine: "[i]n the first place, we have been 'extremely reluctant' to extend the continuing-violation doctrine outside the Title VII context." *Bouye v. Bruce*, 61 F.4th 485, 492 (6th Cir. 2023). The Sixth Circuit has been "extremely reluctant" because the doctrine is "antithetical to the plain text" of federal laws delimiting statutes of limitation for statutorily created causes of action.[8] *Id.*

Because the continuing tort doctrine undermines the purpose of statutes of limitations, the Sixth Circuit has rejected its application many times—including in a number of federal statutory regimes. The court declined to apply it in the context of the Clean Air Act, ruling the complained-of acts were "repetitive discrete violations, which constitute independently actionable individual causes of action." *Nat'l Parks Conservation Ass'n*, 480 F.3d at 417. When invited to adopt the doctrine in a case interpreting the Federal Employers' Liability Act, the court declined to do so. *Mounts v. Grand Trunk W. R.R.*, 198 F.3d 578, 583 (6th Cir. 2000) (noting that "the Third Circuit rejected the continuing tort theory." *See Kichline v. Consol. Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986)). In *Gandy*, 24 F.3d at 865, the court held that violations of the Equal Pay Act are "separate violations," and thus the continuing violations doctrine was not applicable. Finally, the Sixth Circuit agreed with appellee that the doctrine should not be applied to the Fair Debt Collection Practices Act: "[appellee] is right that we shouldn't apply the continuing-violation doctrine in the FDCPA context." *Bouye*, 61 F.4th at 492. The foregoing discussion is not an exhaustive inventory of the cases in which the Sixth Circuit has refused to apply the continuing tort doctrine; these cases

---

[8] 15 U.S.C.A. § 1692k in *Bouye*.

are representative, however, of the reasoning behind the court's unwillingness to extend the doctrine beyond certain narrow circumstances.

In order to "sweep in a series of component acts that comprise a claim, if one of those acts was within the limitations period," *Id.* at 493, the Plaintiff must plead sufficient facts to show that "**there is but one incessant violation** and that the plaintiffs should be able to recover for the entire duration of the violation, without regard to the fact that it began outside the statute of limitations." *Nat'l Parks Conservation Ass'n, Inc.*, 480 F.3d at 417 (*quoting Knight v. Columbus, Ga.*, 19 F.3d 579, 582 (11th Cir. 1994)). Because Plaintiff has not pled, and cannot plead, that the alleged conduct comprising her claims is "but one incessant violation," her claims against Wyndham Defendants based on conduct that occurred in 2011, 2012, or 2013 must be dismissed.

In arguing for the application of the continuing tort theory, Plaintiff relies on a single paragraph of her Complaint:

> 241.    To the extent that Defendants assert an affirmative defense of limitations, Jane Doe (T.W.) also invokes the continuing tort doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct. Jane Doe (T.W.) was subject to continuous trafficking at Defendants' hotels through at least October 2014, which is not more than 10 years before Jane Doe (T.W.) filed this lawsuit. This continuous trafficking resulted from Defendants' continuous facilitating of trafficking and Defendants' ongoing venture with one another and with criminal traffickers at the subject hotels.

DN 1, ¶ 241; *See also* Plaintiff's Response to Wyndham Defendants' Motion to Dismiss, p. 23. First, this allegation is entirely conclusory, and provides no factual details to confer the facial plausibility necessary to survive dismissal: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Merely

stating that the conduct was "ongoing" and "continuous" is not an adequate substitute for providing sufficient factual support; Plaintiff's restatement of the definition of the continuous tort doctrine, couched in terms of Defendants' conduct, is not an acceptable substitute for what is required under the federal pleading standard. *Twombly*, 550 U.S. at 555.

