**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

JANE DOE (T.W.), AN INDIVIDUAL,

Plaintiff,

v.

WYNDHAM HOTELS AND RESORTS,
INC.; WYNDHAM HOTEL GROUP, LLC;
SUPER 8 WORLDWIDE, INC.; KY
MOTEL, INC. D/B/A SUPER 8; RED LION
HOTELS CORPORATION; MATA PITA,
INC. D/B/A AMERICA'S BEST VALUE
INN; VHGI FRANCHISING, INC.; and
VHGI, INC.

Defendants.

CIVIL ACTION NO: 5:24-cv-0008-BJB

**ORAL ARGUMENT REQUESTED**

**<u>RESPONSE TO THE MOTION TO DISMISS OF DEFENDANT MATA PITA, INC.</u>**

Plaintiff Jane Doe (T.W.) submits this response to the Motion to Dismiss filed by Defendant Mata Pita, Inc.  T.W. requests oral argument to fully present her position.

## INTRODUCTION

The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581, *et seq.*, creates a civil remedy against businesses that—while not criminally liable for sex trafficking—benefit from facilitating it. *See* 18 U.S.C. § 1595(a). This reflects Congress's judgment that an effective fight against trafficking requires expanding liability beyond just sex buyers and sellers. This is sound policy and accords with ordinary principles of responsibility. Businesses that know or should, with the exercise of ordinary diligence, know they are profiting by facilitating trafficking are responsible for the harm this trafficking causes.

Traffickers repeatedly chose the America's Best Value Inn in Paducah Kentucky ("Paducah ABV Inn") as a site for trafficking victims, including T.W. Mata Pita owned this hotel and operated it together with the ABV Brand Defendants.[1] Though Mata Pita knew or should have known about the widespread trafficking, it chose to continue benefiting from facilitating it, including T.W.'s trafficking. T.W. thus sues Mata Pita under § 1595(a).

Mata Pita asks the Court to dismiss, arguing that the TVPRA provides no remedy to a victim who is exploited at a defendant's hotels, even if the defendant knew or should have known it was profiting from ongoing sex trafficking at that hotel. But this argument seeks "to impose restrictions on the civil remedy created by Congress that are not consistent" with § 1595(a)'s text nor with current case law. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 548 (7th Cir. 2023). This

---

[1] T.W. has also filed a claim against the entities involved in (or responsible, as successors, for) the operation of the Paducah ABV Inn as franchisors. (ECF No. 1 ¶¶ 15-23). These entities are referred to collectively as the ABV Brand Defendants. T.W.'s claims against the ABV Brand Defendants are not at issue in this motion.

restrictive interpretation would undermine Congress's choice to address the harm that sex trafficking causes by targeting those who **profit** as well as those who perpetrate.

## SUMMARY OF ALLEGATIONS

T.W. is a survivor of sex trafficking. (ECF No. 1 ¶ 8). Her trafficker controlled her, subjecting her to physical abuse and threatening her family, to force her to perform commercial sex for his benefit. (*Id.* ¶¶ 29-30). Between April 2011 and October 2014, T.W. was repeatedly and regularly trafficked at the Paducah ABV Inn, often for days at a time. (*Id.* ¶¶ 29, 35).

Mata Pita knew that sex trafficking was a problem in the hotel industry and at its own hotel. (*Id.* ¶ 38-49, 145-151). Sex slavery is pervasive in the United States, and hotels are the primary place it happens. (*Id.* ¶ 39). Government agencies and other organizations have advised the hotel industry on how to detect signs of trafficking and respond appropriately. (*Id.* ¶¶ 40-45). These organizations have identified "red flags" of sex trafficking, which follow well-recognized patterns that can easily be detected by trained hotel staff. (*Id.* ¶¶ 40-43, 46-47). Sex trafficking was also a well-known problem at ABV properties. (*Id.* ¶¶ 64-67).

The Paducah ABV Inn, where T.W. was trafficked, had a known issue with widespread and pervasive sex trafficking. (*Id.* ¶ 145). A population of traffickers, including T.W.'s trafficker, repeatedly chose this hotel as the venue for their sex trafficking activity because they knew it was a favorable environment. (*Id.* ¶¶ 146, 191). These traffickers were familiar to the hotel staff. (*Id.* ¶ 194). And there were obvious signs of the trafficking activity matching patterns well known in the hotel industry. (*Id.* ¶ 148). These traffickers operated without making significant efforts at concealment because of an implicit understanding with the hotel staff. (*Id.* ¶ 147). They freely made requests to facilitate their trafficking activities, such as requesting preferred room locations, without concern about interference from hotel staff. (*Id.* ¶¶ 170, 195). The hotel also allowed them

to operate in a way that minimized their risk of traceability, as they were permitted to use non-traceable payment methods and avoid providing identification. (*Id.* ¶ 196). Mata Pita knew about this trafficking activity through the direct observations of its hotel staff and management and through other channels it used to oversee hotel operations. (*Id.* ¶ 150).

