# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

| | |
|---|---|
| JANE DOE (T.W.), an individual,<br><br>Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS AND RESORTS, INC., WYNDHAM HOTEL GROUP, LLC; et al.,<br><br>Defendants. | Case No. 5:24-cv-0008-BJB<br><br>*Filed Electronically* |

## WYNDHAM DEFENDANTS' BRIEF IN SUPPORT MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff (T.W.)'s First Amended Complaint (ECF No. 83, "FAC") fails to cure the defects in her TVPRA claims against the Wyndham Defendants.[1] After the hearing on February 20, 2025, the Court dismissed Plaintiff's Complaint due to insufficient allegations on the "participation in a venture" and "knowledge" elements of her TVPRA claims.[2] The Court instructed Plaintiff to re-plead "the … who, what, when" of her claims with specificity: "who saw what and, nevertheless, decided to take X, Y, Z commercial action to … remain in the sex trafficking business."[3] The FAC contains no such allegations. Pursuant to Fed. R. Civ. P. 12(b)(6), the Wyndham Defendants move to dismiss Plaintiff's claims under Section 1595(a) of the Trafficking Victims Protection Reauthorization Act (the "TVPRA") (Count II) and vicarious liability (Count III) because the FAC fails to plausibly allege that the Wyndham Defendants knew or should have known that any

---

[1] "Wyndham Defendants" means Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, and Super 8 Worldwide, Inc. Wyndham Hotels & Resorts, Inc. is incorrectly named as "Wyndham Hotels and Resorts, Inc."
[2] Transcript of 2/20/25 Remote Hearing (ECF No. 78) at 31:17-24.
[3] *Id.* at 30:10-12.

venture that perpetrated trafficking crimes against Plaintiff or participated in any such sex trafficking venture.[4]

Plaintiff claims that the Wyndham Defendants participated in two sex trafficking ventures by deriving revenue from hotel rooms rented by Plaintiff's alleged trafficker and exercising some degree of control over a franchisee, Vidhi, LLC (the "Franchisee"), and Franchisee's operation of the Paducah Super 8®. Plaintiff attempts to warp the franchisee-franchisor relationship into a sex trafficking venture in two separate ways which the FAC refers to as "Venture 1" and "Venture 2." As to "Venture 1," there is no plausible allegation of participation because Plaintiff pleads no connection between the Wyndham Defendants and Plaintiff's alleged trafficker. And the alleged "Venture 2" amounts to nothing more than a common franchisor-franchisee relationship, which by itself does not constitute a TVPRA "venture" subjecting a franchisor to liability. None of these allegations are sufficient for liability under Section 1595(a). Plaintiff's vicarious liability count is based on conclusory claims regarding the Super 8® brand franchisor's use of brand standards, which do not create an agency relationship in this case. For the same reasons this Court dismissed the original Complaint, the FAC should likewise be dismissed.

**I.      SUMMARY OF PLAINTIFF'S ALLEGATIONS IN THE FIRST AMENDED COMPLAINT.**

Plaintiff alleges that she was trafficked between 2011 and October 2014 at the Paducah Super 8®, a franchised facility independently owned and operated by Franchisee. FAC ¶¶ 33, 80-82. The FAC alleges that the Super 8® brand is "one of Wyndham's brands" and concludes, without supporting facts, that the Wyndham Defendants "oversaw, controlled, and participated in

---

[4] Plaintiff did not seek leave to amend (*cf.* Transcript of 2/20/25 Remote Hearing (ECF No. 78) at 32:1-16), but that failure is academic as amendment would similarly fail under a futility standard for the reasons set forth herein.

aspects of hotel operations that facilitated sex trafficking at the [Paducah Super 8®]." *Id.* at ¶¶ 94-95.