Plaintiff's Complaint therefore fails to make allegations critical to her theory of the application of the continuing tort doctrine. Plaintiff does not allege that she was held continuously at the same hotel during the period covered by her allegations. Rather, the acts of which she complains were repetitive discrete acts. Plaintiff's allegations that the complained-of conduct occurred in different locations, with different people, and in different timeframes undermine the argument that the continuing tort doctrine should apply. This is particularly true because she is asking that this Court apply a doctrine which fundamentally contravenes the purpose of statutes of limitations, which is to "insure fairness to defendants by preventing the revival of stale claims in which the defense is hampered by lost evidence, faded memories, and disappearing witnesses, and to avoid unfair surprise." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 473 (1975).

The applicable statute of limitations is 10 years.  18 U.S.C. § 1595(c)(1).  If this Court extends that period by several years, the already challenging task of gathering contemporary evidence will certainly be "hampered by lost evidence, faded memories, and disappearing witnesses." *Johnson*, 421 U.S. at 473.  The allegations of this case took place 10+ years ago—it is not a question of if evidence has been lost, or if memories have faded, or if witnesses are unavailable—only to what degree. If this Court permits Plaintiff to base her claims on conduct which indisputably took place more than 10 years before this case was filed, and therefore outside of the statutorily defined term, based on conclusory allegations that the individual and discrete acts comprising it were "ongoing," then the Wyndham Defendants will assuredly be prejudiced

14

thereby. The Wyndham Defendants urge this Court to accord with the overwhelming weight of Sixth Circuit precedent and decline to apply the continuing tort doctrine to a federal regime which did not provide for it and dismiss Plaintiff's claims based on conduct that occurred in 2011, 2012, and 2013.

Respectfully submitted,

/s/ Justin S. Fowles
Justin S. Fowles (KBA #92550)
Allison W. Weyand (KBA #95156)
FROST BROWN TODD LLP
400 West Market Street, Suite 3200
Louisville, Kentucky 40202-3363
T:  502.568.0356
F:  502.581.1087
jfowles@fbtlaw.com
aweyand@fbtlaw.com

David S. Sager *admitted pro hac vice*
DLA Piper LLP (US)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
T:  973.520.2550
david.sager@us.dlapiper.com

*Counsel for Defendant, Wyndham Hotels and Resorts, Inc., Wyndham Hotel Group LLC and Super 8® Worldwide, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed via the Court's ECF this 12th day of April, 2024 which will send copies to all registered users. I also certify that a true and correct copy of the foregoing was served via electronic mail and/or US Mail this 12th day of April, 2024 to the following:

Guy G. Fisher
Provost Umphrey Law Firm, LLP
350 Pine Street, Ste. 1100
Beaumont, Texas 77701
409.835.6000
gfisher@pulf.com

and

Michael W. Hamilton
Provost Umphrey Law Firm LLP
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215
mhamilton@pulf.com
*Counsel for Plaintiff*


Annie McAdams
ANNIE MCADAMS, PC
1150 Bissonnet Street
Houston, TX 77005
annie@mcadamspc.com
*Counsel for Plaintiff*


E. Douglas Richards
401 Lewis Hargett Circle, Suite 210
Lexington, KY 40503
Erichards714@yahoo.com
*Counsel for Plaintiff*


VHGI Inc. and VHGI Franchising Inc.
Bernard T. Moyle
10800 West Sample Road
Coral Springs, FL 33065

KY Motel Inc.
Sunal P. Patel
1500 Bradford Lane
Carbondale, IL 62902
pete@headznthreadz.com

Sonesta International Hotels Corporation
Brad Maxwell, General Counsel
400 Centre Street
Newton, MA 02458


Mata Pita Inc.
Champaklal Patel, Agent
5125 Old Cairo Road
Paducah, KY 42001


Red Lion Hotels Corporation
1550 Market Street
Suite 425
Denver, CO 80202


*/s/ Justin Fowles*_____
*Counsel for Defendant, Wyndham Hotels and Resorts, Inc., Wyndham Hotel Group LLC and Super 8 Worldwide, Inc.*

0151971.0782473   4864-9333-8550v3

16