There were also many obvious signs of T.W.'s trafficking specifically, which hotel staff observed. (*Id.* ¶¶ 32, 36, 161). T.W.'s trafficker was constantly at the hotel monitoring T.W. and restricting her movements around the hotel. (*Id.* ¶ 161). He would linger in common areas of the hotel while she was seeing "johns." (*Id.*) Rooms were paid for using non-traceable methods, including cash and prepaid cards. (*Id.*). There was an extremely high volume of traffic around her hotel room, consisting of men who were not hotel guests, coming and going at unusual times after brief stays. (*Id.*). T.W.'s trafficker would not allow housekeeping to enter the room for days at a time. (*Id.*) While T.W. would request extra towels and linens, her trafficker would require that they be left outside the door. (*Id.*). T.W.'s trafficker used a *modus operandi* to conduct his trafficking operation, and this produced additional signs that were observed by hotel staff and that matched the "red flags" of trafficking in a hotel environment. (*Id.*) Because of the abuse, exploitation, and control she endured, there were obvious deleterious effects on T.W.'s appearance, demeanor, and interpersonal interactions that matched up with common "red flags" of trafficking. (*Id.* ¶ 32). Hotel staff observed these signs, which gave them notice that T.W. was being subjected to force, fraud, and coercion. (*Id.* ¶ 36). Hotel staff had a relationship with T.W.'s trafficker and would provide him with discounts on the room rates. (*Id.* ¶ 161).

Even though Mata Pita knew or was willfully blind to the trafficking, it continued its business relationship with traffickers (including T.W.'s trafficker) by renting them rooms and providing a venue where they could operate without concern for detection or interference by hotel

staff. (*Id.* ¶ 167-171, 190). Mata Pita benefited each time a room was rented to a trafficker at the hotel. (*Id.* ¶¶ 185, 187).

## LEGAL STANDARD

To overcome a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if a plaintiff pleads enough to "raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id.* The court must take a plaintiff's well-pled allegations as true and draw all reasonable inferences for the plaintiff. *Id.* This standard is not demanding, asking that a plaintiff allege "only enough facts" to "nudge" a claim "across the line from conceivable to plausible." *G.G.*, 76 F.4th at 551. "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

## ARGUMENT AND AUTHORITIES

The TVPRA imposes civil liability on those who know or should know they are profiting by facilitating sex trafficking. Two provisions are relevant here. **First**, § 1591 imposes **criminal penalties** for a defendant who (1) traffics a victim knowing or in reckless disregard of the fact that the victim will be coerced into sexual activity, 18 U.S.C. § 1591 (a)(1); or (2) benefits from knowingly facilitating a sex trafficking violation, 18 U.S.C. § 1591 (a)(2).

**Second**, § 1595 (a) creates a civil cause of action both against perpetrators who violate § 1591 and against **beneficiaries** who, while not criminally responsible for sex trafficking, benefit from participation in ventures that facilitate sex trafficking. *L.H. v. Red Roof Inn, Inc.*, 3:22-CV-625, 2023 WL 5725574, at *8 (W.D. Ky. Sept. 5, 2023) (recognizing distinct nature of beneficiary liability claim). The civil beneficiary liability created by § 1595 (a) stems from Congress's choice

to expand the TVPRA's scope. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 180–9 (E.D. Pa. 2020). A key distinction from § 1591 (a)(2) is that a beneficiary is liable under § 1595(a) if it should have known that it was facilitating trafficking. Use of this standard "evidences Congress's intent to broaden the behavior that can form the basis of civil liability to participation in ventures where the defendant knew or should have known that the venture was involved in sex trafficking." *M.A.*, 425 F. Supp. 3d at 964 (cleaned up). This provides victims "a cause of action against those who have profited from their exploitation." *A.B.*, 455 F. Supp. 3d at 181. T.W. pleads a claim against Mata Pita as **both** a beneficiary and a perpetrator.

## I.    T.W. pleads a beneficiary liability claim against Mata Pita.

A claim against a hotel defendant who knew or should have known it was providing a venue for trafficking falls squarely within 1595(a)'s scope. Many courts have applied beneficiary liability to hotel defendants who continue renting rooms to traffickers despite actual or constructive knowledge of their trafficking.[2] The Seventh Circuit has also endorsed broad application of § 1595(a) liability to those who profit from commercial relationships that facilitate trafficking. *See G.G.*, 76 F.4th at 561.

Urging the Court to depart from this consensus, Mata Pita relies on *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), where the Eleventh Circuit affirmed dismissal of § 1595(a) claims against franchisors. But *Doe #1* does not support dismissal here. **First**, *Doe #1's* analysis

---

[2] *See, e.g.*, *M.A.*, 425 F. Supp. 3d  959; *T.E. v. Wyndham Hotels & Resorts*, Inc., No. 2:22-CV-3185, 2024 WL 474400 (S.D. Ohio Feb. 7, 2024); *J.M. v. Choice Hotels Int'l, Inc.*, No. 222CV00672, 2023 WL 3456619 (E.D. Cal. May 15, 2023) (*J.M. II*); *J.C. v. Choice Hotels Int'l, Inc.*, 20-CV-00155-WHO, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020); *A.D. v. Wyndham Hotels & Resorts, Inc.*, 4:19CV120, 2020 WL 9550005 (E.D. Va. Sept. 21, 2020); *A.W. v. Red Roof Inns, Inc.*, No. 2:21-CV-04934, 2022 WL 17741050, at *1 (S.D. Ohio Dec. 16, 2022); *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04935, 2022 WL 17741054 (S.D. Ohio Dec. 16, 2022); *E.B. v. Howard Johnson by Wyndham Newark Airport*, 21-2901, 2023 U.S. Dist. LEXIS 231401 (D.N.J. Dec. 29, 2023).

was limited to the only venture theory alleged by the plaintiffs: that the franchisors participated directly in "sex trafficking ventures." *Id.* at 726. *Doe #1* recognized that the plaintiffs could have pled that the franchisors participated in commercial hotel-operating ventures but had not and had declined a chance to amend. *Id.* at 727. T.W. alleges commercial ventures, making *Doe* inapplicable. *See A.W.*, 2022 WL 17741050, at *8  (distinguishing *Doe #1* on this basis); *C. T. v. Red Roof Inns, Inc.,* 2:22-CV-834, 2023 WL 3510879, at *2 (M.D. Fla. Mar. 11, 2023) (same).