The FAC does not include any well-pled or plausible allegations connecting the Wyndham Defendants to Plaintiff's alleged trafficking. Rather, the FAC again frames the allegations in terms of an "omniscient, third-party narrator" without reference to "actual actors on the scene."[5] *Id.* at ¶¶ 38, 48-50 (alleging Plaintiff was "observed by [Franchisee] hotel staff" or "in the presence of [Franchisee] hotel staff…while her trafficker was escorting and monitoring her," and "it was apparent that her trafficker was guarding her"). In fact, the FAC retracts some of the most specific allegations against the Wyndham Defendants that had been alleged in the original Complaint. *Compare id.* at ¶ 97 ("Upon information and belief, because the signs of T.W.'s trafficking were so obvious and persistent over a period of several years, the [Wyndham Defendants] would have received reports regarding the activity associated with her sex trafficking.") *with* Compl. (ECF No. 1), ¶ 80 ("The [Wyndham Defendants] regularly received reports from Ky Motel and others related to suspected instances of crime, including sex trafficking, at the Paducah Super 8."). The FAC also generally eliminates allegations presented in the original Complaint that there were other victims being trafficked at the Paducah Super 8®.[6] *See* Compl. ¶ 34 (discussing "the widespread trafficking of other victims … at the Paducah Super 8."); ¶ 73 ("There were other victims being trafficked at the Paducah Super 8 at the same time as [T.W.]…."); ¶ 85(e) ("Other traffickers were operating out of this hotel at the same time that [T.W.] was trafficked there."). Unwilling or unable to provide particularized allegations, Plaintiff instead points to claims that the Wyndham

---

[5] Transcript of 2/20/25 Remote Hearing (ECF No. 78) at 10.
[6] *Id.* at 32:11-16 ("I would just ask you to really hone in on these questions about sufficiency of allegations … who knew what, the extent to which other traffickers, other trafficking victims, … and how they might add up to a venture of the sort Mr. Blevins described.").

3

Defendants were generally aware of sex trafficking occurring at hotels, but Plaintiff identifies no news reports on trafficking at the Paducah Super 8®. *See* FAC ¶¶ 257-269.

The FAC lists in conclusory fashion ways in which the Wyndham Defendants allegedly exerted control over operations at the Paducah Super 8® (*e.g., id.* ¶¶ 114-20) but never alleges that the Wyndham Defendants knew of or interacted with Plaintiff or her alleged trafficker. Indeed, nearly all of Plaintiff's allegations concerning the Wyndham Defendants' alleged "monitoring and oversight" of the Paducah Super 8® are made "upon information and belief." *See id.* at ¶¶ 96-107. Despite its length and (selective) detail, the FAC does not plausibly allege a basis to conclude that the Wyndham Defendants—as franchisor of the Super 8® brand and parent/affiliate of the franchisor—should have known of, let alone participated in, Plaintiff's alleged trafficking.

## II. PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE WYNDHAM DEFENDANTS UNDER SECTION 1595(A).

### A. Standard of Review

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts require a plaintiff to allege facts that "state a claim [for] relief that is plausible on its face" and, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Holly v. UPS Supply Chain Sols., Inc.*, 996 F. Supp. 2d 537, 539-40 (W.D. Ky. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556). The Sixth Circuit has explained that a Plaintiff is not allowed an end around past the Supreme Court's rulings in *Iqbal* and *Twombly* through shotgun pleading vague 'facts' based upon information and belief. "The Sixth Circuit has provided clear guidance with respect to allegations that are based solely upon a plaintiff's 'information and belief.'" *See*

4

*Coffman v. 435 Redding, LLC*, No. CV 5:15-220-DCR, 2016 WL 2939151, at *4 (E.D. Ky. May 19, 2016) (outlining Sixth Circuit test). "Indeed, the Sixth Circuit has held that statements based on 'information and belief' are 'precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency.' Such allegations are 'naked assertions devoid of further factual enhancement,' which 'contribute nothing to the sufficiency of the complaint[.]' 'The mere fact that someone believes something to be true does not create a plausible inference that it is true.'" *Great Lakes Acquisition Corp. v. Deary*, No. 19-11502, 2019 WL 4919148, at *2 (E.D. Mich. Oct. 4, 2019) (citing *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013).

### B. The First Amended Complaint lacks well-pled allegations supporting a reasonable inference that the Wyndham Defendants are liable under a "participant" or "beneficiary" theory.