**Second,** *Doe #1* concluded that the plaintiffs had made only conclusory allegations of the franchisors' involvement at the hotels. *Doe #1,* 21 F.4th at 727. By contrast, T.W. makes extensive allegations about Mata Pita's involvement in operations at the Paducah ABV Inn. *Doe #1*'s reasoning aligns with imposition of liability against a defendant who is "intimately involved" in hotel operations. *A.W.*, 2022 WL 17741050, at *9.

The elements of T.W.'s beneficiary claim are that Mata Pita (1) knowingly benefitted; (2) from participation in a venture; (3) it knew or should have known has engaged in sex trafficking. *M.A.*, 425 F. Supp. 3d at 964. Mata Pita does not address the first element, and the Complaint adequately pleads the second and third.

*A. T.W. pleads Mata Pita's participation in a §1595(a) venture.*

Mata Pita's argument that T.W. fails to plead the "participation in a venture" element rests on a premise that it can only be liable if it participated in a criminal sex trafficking venture. But a §1595(a) venture need not be a criminal trafficking venture, and a beneficiary defendant need not participate directly in sex trafficking. *G.G.,* 76 F.4th 544, 553 n.4 (noting that courts "unanimously agree that a civil defendant under Section 1595 need not have violated Section 1591."); *M.A.*, 425 F. Supp. 3d at 970 (holding that "liability under § 1595 can attach when an individual participates in a venture that is not specifically a sex trafficking venture and participation is not direct

participation in the sex trafficking"). A court in this District recently held that the principles governing the "participation in a venture" element of a beneficiary liability claim are different than those that apply to criminal venture liability under § 1595. *L.H.*, 2023 WL 5725574, at *8. Mata Pita's contrary interpretation is unacceptably narrow because—despite clear textual differences between § 1591(a) and § 1595(a)—it leaves **no daylight** between what is required for beneficiary liability and what is required for criminal liability.

One way to establish a §1595(a) venture is "to show a continuous business relationship between a defendant hotel and a sex trafficker in which the defendants rented rooms to people it knew or should have known were engaged in sex trafficking." *M.A.*, 425 F. Supp. 3d at 970 (cleaned up); *see also L.H.,* 2023 WL 5725574, at *10 (allegations of continued commercial dealings that continued despite red flags of trafficking were enough to plead the defendant's participation in a venture). Mata Pita formed a continuous business relationship with the population of traffickers who operated at the Paducah ABV Inn, including T.W.'s trafficker. (ECF No. 1 ¶¶ 188-199). It continued renting rooms and providing other services to those traffickers, on a repeated and regular basis, despite the obvious red flags that its hotel was was being used for trafficking. (*Id.* ¶¶ 167-171, 190). Mata Pita's hotel staff was familiar with the population of traffickers and developed an implicit agreement with them, creating an environment where they could operate without having to expend significant resources to avoiding detection and where they could freely make requests to facilitate their trafficking, such as securing rooms in preferred locations. (*Id.* ¶¶ 167-171, 190). Hotel staff was familiar with T.W.'s trafficker in particular and even provided him discounted rates on rooms, encouraging his use of the hotel. (*Id.* ¶ 161). Based on this implicit agreement, T.W.'s trafficker chose to bring her back to the Paducah ABV Inn repeatedly and regularly for several years. (*Id.* ¶¶ 29, 35).

7

Mata Pita also participated in a commercial hotel-operating venture with the ABV Brand Defendants operating the Paducah ABV Inn. (*Id.* ¶¶ 200-203). This was a common undertaking with a shared objective of maximizing revenue. (*Id.*). This venture was engaged in TVPRA violations because the hotel was repeatedly used to harbor, maintain, and provide sex trafficking victims who were being sexually exploited on site. (*Id.*). This hotel-operating venture is analogous to the category of commercial venture that the Eleventh Circuit recognized but declined to address in *Doe #1* because the plaintiffs had not pled it, 21 F.4th at 725, and which the Seventh Circuit subsequently endorsed and applied. *G.G.*, 76 F.4th at 554. District courts have applied this category of business-to-business venture to hotel-operating ventures involving a franchisor and franchisee. *See A.R.*, 2022 WL 17741054, at *7; *T.P.*, 2022 WL 17363234, at *11; *D.K. v. Red Roof Inns, Inc.*, No. 2:22-cv-3786, 2024 U.S. Dist. LEXIS 56388, at *11 (S.D. Ohio Mar. 28, 2024); *C.T. v. Red Roof Inns, Inc.,* No. 2:22-CV-834, 2023 WL 3510879, at *4 (M.D. Fla. Mar. 11, 2023).

Mata Pita's argument that these allegations are not enough to show its "participation in a venture" under § 1595(a) rests on a flawed premise. Mata Pita assumes that the "participation in a venture" element requires that it shared a common unlawful purpose **with sex traffickers** and took overt acts in support of that purpose. But these are criminal-law principles that do not apply to a § 1595(a) venture. Beneficiary liability expressly contemplates that a defendant can be liable for its participation in a venture even if it **did not know about the trafficking** (but should have). This clashes with common unlawful purpose and overt requirements, which presuppose actual knowledge of the illegal activity.[3]

---

[3] *See G.G.*, 76 F.4th at 559; *A.B.*, 455 F. Supp. 3d at 182; *M.A.*, 425 F. Supp 3d at 969; *A.C. v. Red Roof Inns, Inc.*, 2:19-CV-4965, 2020 WL 3256261, at *6 (S.D. Ohio June 16, 2020); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19cv120, 2020 U.S. Dist. LEXIS 250759, at *7 (E.D. Va. July 22, 2020); *Acevedo v. eXp Realty, LLC*, 2:23-CV-01304, 2024 WL 650189, at *16 (C.D. Cal. Jan. 29, 2024); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1256 (M.D. Fla. 2020). *J.C.*, 2020 WL 6318707, at *7.