In addition to creating liability for perpetrators of sex trafficking, Section 1595(a) allows for liability against those who "knowingly benefit[], financially or by receiving anything of value from participation in venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 963 (S.D. Ohio 2019). "[A] plaintiff may satisfy these elements by showing that 'defendant's own acts, omissions, and state of mind establish each element.'" *B.D.G. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-3202, 2023 WL 5935646, at *3 (S.D. Ohio Sept. 12, 2023). The FAC fails to state a claim for "participant" or "beneficiary" liability under Section 1595(a) because there are no well-pled allegations suggesting that the Wyndham Defendants knew of, interacted with, or participated in a venture with Plaintiff's alleged trafficker.[7]

---

[7] Although a majority of courts disagree, some courts have held that a complaint fails to plead the first element of "a knowing benefit" if it does not plausibly allege that a defendant had knowledge of the "causal relationship" between her trafficking and the fees paid by the franchisee to that defendant. *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019)

1. <u>The First Amended Complaint does not allege that the Wyndham Defendants participated in a TVPRA "venture" that trafficked Plaintiff.</u>

To satisfy the "venture" element of a claim under Section 1595(a), a plaintiff must allege that a defendant "participat[ed]" in a "venture" that committed a human trafficking crime, and participation "requires 'at least a showing of a continuous business relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement.'" *M.A.*, 425 F. Supp. 3d at 970; *see also H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020) (holding that the "particular venture in which the defendant allegedly participated" must commit a "sex trafficking" crime against the plaintiff). The FAC does not allege a factual predicate from which the Court can reasonably infer that the Wyndham Defendants had an agreement to traffic the Plaintiff.

As an initial matter, the threshold for stating a TVPRA claim against a hotel brand franchisor and the franchisor's parent/affiliate is logically higher than for a claim against a franchisee that owned and operated the facility. As one court recently recognized, "franchisors and corporate parents … are separate from the franchisees who owned and ran the hotels where the alleged trafficking took place. The franchisors and corporate parents are also more distant from the trafficking than the franchisees." *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-cv-00871, 2024 WL 2186173, at *1 (N.D. Ohio May 15, 2024) (denying plaintiff's motion for reconsideration of order granting summary judgment for defendants). Accordingly, and

---

(holding that for the "knowing benefit" element to be sufficiently pled, "there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or[] constructive knowledge of that causal relationship."); *see also A.D. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-646-JES-NPM, 2023 WL 3004545, at *4 (M.D. Fla. Apr. 19, 2023) (holding the mere receipt of royalty fees by "a franchisor [], which has no direct contact with its alleged venture partners" does not establish a causal link to trafficking).

6

understanding that the cases fall all over the map, numerous courts have dismissed TVPRA claims against hotel franchisors for failing to "connect the dots" or otherwise allege a "venture" between the trafficker and the hotel brand franchisor. *See, e.g.*, *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 562 (7th Cir. 2023) (noting "franchisor defendants in that case were one step removed from the sex traffickers (i.e., street-level trafficker →hotel →hotel franchisor)"); *S.C.*, 2024 WL 2186173 at *3 ("Defendant['s] participation in a franchising venture alone is not enough" for TVPRA liability); *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. 2021) ("The Court finds that these allegations are not sufficient to plead that [franchisors] directly participated in a specific venture that trafficked Plaintiff on specific occasions at the specific hotels mentioned in the FAC."); *K.B. v. Inter-Cont'l Hotels Corp.*, No. 19-CV-1213-AJ, 2020 WL 8674188, at *5 (D.N.H. Sept. 28, 2020) ("To the extent that the plaintiff is asserting a theory of direct liability against the [franchisors], the court finds that she has failed to plead sufficient facts to support the 'participation in venture' element because the complaint fails to connect the dots between Plaintiff's alleged sex trafficking and [franchisors]."); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) (finding that direct TVPRA claim as to franchisors was "insufficiently pled as to the 'participation in venture' element because the Complaint fails to connect the dots between Plaintiff's alleged sex trafficking and [franchisors]").