Though beneficiary liability does not require a common unlawful purpose, T.W. **does** plead that Mata Pita participated in a common undertaking. It was engaged in a common undertaking with traffickers regarding the use of hotel rooms to generate revenue: Mata Pita generated revenue directly from the rental of the room, and the traffickers generated revenue from use of the room to sell their trafficking victims. (ECF No. 1 ¶¶ 109, 114). Mata Pita also engaged in a common undertaking with ABV Inn Defendants to operate the ABV Inn with a shared objective of maximizing gross room revenue by renting out hotel rooms. (*Id.* ¶ 125) This satisfies the definition of "venture" under § 1595(a).

Nor does Mata Pita's reliance on the Eleventh Circuit's unpublished decision in *K.H. v. Riti, Inc.*, 23-11682, 2024 U.S. App. LEXIS 3127 (11th Cir. Feb. 9, 2024) support its argument for dismissal. *Riti,* a decision that the panel deemed to have no precedential value,[4] fails to support Mata Pita's argument for several reasons. **First,** the ventures alleged are different in **type**. *Riti* involved a straightforward application of *Doe # 1*'s narrow holding based on the narrow theory of venture the plaintiffs alleged in both cases. The *Riti* plaintiff (like the *Doe # 1* plaintiffs) alleged that the defendant participated **in a sex trafficking venture**. 2024 U.S. App. LEXIS 3127, at *7 ("K.H. alleges that [hotel-defendant] participated in a common sex trafficking undertaking with [her criminal trafficker].") . Thus, the *Riti* Court assessed whether the plaintiff had adequately alleged the defendant acted with a goal of advancing the aims of **criminal sex trafficking** and found that she had not. But neither *Doe # 1* nor *Riti* applies to the commercial ventures that T.W. alleges. *See C.T.*, 2023 WL 3510879, at *2 (in a case with a plaintiff who pled commercial ventures,

---

[4] 11 Cir. R. 36-2. Unpublished Opinions; I.O.P. 7, Citation to Unpublished Opinions by the Court; *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1260 n.3 (11th Cir. 2007) (noting that "an unpublished opinion would in any event be persuasive only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue").

reasoning that "[s]ince this case finds itself in waters the Eleventh Circuit declined to wade in, *Doe #1* is not determinative.").

**Second**, the alleged ventures are different in **scope**. In *Riti* the Eleventh Circuit evaluated a venture that involved only the plaintiff's trafficking. 2024 U.S. App. LEXIS 3127, at *10-11. Here, by contrast, T.W. alleges broader ventures that facilitated the trafficking of **multiple victims** by a population of **multiple traffickers.** Thus, Mata Pita's participation is assessed **not** only as to T.W.'s trafficking specifically but also to include its conduct over time in facilitating widespread sex trafficking at the Paducah ABV Inn. *G.G.*, 76 F.4th at 561 (beneficiary defendant's participation in "venture as a whole" is relevant). This includes Mata Pita's operation of the hotel in a way that created an implicit understanding with the population of sex traffickers, encouraging them to return and provide repeat business and allowing them to operate with minimal risk of interference from staff and minimal traceability. Development of an understanding of this type facilitates sex trafficking because it gives the traffickers the cover of a legitimate business while also allowing them to avoid the costs and burdens that would come with having to make significant efforts at concealment. Allegations that Mata Pita engaged in conduct that encouraged traffickers to continue using its hotel supports an inference of an implicit understanding. *See Doe v. Shera Ton, LLC*, 23CV00451, 2024 U.S. Dist. LEXIS 58311, at *10 (D.N.M. Mar. 28, 2024) (recognizing that allegations that traffickers chose a hotel because of an understanding that it could operate there without interference supports an implicit understanding that shows a hotel-defendant's participation in a venture).

**Third,** there was a clear deficiency in the *Riti* allegations that is not present here. The *Riti* plaintiff failed to allege how the hotel operator actively continued the relationship with sex traffickers **after** observing specific red flags of their trafficking. While the Eleventh Circuit's short

non-precedential opinion provides little discussion of the issue, the district court's analysis in *Riti* makes this pleading failure clear. *K.H. v. Riti, Inc.,*1:22-CV-3404, 2023 U.S. Dist. LEXIS 93374, at *8 (N.D. Ga. Apr. 17, 2023) (noting that complaint did "not in fact allege specific instances where employees observed actions which would have led them to believe K.H. was being trafficked—but instead generally alleged that the employees observed the vast majority of the evidence listed as specific factors" by government and non-profit agencies) (cleaned up). The *Riti* plaintiff only alleged that there were "general behaviors associated with sex trafficking" and did **not** make specific allegations about what signs hotel staff observed or how the business relationship between the hotel-defendant and her trafficker continued despite the hotel-defendant's actual observation of or opportunity to observe signs of her trafficking. *Id.*

Importantly, the *Riti* district court's analysis illustrates that the plaintiff's failure to plead that the defendant observed **specific signs** of trafficking not only undermined her attempt to satisfy the *mens rea* element but also informed why she did not adequately plead the beneficiary-defendant's "participation in a venture" with her traffickers. 2023 U.S. Dist. LEXIS 93374, at *9. By using a "should have known" standard, Congress closely linked the "participation in a venture" and *mens rea* elements, such that they often overlap. *L.H.,* 2023 WL 5725574, at *n.5 ("[F]acts regarding the 'participation in a venture' and knowledge elements often overlap."). A defendant's participation in a venture can be shown through an implicit understanding that forms when a defendant continues providing services despite obvious signs that those services are being used to further sex trafficking. Unlike the allegations in *Riti*, the Complaint here **identifies** the specific signs of trafficking (both of T.W. and of other victims) that were present in the Paducah ABV Inn and obvious to Mata Pita.  (ECF No. 1 ¶¶ 32, 36, 145-146, 161). It then also describes how Mata

Pita continued the business relationship **despite** these obvious red flags, supporting a reasonable inference that it participated in a venture.