The FAC lacks well-pled allegations that the Wyndham Defendants interacted with or were even aware of Plaintiff's alleged trafficker, and it certainly does not allege that the Wyndham Defendants had a "tacit agreement" or "participated in a venture" with him (so-called "Venture 1," *see* FAC ¶ 289). Plaintiff's allegation that the Wyndham Defendants participated in a "continuous business relationship" with Plaintiff's alleged trafficker by offering a central reservation system that could be used to rent rooms at the Paducah Super 8® (*id.* ¶ 108) is not

sufficient because Plaintiff does not allege that her alleged trafficker used the central reservation system to rent rooms at the Paducah Super 8®. Rather, Plaintiff repeatedly states that her alleged trafficker paid for rooms at the Paducah Super 8® with cash on a day-to-day basis. *Id.* ¶¶ 46-47, 147-48. Moreover, allegations of room rentals to a sex trafficker are not sufficient to plead the "participation in a venture" element of a TVPRA claim. *K.H. v. Riti, Inc.,* No. 1:22-cv-03404, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024) (allegations hotel operator financially benefitted from renting hotel rooms to plaintiff's traffickers and observed signs of trafficking at the hotel were insufficient to establish that hotel operator participated in a sex trafficking venture). The FAC further concedes that the Franchisee (not the Wyndham Defendants) "ran on-the-ground operations at the Paducah Super 8" (*id.* ¶ 80) and thus would have interacted with Plaintiff's alleged trafficker in connection with his alleged rental of rooms at the Paducah Super 8®. There are no allegations in the FAC to support a reasonable inference that any of the Wyndham Defendants – each of which resides in New Jersey (*id.* ¶¶ 3, 5, 7) – had any opportunity to interact with Plaintiff or her alleged trafficker, let alone that the Wyndham Defendants formed a "continuous business relationship" with Plaintiff's alleged trafficker. *Id.* ¶ 80.

Moreover, attempts to impute TVPRA liability on the Wyndham Defendants merely by virtue of the franchisor-franchisee relationship (*see id.* ¶ 300 ("Venture 2")), have been rejected by courts throughout the country. The mere fact that the Wyndham Defendants provided services to franchisees, by itself, is not enough to satisfy the "venture" requirement. To survive a motion to dismiss, Plaintiff must allege that the Wyndham Defendants tailored their routine business operations to advance a trafficking venture. *See, e.g., Doe 1 v. Apple Inc.*, 96 F.4th 403, 416 (D.C. Cir. 2024) (finding that, for purposes of creating liability under Section 1595(a) of the TVPRA, "purchasing a commodity, without more, is not 'participation in a venture' with the seller"); *Doe*

*#1, v. Red Roof Inns, Inc.* 21 F.4th at 714, 725 (11th Cir. 2021) (finding allegations that a hotel was renting rooms to traffickers in the normal course of business was not "participation in a venture" under the TVPRA); *cf. G.G.*, 76 F.4th at 562 ("Salesforce sold Backpage targeted solutions addressed to the needs of Backpage's business, repeatedly assessed Backpage's 'operational needs,' and provided 'active, ongoing support' that was 'tailored' to those needs."); *Ricchio v. McLean,* 853 F.3d 553, 555 (1st Cir. 2017) (hotel operator had a history of working with the trafficker and "enthusiastically" exchanged "high-fives" in the hotel parking lot with the trafficker while talking about "'getting this thing going again,'" even after the "coercive and abusive treatment of [the plaintiff] as a sex slave had become apparent" to the hotel operators). Simply put, routine commercial activity is not "participation" in sex trafficking under the TVPRA, and Plaintiff's claim must fail.