Still, if (as Mata Pita suggests) *Riti* can be read to hold that—no matter what venture is alleged—beneficiary liability **always** requires that a beneficiary-defendant shared a criminal purpose with sex traffickers, then the Court should decline to follow it. A **criminal purpose or intent requirement—a mens** *rea* standard—cannot be squared with § 1595(a) specific statement that only a "should have known" *mens rea* is required for any violation of the TVPRA.[5] Even **criminal perpetrator liability** does not require a criminal purpose. *United States v. Estrada-Tepal*, 57 F. Supp. 3d 164, 169 (E.D.N.Y. 2014) ("[A]bsent from 18 U.S.C. § 1591(a) is any requirement that an individual have the desire or 'criminal purpose' to further sex trafficking; instead, one need only have knowledge, or reckless disregard to the fact, that the victim will be caused to have underage or coerced commercial sex."). Mata Pita makes **no** attempt to reconcile a criminal purpose with § 1595(a)'s plain text, and the Court should reject its unduly restrictive interpretation of "participation in a venture," which would leave no meaningful daylight between criminal liability and civil liability.

B. *T.W. pleads the required mens rea.*

A defendant's state of mind, which is information within a defendant's control, can be pled generally and supported through allegations of circumstantial evidence corroborating those general allegations. *E.B.*, 2023 U.S. Dist. LEXIS 231401 at *25*; G.G.,* 76 F.4th at 555*; S.Y.,* 519 F. Supp. 3d at 1082. T.W. plausibly alleges that Mata Pita, which provided boots on the ground at the Paducah ABV Inn, knew or should have known about the widespread trafficking at this hotel, including T.W.'s trafficking.

---

[5] *See* cases cited *supra* note 3.

To begin, T.W. supports a reasonable inference that Mata Pita knew or should have known about the widespread trafficking at the **venture level** (i.e., at the specific hotel where T.W. was trafficked) based on (1) the existence of widespread trafficking at the Paducah ABV Inn; (2) the obvious signs associated with this widespread trafficking, matching industry-recognized "red flags" of trafficking; and (3) its on-the-ground role at the hotel and its tools for monitoring and supervising the hotel. (ECF No. 1 ¶¶ 145-151). And this venture-level *mens rea* is sufficient for beneficiary liability; victim-specific knowledge is not required. *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 407 (S.D.N.Y. 2023); *Burrell v. Staff*, 60 F.4th 25, 40 (3d Cir. 2023); *C.C. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-CV-3799, 2024 WL 1347303, at *8 (S.D. Ohio Mar. 29, 2024). Section 1595(a) only requires that a beneficiary-defendant had actual or constructive knowledge of "an" act by "a" venture, not "the" act by "the" venture." *G.G.*, 76 F.4th at 557. Thus, on its face, § 1595(a) does not require knowledge of a particular sex-trafficking venture and certainly does not require knowledge of a particular victim. *Id.* "If Congress had meant in Section 1595 that the participant must have had actual or constructive knowledge of the specific victim, it could have simply said so. It did not." *Id.* Because the ventured alleged here goes beyond T.W.'s own trafficking and includes facilitation of widespread trafficking at a particular hotel location, the *mens rea* analysis focuses on actual or constructive knowledge of the trafficking at that hotel location rather than only on T.W. specifically.[6] A hotel-defendant that knows it is profiting from widespread trafficking at its hotel cannot escape liability merely because it did not the know the identity of every victim.

---

[6] *G.G.,* 76 F.4th at 556 (rejecting defendant's argument for a victim-specific knowledge standard because it would mean "that the larger the sex-trafficking venture and the more extensive [the defendant's] participation in the venture—and so the less likely [the defendant] is to have known the specifics of individual victim—the harder it should be for a victim to obtain civil relief.").

While victim-specific *mens rea* is not required, the Complaint also does support a reasonable inference that Mata Pita knew or should have known about T.W.'s trafficking. There were many obvious signs that matched established industry "red flags" of trafficking. (ECF No. 1 ¶¶ 32, 36, 161). Mata Pita, which was on the ground at the hotel and observed these flags, had been educated on these "red flags" and how to detect signs of sex trafficking in a hotel environment.[7] Moreover, Mata Pita had a familiar relationship with T.W.'s trafficker, even providing him discounted rooms, which reinforces a reasonable inference that Mata Pita knew or should have known about his illegal activities. (*Id.* ¶ 161). Collectively, these allegations support a reasonable inference that Mata Pita knew or should have known about T.W.'s trafficking.

At minimum, these allegations support charging Mata Pita with constructive knowledge of T.W.'s trafficking. Under § 1595(a), a defendant is liable if it benefits from sex trafficking that was **knowable** with the exercise of ordinary diligence. This is the implication of Congress's use of the broad "should have known" language, rather than a higher standard such as "reason to know."[8] "Should have known" includes what "a person of reasonable prudence and intelligence or of the superior intelligence of the actor **would ascertain** the fact in question in the performance of his duty to another, **or would govern his conduct upon the assumption that such fact exists**." Restat 2d of Torts, § 12. (emphasis added). In § 1595(a), Congress imposed a duty of ordinary diligence upon those in a position to benefit from sex trafficking; that provision supports charging a hotel-defendant with constructive notice of trafficking when the exercise of ordinary diligence

---

[7] Industry-level knowledge is squarely relevant to what a defendant had reason to know based on information available to the defendant. Restat 2d of Torts, § 12 (an actor has "reason to know" when the actor has "information from which a person of reasonable intelligence **or of the superior intelligence of the actor** would infer that the fact in question exists.") (emphasis added).