Finally, an assertion that a franchisor (or anyone else) merely failed to prevent or detect Plaintiff's alleged trafficking does not constitute participation in a venture under the TVPRA. *See, e.g., A.D. v. Holistic Health Healing Inc.*, No. 2:22-cv-641-JES-NPM, 2023 WL 3004546, at *4 (M.D. Fla. Apr. 19, 2023) (defendant's "failure to affirmatively prevent or inhibit sex trafficking does not constitute participation."); *A.D. v Marriott Int'l, Inc*. No. 2:22-cv-645-JES-NPM, 2023 WL 5510268, at *4 (M.D. Fla. Aug. 25, 2023) (finding allegations that "the [alleged] franchisor and the hotel operator did not fight hard enough to keep these traffickers from using their hotel" and took "ineffective steps to curtail the traffickers" were insufficient to plead the "participating in a venture" element); *L.H. v. Marriott Int'l, Inc.*, 604. F. Supp 3d 1346, 1361 (S.D. Fla. 2022) (holding allegations that a "local business venture simply allowed the trafficking by 'fail[ing] to combat sex trafficking through ineffective policies, procedures, and training for the purpose of maximizing their profit'" are "not enough to trigger TVPRA liability"); *A.B. v. Wyndham Hotels*

9

*& Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) ("[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking."); *A.B. v. Marriott*, 455 F. Supp. 3d at 182 ("We do not read the [TVPRA] as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking."); *B.M.*, 2020 WL 4368214, at *7 ("To be clear, the Court does not read [18 U.S.C. § 1594(a)] requiring hotels or their franchisors to affirmatively stop sex trafficking.").

   2. <u>The First Amended Complaint fails to state a TVPRA claim because there are no plausible allegations that the Wyndham Defendants "knew or should have known" of a venture to traffic Plaintiff.</u>

A defendant cannot be liable under Section 1595(a) unless it "knew or should have known that the venture was engaged in [sex trafficking]." 18 U.S.C. § 1595(a); *see also Red Roof*, 21 F.4th at 723; *M.A.*, 425 F. Supp. 3d at 964. Here, there are no allegations that the Wyndham Defendants had actual knowledge that Plaintiff was being trafficked. Instead, Plaintiff focuses on constructive knowledge and claims that the Wyndham Defendants should have known about Plaintiff's alleged trafficking because of (1) "obvious signs" of Plaintiff's alleged trafficking at the Paducah Super 8®, (2) alleged incidents of trafficking at other Wyndham-branded properties, (3) alleged policies requiring reporting of signs of sex trafficking by the Franchisee to the Wyndham Defendants, and (4) general knowledge of human trafficking in the hospitality industry. None of these allegations satisfy the knowledge requirement.

Plaintiff does not allege with specificity with whom she or her alleged trafficker interacted with while at the Paducah Super 8®. *E.g.,* FAC ¶ 75 ("none of the hotel staff … inquired about T.W.'s wellbeing or offered her any assistance"). Nor does Plaintiff allege that the Franchisee or the Franchisee's staff at the Paducah Super 8® reported Plaintiff's alleged trafficking to anyone. Even if the Franchisee's staff observed "red flags" (*e.g., id.* at ¶¶ 43, 46, 49, 53, 60, 69, 74), there are no well-pled allegations that the Franchisee reported these observations to the Wyndham

10

Defendants. Nearly all of Plaintiff's allegations attempting to impute this knowledge to the Wyndham Defendants are based "upon information and belief" and should be disregarded. *See Flagstar Bank, F.S.B.*, 727 F.3d at 506; *see also* FAC ¶¶ 96-107. The TVPRA does not provide for liability unless the defendant knew, or at least should have known, that the specific "venture" in which it participated trafficked a particular plaintiff. *See e.g.*, *Red Roof*, 21 F.4th at 725.

Moreover, "a defendant must have had either actual or constructive knowledge that the venture was in violation of the TVPRA *as to the plaintiff* to make out a TVPRA claim." *Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, No. 23-1493 (ZNQ) (RLS), 2023 WL 8890229, at *4 (D.N.J. Dec. 26, 2023). "General awareness that sex trafficking has occurred at a franchisee's properties does not reach the level of 'should have known" that is required to impose liability under the TVPRA. *Id.; see also J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) ("Plaintiff alleges that Wyndham was on notice about the prevalence of sex trafficking generally at its hotels. But this is not sufficient to show that Wyndham should have known about what happened to this plaintiff."). As one court put it, concluding otherwise would lead to absurd results:

> [T]o conclude that franchisors like Wyndham, Howard Johnson, Inc., and Choice Hotels are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.' Indeed, under plaintiff's theory, the liability of franchisors – which are further removed from the sex trafficking than the actual hotels are – would be much easier proven than the liability of the hotels themselves. This would make no sense.