[8] *See* Restatement (Second) of Torts § 12 cmt. a ("Both the expression 'reason to know' and 'should know' are used with respect to existent facts. These two phrases, however, differ in that 'reason to know' implies no duty of knowledge on the part of the actor whereas 'should know' implies that the actor owes another the duty of ascertaining the fact in question.").

by that defendant—such as proper training of hotel staff or implementation and enforcement of appropriate policies for responding to sex trafficking—would have detected the sex trafficking of the plaintiff at the defendant's hotel. *See, e.g.*, *M.A.*, 425 F. Supp. 3d at 964; *T.E.*, 2023 U.S. Dist. LEXIS 151985, at *15; *E.B.*, 2023 U.S. Dist. LEXIS 231401, at *25. T.W.'s allegations support charging Mata Pita with reasonable diligence because the obvious signs of sex trafficking at its hotel would have been detected by a hotel defendant exercising ordinary diligence.

Mata Pita's primary argument on the *mens rea* element is that T.W. improperly relies on allegations about its general knowledge of sex trafficking activity. But this argument both mischaracterizes T.W.'s allegations and misunderstands the constructive-knowledge analysis. **First**, T.W.'s allegations are **not** limited to Mata Pita's knowledge of the industry-wide problem of sex trafficking. While the allegations start with Mata Pita's knowledge of the industry-wide problem, they also include its knowledge of the problem at ABV hotels generally and at the Paducah ABV specifically. (ECF No. 1 ¶¶ 145-151). T.W. thus alleges that Mata Pita had notice that sex trafficking was a problem **in its own operations**, rather than **just** at the industry level. **Second**, while a defendant's general knowledge of sex trafficking in the hotel industry is not itself a sufficient basis to satisfy § 1595(a) *mens rea* requirement, allegations about sex trafficking in the industry **are relevant.** They inform the objective-negligence standard embedded in the constructive knowledge analysis, which requires assessing the totality of the circumstances to determine what a defendant would have known if it had exercised ordinary diligence. *See T.E. v. Wyndham Hotels & Resorts, Inc.,* No. 2:22-CV-3185, 2024 WL 474400, at *5 (S.D. Ohio Feb. 7, 2024). The allegations about sex trafficking in the hospitality industry inform what Mata Pita knew about the severity of the problem of sex trafficking and what options were reasonably available to it regarding how to detect sex trafficking and avoid facilitating it.

Mata Pita also argues, without addressing the **specific** factual allegations here, that T.W. fails to satisfy the *mens rea* element because it can only be liable if it had specific notice of sex trafficking rather than (still illegal) commercial sex not linked to sex trafficking. But this argument asks the Court to wade into a fact-dependent questions within the province of the ultimate fact finder. The Complaint alleges a direct link between the signs that T.W. (and other victims) exhibited at the Paducah ABV Inn and the industry-recognized "red flags" of trafficking. (ECF No. 1 ¶¶ 32, 42, 51, 148, 157, 161).  This link would allow a reasonable fact finder to conclude that Mata Pita, having been educated on those well-established "red flags," **should have known** about T.W.'s trafficking.

There is necessarily overlap between signs of commercial sex generally and "red flags" of trafficking; the definition of trafficking under 18 U.S.C. § 1595(a) incorporates the definition of commercial sex. *See* 18 U.S.C. § 1591(a). Moreover, a substantial portion of commercial sex—especially with presence of a "pimp"—involves sex trafficking, and Mata Pita knew that signs of commercial sex at its hotel **were** signs of sex trafficking. (ECF No. 1 ¶¶). The Complaint also identifies signs of T.W.'s trafficking that were **more** suggestive of sex trafficking than of other (still illegal) commercial sex not linked to trafficking.[9]

Mata Pita's assertion that these allegations are **insufficient as a matter of law** and that dismissal is warranted even if these allegations are credited with reasonable inferences drawn in T.W.'s favor, amounts to a proposed rule that beneficiary liability is available only when a defendant observed a specific act of force or a specific threat directed at a sex trafficking victim.

---

[9] This includes the constant presence of T.W.'s trafficker, who lingered in common areas and monitored her, restricting her movements around the hotel, and who hotel staff developed a familiar relationship with. (*Id.* ¶ 161). This also includes the observable effects that trafficking had on T.W.'s demeanor, appearance, movements throughout the hotel, and interactions with others, all of which matched well-known patterns of sex trafficking and provided hotel staff with notice that she was being subjected to force, fraud, and coercion. (*Id.* ¶¶ 32, 36).

But this extraordinarily narrow interpretation cannot be squared with § 1595(a)'s plain text. It would effectively replace "should have known" with "knew." *See K.B. v. G6 Hosp., LLC*, 1:23-CV-2597, 2023 U.S. Dist. LEXIS 222360, at *26 (N.D. Ga. Dec. 14, 2023); *Rickey Patel*, 2020 WL 6121939, at *21. This argument also clashes with the broad definition of sex trafficking that Congress adopted in 18 U.S.C. § 1591 (a), which recognizes traffickers coerce and control victims in different ways.[10] Traffickers use various techniques to prey on victims susceptible to trafficking.[11] The function of the industry-specific "red flags" of trafficking the Complaint describes is that they allow hotel staff—who witness the recurring nature of trafficking transactions and the consistent observable effects of trafficking on its victims—to identify suspected sex trafficking **without** directly observing violence or hearing a specific threat.