*S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020).

Similarly, allegations regarding policies requiring franchisees to report suspected criminal activity do not establish constructive knowledge, particularly where (like here) there are no allegations such reports were made. *E.g.*, Compl. ¶ 95; *see Doe (T.M.) v. G6 Hosp. LLC*, No. 1:23-cv-2598-MLB, 2024 WL 4457563, at *6 (N.D. Ga. Sept. 23, 2024) (denying request to amend

11

complaint where plaintiff alleges "G6 Hospitality required Unity Plus to report suspected criminal activity" but "fails to allege Unity Plus or anyone else ever *actually* alerted G6 Hospitality to anything from which it could have known about her victimization.") (emphasis in original); *Doe (A.M.L.) v. Wyndham Hotels & Resorts, Inc.,* No. 8:23-cv-01554-JVS (JDEx), 2024 WL 2104596, at *3 (C.D. Cal. Feb. 28, 2024) ("However, the fact that the hotel staff were required to report suspected criminal activity does not in and of itself establish that the hotel staff actually did report such activity or even that the hotel staff followed the policy and would have reported the suspicious activity to the Wyndham Brand Defendants."); *Doe (K.B.) v. G6 Hosp., LLC,* No. 1:23-CV-2597-TWT, 2023 WL 8650785, at *6 (N.D. Ga. Dec. 14, 2023) (dismissing TVPRA claim against franchisor where "there is no allegation that Hare Krishna actually followed the policy [to report up suspected criminal activity] by reporting K.B.'s trafficking"); *S.G. v. Vagabond Inn Corp. et al.,* No. 8:21-cv-00955-SSS-KESx, 2022 WL 22903718, at *7 (C.D. Cal. Mar. 2, 2022) ("although the complaint cites to Defendants' corporate policies related to sex trafficking, it does not similarly allege that the franchisee hotel staff, who allegedly witnessed signs of Plaintiff's sex trafficking, reported these signs to Choice or Wyndham pursuant to any corporate policies so as to indicate these Defendants' knowledge of Plaintiff's trafficking") (internal citation omitted); *A.B. v. Wyndham,* 532 F. Supp. 3d at 1022-26 (dismissing TVPRA claim where "Defendants also allegedly provided their branded properties with a platform for employees to report suspicious activities occurring at the hotel to Defendants.").

Finally, generalized knowledge that sex trafficking occurs at hotels is not sufficient to plead a TVPRA claim, as this Court already decided. Transcript of 2/20/25 Remote Hearing (ECF No. 78), 25:11-14.; *see A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020)

12

("General knowledge of commercial sex activity occurring at hotels across the United States is insufficient . . .").

### C. Plaintiff fails to state a vicarious liability claim against the Wyndham Defendants.

The FAC fails to plausibly allege that the Franchisee is the agent of the Wyndham Defendants under federal common law or under Kentucky law. *L.H. v. Red Roof Inn, Inc.*, No. 3:22-cv-625-CHB, 2023 WL 5725574, at *6 (W.D. Ky. Sept. 5, 2023) (noting the split of authority with respect to which law applies); *but see Sims v. Marriott Int'l., Inc.* 184 F. Supp. 2d 616, 617 (W.D. Ky. 2001) (applying Kentucky law to evaluate apparent agency of a hotel franchisor). The Sixth Circuit relies on the Restatement of Agency when applying the federal common law of vicarious liability. *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016). Agency is most commonly defined as the "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006).