Mata Pita's argument also ignores the role of constructive knowledge under § 1595(a). A defendant may **at least** have a duty of inquiry when presented with "red flags" that point to sex trafficking, even if those red flags **do not** exclude links to other criminal activity. Mata Pita's contrary interpretation would produce absurd results: a hotel operator exercising ordinary diligence could—despite knowing of the link between commercial sex and sex trafficking—burry its head in the sand and profit from obvious (and illegal) commercial sex activity without making further inquiry **no matter how** much of that activity was sex trafficking. The Court should reject Mata

---

[10] Congress recognized that subtler forms of control—such as threats of serious psychological and financial harm or a pattern that would cause a victim to believe that failure to comply would result in physical restraint—are also tools frequently used by traffickers to exploit victims. 18 U.S.C. § 1591 (e) (5). This broad definition of sex trafficking combined with the "should have known" *mens rea* standard creates a liability framework that requires defendants who are aware of commercial sex at their locations to exercise reasonably diligence to avoid benefiting from **any** form of sex trafficking, including those that do not involve acts of physical violence on site.

[11] *See, United States v. Williams*, 714 F. App'x 917, 919 (11th Cir. 2017) (upholding conviction for trafficking by force, fraud, or coercion where victims were susceptible to trafficking and a "reasonable jury could have concluded from this evidence that the victims feared that stopping the prostitution would result in serious harm, in the form of losing Williams's emotional, psychological, and financial support").

Pita's "Ostrich Defense," which is wholly inconsistent with the negligence-based standard Congress adopted in § 1595(a).

## II.     T.W. states a perpetrator claim against Mata Pita.

Not only does T.W. state a beneficiary liability claim against Mata Pita under § 1595(a), but she also pleads a claim that it is liable as a perpetrator based on violations of § 1591(a)(1) and § 1591(a)(2). Mata Pita does not address these claims separately from T.W.'s beneficiary liability claims, reflecting the fact that Mata Pita's arguments collapse the distinction between criminal and civil liability standards. That said, T.W.'s allegations satisfy both standards.

Given its on-the-ground role and in-person interactions with the traffickers at the Paducah ABV Inn, the Complaint supports an inference that Mata Pita had actual knowledge of the trafficking or was at least willfully blind to it and still participated in a criminal sex trafficking venture harboring victims and facilitating their exploitation at the Paducah ABV Inn. (*Id.* ¶¶ 149, 151, 162, 169). Mata Pita was familiar with these traffickers and implicitly encouraged their illegal activities by creating an environment where they could operate without making significant efforts at concealment and without significant concern for inference by hotel staff, such that they freely made requests that would facilitate their trafficking. (*Id.* ¶¶ 161, 170, 194-197). It went even further by providing T.W.'s trafficker with room discounts, encouraging his frequent return. (*Id.* ¶ 161). Mata Pita's conduct had the "predictable effect" of enabling future trafficking. *See Canosa v. Ziff,* 18 CIV. 4115, 2019 U.S. Dist. LEXIS 13263, at *62 (S.D.N.Y. Jan. 28, 2019). This constitutes harboring under § 1591(a)(1) and knowing facilitation of a trafficking venture under § 1591(a)(2) consistent with a criminal violation. *Cf. Bhimani*, 2021 U.S. Dist. LEXIS 215789, at *25 (upholding corporation's conviction where hotel rented rooms to pimps); *J.M. II*, 2023 WL 3456619, at *2 (recognizing § 1591 claim against hotel defendant when complaint plausibly

alleged actual knowledge); *Ricchio v. McLean,* 853 F.3d 553, 556 (1st Cir. 2017) (recognizing claim under § 1591(a) against hotel operator).

### III.    The Court should not dismiss part of T.W.'s claims based on the statute of limitations.

Section 1595(a) claims are subject to a 10-year limitations period from the time "the cause of action arose." 18 U.S.C. § 1595(c). The Sixth Circuit has recognized that Rule 12(b)(6) is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). The statute of limitations is an affirmative defense, and a plaintiff need not plead around it. *Id.* Only when the allegations **affirmatively show** a claim is time barred is such dismissal appropriate. Here, they do not. T.W. was trafficked at the Paducah ABV Inn repeatedly through 2014 and remained under the control of her trafficker until at least October 2014. (ECF No. 1 ¶¶ 29, 238, 241). She filed this lawsuit in January 2024. The Complaint does not affirmatively show a time bar and thus dismissal based on the limitations period is unwarranted.

Nor is there any merit to Mata Pita's argument that the Court should split up T.W.'s claim and dismiss the portion based on trafficking that occurred more than 10 years before she filed this lawsuit. This approach is barred by the continuing violation doctrine. Courts **have** applied the continuing violation doctrine in cases involving sex trafficking, including claims under the TVPRA, holding that a claim against a hotel that facilitates a plaintiff's trafficking does not accrue until the end of the plaintiff's trafficking that hotel. *S.Y.*, 519 F. Supp. 3d at 1089 (applying doctrine to claim under state law); *J.M. v. Choice Hotels Int'l, Inc.*, No. 222CV00672, 2022 WL 10626493, at *6 (E.D. Cal. Oct. 18, 2022) (*J.M. I*) (applying doctrine to TVPRA claim). Defendants argue that Kentucky law does not recognize application of the continuing tort doctrine in a case of this kind, but this is irrelevant because Kentucky law does not govern. The TVPRA is a federal a statute

with **its own** statute of limitations. How the statute of limitations applies under a federal statute, including when a claim accrues, is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Snyder-Hill v. Ohio State Univ.,* 48 F.4th 686, 698 (6th Cir. 2022).