Under Kentucky's rule, "[a] franchisor is vicariously liable for the tortious conduct of the franchisee when it, in fact, has control or right of control over the daily operation of the specific aspect of the franchisee's business that is alleged to have caused the harm." *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 47 (Ky. 2008). The level of control must equate with the franchisee being nothing more than an alter ego of the franchisor. *Fant v. Beamteam, Inc.*, No. 2023-CA-0280, No. 2023-CA-0294, 2024 WL 387729, at *3 (Ky. Ct. App. Feb. 2, 2024). "[A]nd the level of control must be supervision of daily activities. Being able to generally control … by terminating the franchise … is not the type of daily involvement contemplated by the instrumentality test of *Papa John's*." *Id.* at *4.

13

There is no basis to impute liability from the Franchisee to the Wyndham Defendants based on the allegations in the FAC. Vicarious liability theories based on a franchise relationship must be evaluated in the context of a franchisor's obligations under the Lanham Act, which "requires supervision of trademark licensees at the expense of abandonment of the trademark," the purpose being "to ensure the integrity of registered trademarks, not to create a federal law of agency." *Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322, 1327-28 (7th Cir. 1979); *see also, e.g., Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1520 (11th Cir. 1992) (same). To that end, a franchisor's imposition of brand standards aimed at promoting uniformity and quality across a franchise system, as a matter of law, does not provide a basis for vicarious liability. *See Burnette v. Hilton Franchise Holdings LLC*, No. 17-12128, 2021 WL 118924, at *8 (D.N.J. Jan 13, 2021) (dismissing vicarious liability claim against hotel brand franchisors because hotel franchisors "do not exercise day-to-day control over the [h]otel through the [Franchise License Agreement] or their 'actual practice' of enforcing the Brand Standards").

Plaintiff must set forth allegations from which the Court could plausibly infer that an agency relationship exists between at least one of the Wyndham Defendants, the Franchisee, and its staff. Here, Plaintiff acknowledges that the Paducah Super 8® was owned by "KY Motel" (who is not named as a defendant) and operated by the Franchisee during the alleged trafficking period. FAC ¶ 79. Yet, Plaintiff alleges in a conclusory fashion that the Wyndham defendants "did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools used." *Id.* ¶ 309(c). The Court need not accept such conclusory allegations as true. *See Great Lakes Acquisition Corp.*, 2019 WL 4919148, at *2.

Plaintiff does not allege that Franchisee was the "alter ego" of the Wyndham Defendants, and there is no claim that the Wyndham Defendants had the right to run the Paducah Super 8® on

14

a daily basis. Similarly, Plaintiff's generalized, conclusory allegations that all three Wyndham Defendants "retained control" over aspects of operations at the Paducah Super 8® are not enough to allege agency under the Restatement. *See* FAC ¶ 306; *see also Iqbal*, 556 U.S. at 678. Numerous courts have acknowledged that a franchisor's imposition of brand standards aimed at promoting uniformity and quality across a franchise system therefore does not give rise to agency. *See, e.g.*, *S.C.*, 2024 WL 2186173, at *7 (granting summary judgment for WHR on TVPRA vicarious liability claim and noting "[f]or control to be agency-creating, that control must be (1) interim, and (2) extend over daily operations"); *Doe (G.N.C.) v. Uniquest Hosp., LLC,* No. 23-cv-7980, 2024 WL 4149251, at *6 (S.D.N.Y. Sept. 11, 2024) (where "[t]he only allegation with any factual content is the assertion that Uniquest and Brookwood are agents of Hilton Franchise because Hilton Franchise 'exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisee to operate Embassy Suites Buffalo,'" holding under New York law, "[n]othing is alleged satisfying the 'high standard' of 'complete control' rendering the franchisee's independence a 'fiction.'"). Just as before, the vicarious liability claim against the Wyndham Defendants should be dismissed.

### III. WYNDHAM DEFENDANTS ADOPT THEIR PRIOR ARGUMENTS IN THEIR MOTION TO DISMISS, INCLUDING STATUTE OF LIMITATIONS ARGUMENTS.