And, under federal law, T.W.'s claims trigger the continuing violation doctrine. The continuing violation doctrine applies when it would "be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *See Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) (applying doctrine to a claim under Section 1983). When a federal cause of action depends on ongoing conduct, application of the continuing violation doctrine is warranted. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (applying continuing violation doctrine to a hostile work environment claim under Title VII). The nature of a beneficiary claim makes application of the continuing violation doctrine particularly appropriate because such a claim involves a beneficiary defendant's participation in a venture— an ongoing relationship—that facilitates sex trafficking. *Phillips v. Cohen*, 3 Fed. Appx. 212 (6th Cir. 2001) (recognizing application of continuing violation when alleged discrimination is "systemic" and at least one discriminatory act occurred within limitations period).

Equitable tolling also prevents dismissal of any portion of T.W.'s claim based on the statute of limitations. Equitable tolling justifies tolling the statute of limitations under federal statutes when: (1) the plaintiff has been pursuing her rights diligently; but (2) some extraordinary circumstances interfered with filing suit. *See Chavez v. Carranza,* 559 F.3d 486, 494 (6th Cir. 2009); *Stoll v. Runyon, 165 F.3d 1238, 1242* (9th Cir. 1999); *Hongxia Wang v. Enlander, No. 17 CIV. 4932 (LGS), 2018 WL 1276854, at \*4 (S.D.N.Y. Mar. 6, 2018)*; *Doe v. Siddig*, 810 F. Supp. 2d 127, 133 (D.D.C. 2011). When the doctrine of equitable tolling applies, it simply stops the clock (i.e., the limitations period) from running while the extraordinary circumstances exist. *See Artis v.*

*D.C.*, 583 U.S. 71, 80 (2018); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1156 (11th Cir. 2005). The Complaint, at minimum, raises a question of whether the brutal abuse and restrictions on her freedom that T.W. endured qualify as extraordinary circumstances that trigger application of equitable tolling.

While Mata Pita argues that T.W. has not alleged enough facts to show equitable tolling applies here, this doctrine responds to a defendant's affirmative defense based on the statute of limitations, and a plaintiff generally need not plead around such an affirmative defense. The determination of whether equitable tolling applies is generally not done at the pleading stage, and the Court should not reject the doctrine based on a plaintiff's failure to plead enough facts to definitively show the doctrine applies. Mata Pita's reliance on *Abarca v. Little*, 54 F. Supp. 3d 1064, 1070 (D. Minn. 2014) fails to support its argument for dismissal. In *Abarca*, the issue was **not** that the plaintiff had failed to plead enough facts to show that the doctrine of equitable estoppel applied but **rather** that the plaintiff had affirmatively pled facts that showed the doctrine did **not** apply: the complaint alleged that, at the time the plaintiff sought to toll the limitations period, he had been able to freely travel and pursue other avenues of making complaints against the defendants. *Id.* By contrast, T.W. alleges that, no more than 10 years before she filed this lawsuit, she was still under the active control of a trafficker who rendered her physically and psychologically unable to file this lawsuit.  (ECF No. 1 ¶¶ 238-241). These allegations do **not** affirmatively show that equitable tolling does not apply and thus *Abarca* does not support dismissal of any portion of T.W.'s claim.

Questions about application of the discovery rule also preclude dismissal of any portion of T.W.'s claims based on the statute of limitations. "The discovery rule seeks to protect plaintiffs who, through no fault of their own, lacked the information to bring a claim." *Snyder-Hill*, 48 F.4th

at 698. It "protects plaintiffs who are ... struggling to uncover the underlying cause of their injuries from having their claims time-barred before they could reasonably be expected to bring suit." *Id.* (internal quotations and citations omitted). Application of the discovery rule must recognize that "discovering that a defendant caused an injury is part of discovering the injury." *Id.* at 702. The Complaint pleads facts sufficient to raise a question about whether, during the time that T.W.'s. was trafficked—which did not end more than ten years before she filed this lawsuit—the exploitation, abuse, and control she endured prevented her from discovering her injuries and their legal cause. (ECF No. 1 ¶¶ 30, 238-241).

**CONCLUSION**

The Court should deny the Motion to Dismiss of Mata Pita. In the alternative, the Court should grant T.W. leave to file an amended complaint.

Respectfully submitted,

*/s/ E. Douglas Richards*
E. Douglas Richards
401 Lewis Hargett Circle, Suite 210
Lexington, KY 40503
859-229-5851
edr@richardslawky.com

Michael Hamilton (BPR # 010720)
**PROVOST ★ UMPHREY LAW FIRM LLP**
4205 Hillsboro Pike, Suite 303
Nashville, Tennessee 37215
615.297.1932 – phone
615.297.1986 – fax
mhamilton@pulf.com

Guy G. Fisher
**PROVOST ★ UMPHREY LAW FIRM LLP**
350 Pine Street, Ste. 1100
Beaumont, Texas 77701
409.835.6000 – phone
409.813.8625 – fax
gfisher@pulf.com

**ANNIE MCADAMS, PC**
ANNIE MCADAMS
1150 Bissonnet
Houston, TX 77005
713.785.6262 - phone
866.713.6141 - fax
annie@mcadamspc.com

*Attorneys for Plaintiff*


**Certificate of Service**

It is hereby certified that on May 6, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send e-mail notification to all counsel of record.

*/s/ E. Douglas Richards*
E. Douglas Richards
Counsel for Plaintiff