Consistent with the Court's orders at the Remote Hearing, this Memorandum attempts to address the concerns raised by the Court with respect to Plaintiff's pleading deficiencies. Transcript of 2/20/25 Remote Hearing (ECF No. 78) at 32:7-10. In the spirit of brevity, the Wyndham Defendants incorporate by reference all arguments raised in the briefing on their Motion to Dismiss Plaintiff's original Complaint (ECF Nos. 21, 36) and do not reiterate those arguments in full here. This includes, without limitation, arguments that Plaintiff's claims are barred in whole

or in part by the applicable statute of limitations, and the doctrines of equitable tolling and continuing tort do not apply to save Plaintiff's claims.

Further, for the sake of completeness, the Wyndham Defendants note that Plaintiff alleges all Defendants are jointly and severally liable. FAC, ¶ 338. Assessing joint and several liability, which is a remedy and not a cause of action, requires there to be a judgement against the Wyndham Defendants (and other Defendants) in the first place, which, for the reasons stated above, Plaintiff has failed to allege is warranted.

## IV.    CONCLUSION

For the foregoing reasons, the Wyndham Defendants respectfully request that the Court dismiss the Complaint against them with prejudice under Rule 12(b)(6) for failure to state a claim.

Dated: April 4, 2025

Respectfully submitted,

/*s/ Justin S. Fowles*
Justin S. Fowles (KBA #92550)
Allison W. Weyand (KBA #95156)
FROST BROWN TODD LLP
400 West Market Street, Suite 3200
Louisville, Kentucky 40202-3363
T:  502.568.0356
jfowles@fbtlaw.com
aweyand@fbtlaw.com

David S. Sager (admitted *pro hac vice*)
DLA Piper LLP (US)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
T:  973.520.2550
david.sager@us.dlapiper.com

Susan N. Acquista (admitted *pro hac vice*)
DLA Piper LLP (US)
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133

        T: 619.699.2723
        Susan.acquista@us.dlapiper.com

*Counsel for Defendants*
*Wyndham Hotels & Resorts, Inc.,*
*Wyndham Hotel Group LLC, and*
*Super 8 Worldwide, Inc.*

17

## **CERTIFICATE OF SERVICE**

It is hereby certified that on April 4, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send e-mail notification to all counsel of record as follows:

Guy Fisher
Bryan O. Blevins, Jr.
**Provost Umphrey Law Firm, LLP**
350 Pine Street, Ste. 1100
Beaumont, Texas 77701
409.835.6000
Email: gfisher@pulf.com
Email: bblevins@pulf.com

William Michael Hamilton
**Provost Umphrey Law Firm LLP**
4205 Hillsboro Pike, Suite 303
Nashville, Tennessee 37215
Email: Mhamilton@pulf.Com

Annie McAdams
**ANNIE MCADAMS, PC**
2900 North Loop W, Suite 1130
Houston, Texas 77092
Email: Annie@mcadamspc.Com

E. Douglas Richards
401 Lewis Hargett Circle, Suite 210
Lexington, Kentucky 40503
Email: edr@richardslawky.com
Email: Edrichards714@yahoo.Com

*Counsel for Plaintiff Jane Doe (T.W.)*

Scott L. Tyler
Kimberly M. Maraman
**Waters, Tyler, Hofmann & Scott, LLC**
1947 E. Spring Street
New Albany, Indiana 47150
Email: Styler@wthslaw.Com
Email: Kmaraman@wthslaw.com

*Counsel for Defendant
Mata Pita, Inc. dba America's Best Value Inn*

Benjamin C. Struby
**LATHROP GPM LLP**
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108
Email: Benjamin.struby@lathropgpm.Com

Eric L. Yaffe
Maisa Jean Frank
**LATHROP GPM LLP**
600 New Hampshire Avenue, Northwest
The Watergate - Suite 700
Washington, DC 20037
Email: Eric.yaffe@lathropgpm.Com
Email: Maisa.frank@lathropgpm.Com

*Counsel for Defendant
Red Lion Hotels Corporation*

            *s/ Justin S. Fowles*

*Counsel for Defendants
Wyndham Hotels & Resorts, Inc.,
Wyndham Hotel Group LLC, and
Super 8 Worldwide, Inc.*