**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION**

|  |  |  |
|---|---|---|
| JANE DOE (T.W.), AN INDIVIDUAL, | ) ) ) | CIVIL ACTION NO. 5:24-cv-00008-BJB |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| WYNDHAM HOTELS AND RESORTS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS RED LION AND SONESTA'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Red Lion Hotels Corporation ("Red Lion") and Sonesta International Hotels Corporation ("Sonesta"), by and through their attorneys, move to dismiss Plaintiff Jane Doe's First Amended Complaint (ECF No. 83, "FAC") under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted (the "Second Motion"). This Court previously granted Defendants' Motions to Dismiss Plaintiff's original Complaint on the grounds that she had failed to plausibly plead the required elements of her TVPRA claims—specifically, "participation in a venture" and "knowledge."[1] Plaintiff's Complaint was littered with "omniscient, third-party narra[tion]," and she failed to allege facts with the requisite particularity.[2] Omniscient narration is problematic because it is not based on Plaintiff's knowledge and is not based on knowledge from "actual actors on the scene."[3]

---

[1] *See* Hearing Transcript of February 20, 2025 remote hearing, at 31:17-24.
[2] *Id.* at 9-10, 30:10-12, 31:17-24.
[3] *Id.* at 10:5-10.

Plaintiff's FAC is equally deficient because it does not meet this Court's instruction to establish the "who, what, when" of her allegations and she proffers similarly conclusory allegations as her original Complaint. The FAC is a reorganized reiteration of the Complaint and fails to plausibly allege that VHGI, Inc. ("VHGI"),[4] the former licensor of the Americas Best Value Inn® brand, participated in a venture that trafficked her, and knew or should have known of her alleged trafficking at the former Americas Best Value Inn hotel located at 5125 Old Cairo Road, Paducah, Kentucky 42001 (the "ABV Inn"). Accordingly, the FAC should also be dismissed on the same grounds on which her Complaint was dismissed.

Additionally, as previously briefed by Red Lion and Sonesta, and as supported by the case law and analysis below, Red Lion and Sonesta are very far-removed from the facts of this case and should not be held liable as successors to the Membership Agreement entered into between Defendant VHGI and the independent, owner-operator of the ABV Inn, Mata Pita, Inc ("Mata Pita"). Moreover, Red Lion and Sonesta incorporate their arguments that Plaintiff's claims are time barred, in whole or in part.

## I.     FACTUAL BACKGROUND

### A.  The FAC Is Littered with Factual Shortcomings.

> **i.     Plaintiff's attempt to impute liability on Red Lion and Sonesta is too attenuated because Red Lion and Sonesta did not acquire the Americas Best Value Inn® brand until years after her trafficking.**

Plaintiff alleges that between 2011 and October 2014 she was repeatedly trafficked at two hotels in Paducah, Kentucky, including the ABV Inn. FAC ¶¶ 22, 33, 137. Throughout the applicable time period, VHGI licensed the Americas Best Value Inn® brand to members, such as

---

[4] VHGI Franchising, Inc. was formerly Vantage Franchising, Inc., and VHGI, Inc. was formerly Vantage Hospitality Group, Inc.

Defendant Mata Pita, through Membership Agreements, and members independently owned and operated their ABV Inns. FAC ¶¶ 11-13, 19. During this time, neither Red Lion nor Sonesta had any relationship with the ABV Inn. Red Lion and Sonesta did not acquire the Americas Best Value Inn® brand until years after the alleged trafficking, and thus never owned, operated, controlled or managed the ABV Inn during the time of the alleged incidents. On September 13, 2016, almost two years after Plaintiff's alleged trafficking ceased, Red Lion Hotels Franchising, Inc. and Red Lion Hotels Canada Franchising, Inc., wholly-owned subsidiaries of Red Lion, purchased the Americas Best Value Inn® brand from Vantage Hospitality Group, Inc., Vantage Franchising, Inc., and other related entities. Following this purchase, VHGI, Inc. and VHGI Franchising, Inc. continued operating separate and apart from Red Lion.[5] On December 30, 2020, **six years** after Plaintiff's alleged trafficking ceased, Sonesta acquired Red Lion and the Americas Best Value Inn® brand.

  ii.  **Plaintiff's FAC is still deficient because it contains allegations that are conclusory, based on omniscient assumptions, and based on implausible "would haves."**

Plaintiff alleges "Venture 1" and "Venture 2" to establish beneficiary liability arising from VHGI's alleged participation in a sex trafficking venture, including her alleged sex trafficking at the ABV Inn. Venture 1 attempts to tie VHGI to Plaintiff's alleged sex trafficking by alleging it

---

[5] VHGI, Inc. maintains an active status on the Florida SOS website, and VHGI Franchising, Inc. has been inactive since 2019. https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=VHGI%20P990000580132&aggregateId=domp-p99000058013-95933cab-5222-42f2-9445-f86144e37471&searchTerm=VHGI&listNameOrder=VHGI%20P990000580132 and https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=VHGIFRANCHISING%20P120000772702&aggregateId=domp-p12000077270-f1c16f6e-6b15-4586-ad7a-6b0bfd72e5ab&searchTerm=VHGI&listNameOrder=VHGI%20P990000580132.

"knowingly benefited from participating in a venture that it knew or should have known was engaged in sex trafficking through their role in the continuous business relationship between the Paducah ABV Inn and . . . T.W.'s trafficker." *See* FAC ¶¶ 202-11, 315. As listed below, Plaintiff's allegations proffered in support of the ABV Brand Defendants allegedly having such a role are based on omniscient assumptions and do not support beneficiary liability. *See generally id at* ¶¶ 202-11, 319. Notably, many of these allegations broadly speak to a franchisor-franchisee relationship.

Venture 2 is broader than Venture 1 and alleged to be VHGI's participation "in a commercial hotel-operating venture with one another that facilitated sex trafficking at the Paducah ABV Inn." *Id.* ¶ 325. Plaintiff similarly asserts that the "continuous business relationship facilitated traffickers in facilitating victims and specifically facilitated the trafficking of T.W." *See generally id.* at ¶¶ 202-11, 320, 326. Additionally, the allegations stating *inter alia* that the "ABV Brand Defendants knew about a brand-wide problem in their operations" are also insufficient (for the reasons and case law discussed below) to allege that VHGI participated in facilitating Plaintiff's trafficking at the Paducah ABV Inn. *See generally id.* at ¶¶ 270-277.

Plaintiff's FAC does not include plausible allegations regarding Venture 1 and Venture 2 tying VHGI to her alleged trafficking because she fails to plead based on her knowledge. *See generally* FAC, Section III, Facts Specific to the Paducah ABV Inn. By way of example, the following allegations fall short, are conclusory, are based on information and belief, and/or are "omniscient" assumptions:

> ¶ 164 While at the Paducah ABV Inn, T.W.'s trafficker would beat her, and she would scream and cry . . . Based on the volume and intensity of the altercation, these altercations would have been heard by other hotel guests and staff performing their normal duties.

> **Shortcoming**: Omniscient assumption based on a "would have."

4

¶ 168 The activity associated with T.W.'s trafficking was so frequent and obvious that, on information and belief, guests at the hotel made complaints about the activity.

**Shortcoming**: Omniscient assumption and based upon information and belief.

¶ 179 On information and belief and based on the persistence and obviousness of the activity, Mata Pita, received complaints about the activity associated with T.W.'s sex trafficking . . . .

**Shortcoming**: Omniscient assumption and based upon information and belief.

¶ 190 Upon information and belief, because the signs of T.W.'s trafficking were so obvious and persistent over several years, the ABV Brand Defendants would have received reports regarding the activity associated with her sex trafficking and her trafficker dealing illegal drugs on site.

**Shortcoming**: Omniscient assumption based on a "would have" and upon information and belief.

¶ 193 Upon information and belief, because the signs of T.W.'s trafficking were so obvious and persistent over several years, guests would have complained about this activity to the ABV Brand Defendants.

**Shortcoming**: Omniscient assumption based on a "would have" and upon information and belief.

¶ 197 Upon information and belief, the data that the ABV Brand Defendants had access to regarding the Paducah ABV Inn would have revealed signs of persistent activity associated with T.W.'s trafficking over several years . . . .

**Shortcoming**: Omniscient assumption based on a "would have" and upon information and belief.

¶ 199 Upon information and belief, through this on-site presence at the Paducah ABV Inn, the ABV Brand Defendants would have observed the activity associated with T.W.'s trafficking because this activity was obvious, frequent, and persisted over several years.

**Shortcoming**: Omniscient assumption based on a "would have" and upon information and belief.

¶ 201 Because the signs of T.W.'s sex trafficking at the Paducah ABV Inn were obvious and persisted over dozens of stay[s] across several years . . . there is reason to believe that guests would have raised concerns or complaints about this activity.

Whether such reports were made is information peculiarly within Defendant's control.

**Shortcoming**: Omniscient assumption based on a "reason to believe."

¶ 203 Despite having at least constructive knowledge of the activity associated with T.W.'s trafficking, the ABV Brand Defendants continued renting rooms to her trafficker.

**Shortcoming**: Omniscient assumption.

¶¶ 176, 177, 178, 180, 182, 183,184, 185, 189, 191, 192, 194, 195, 196, 198, 202, 204, 206, 207, 208, 209, 210, 211, 217, 218, 220, 221, 222, 223, 224, 257, 271, 272, 273, 274, 276.

**Shortcoming:** This non-exhaustive list of allegations are also omniscient assumptions that do not demonstrate they were based on Plaintiff's personal knowledge.

Plaintiff also raises very similar allegations, if not identical allegations, that were insufficient in the original Complaint and remain so in her FAC. For example, ¶ 202 of the FAC alleges how "the ABV Brand Defendants participated in the continuous business relationship between traffickers" and is nearly identical to ¶ 173 of the Complaint, except for the addition of ¶ 202(b),(c), (f). *See, e.g.*, the following similar allegations FAC, ¶¶ 216-217, Compl. ¶¶ 205-206; FAC ¶189, Compl. 153, 155; FAC ¶¶ 197-198, Compl. ¶ 157.

Plaintiff's allegations regarding VHGI's control over Mata Pita are also conclusory and do not establish that VHGI knew, should have known, or participated in her trafficking at the ABV Inn. All of her allegations regarding VHGI's "monitoring and oversight" are based "upon information and belief" and/or do not assert her personal knowledge. *See* FAC ¶¶ 189-211. Notably lacking are any allegations that she had personal knowledge that Mata Pita or any of its employees reported her trafficking or any trafficking to VHGI. She only alleges that, "[u]pon information and belief, the ABV Brand Defendants required hotel staff and Mata Pita to report all suspected instances of crime . . . and sex trafficking" and that they "*would have* received reports regarding

the activity associated with her sex trafficking and her trafficker dealing illegal drugs on site." *Id.* at ¶ 189 (emphasis added). Plaintiff goes so far as to assume that "guests would have complained about this activity to the ABV Brand Defendants," FAC ¶ 193, without making any allegations based on personal knowledge. Plaintiff also alleges that "[u]pon information and belief, the data that the ABV Brand Defendants had access to regarding the Paducah ABV Inn would have revealed signs of persistent activity associated with T.W.'s trafficking over several years . . . ." *Id.* ¶ 197. This allegation is contradicted by the absence of any alleged personal knowledge that her trafficker used his or her identity when renting rooms at the ABV Inn. She alleges that her trafficker paid in cash or by gift cards, which indicates that he acted *incognito. Id.* at ¶¶ 146-48. Thus, her insinuation that the ABV Brand Defendants collected data about her and her trafficker's related room rentals is conclusory. Without boots on the ground at the hotel, it is not plausible that VHGI would have known or should have known about her trafficking or the venture that trafficked her, let alone her trafficker.

Similarly deficient, Plaintiff alleges that VHGI conducted "on-site" inspections and that they "would have observed the activity" associated with her trafficking. *See id.* ¶ 199. Any of her allegations, based on "would haves" are not plausible allegations because they are based on omniscient assumptions. Plaintiff's plethora of "would haves" are naked assertions devoid of factual enhancement. *See* examples of "would have" allegations listed above.

Because Plaintiff is unable to particularize her allegations tying VHGI to her alleged trafficking at the ABV Inn, she attempts to draw on VHGI's purported generalized knowledge that sex trafficking occurs in the hospitality industry and throughout its own operations. *See generally* FAC, Section IV. The news articles identified by Plaintiff, purportedly supporting VHGI's "role in providing a venue where sex trafficking has continued unabated for years" do not report on any

sex-trafficking concerns in Kentucky, let alone the ABV Inn where Plaintiff was trafficked. *See* FAC at ¶ 270 (listing reports in ND, TX, CT, OH, GA, AL, MD, NC, PA). Merely alleging that VHGI knew of, should have known of, and/or participated in her alleged trafficking, is not sufficient to plausibly assert franchisor liability.

Furthermore, Plaintiff's allegations in support of her vicarious liability theory are also insufficient because they flag universal indicia of franchisor-franchisee relationships (*e.g.*, brand standards)—they do not plausibly allege vicarious liability based on agency principles. *See, e.g.,* FAC ¶¶ 216-224, 326, 330-332 (*e.g.*, quality or outcome standards, and trademark protections, etc.) Fatally, Plaintiff pleads VHGI's alleged control over Mata Pita on information and belief without any personal knowledge—such allegations are at most also conclusory. *See* FAC ¶¶ 220, 222.

Because of these deficiencies, and for the reasons and case law discussed below, Plaintiff's allegations fail to state a claim for TVPRA liability against Red Lion and Sonesta.

## II.    LEGAL ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint when it fails to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility asks for more than "a sheer possibility that a defendant has acted unlawfully" and requires that a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted); *see ISCO Indus., Inc. v. Fed. Ins. Co.*, 587 F. Supp. 3d 558, 566 (W.D. Ky. 2022) (quoting the same). For purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *Saumer v. Cliffs Nat. Res. Inc.*, 853 F.3d 855, 858 (6th Cir. 2017) (citation omitted).

This presumption, however, is not applicable to legal conclusions. *See Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a "context-specific task" that requires the reviewing court "to draw on its judicial experience and common sense." *ISCO*, 587 F. Supp. 3d at 566. Accordingly, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

The Sixth Circuit has held that allegations made on "information and belief" are "'precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency.' Such allegations are 'naked assertions devoid of further factual enhancement,' which 'contribute nothing to the sufficiency of the complaint[.]' 'The mere fact that someone believes something to be true does not create a plausible inference that it is true.'" *Great Lakes Acquisition Corp. v. Deary*, No. 19-11502, 2019 WL 4919148, at *2 (E.D. Mich. Oct. 4, 2019) (citing 6th Cir. cases).

Because Plaintiff's complaint is largely based upon information and belief, lacks personal knowledge, and contains numerous "would have" allegations, she does not meet the plausibility threshold and her claims against Red Lion and Sonesta must be dismissed.

**A. The FAC Lacks Well-Pleaded Allegations that VHGI is Liable Under the TVPRA.**

The TVPRA imposes civil liability on "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). A claim for beneficiary liability under the TVPRA, as alleged here, requires that a plaintiff plausibly allege that the defendant "(1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or

actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *L.H. v. Red Roof Inn, Inc.*, No. 3:22-CV-625-CHB, 2023 WL 5725574, at *6 (W.D. Ky. Sept. 5, 2023) (citing *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021)). A plaintiff may satisfy these elements by a showing of direct liability (*i.e.*, a defendant's own acts, omissions, and state of mind) or indirect liability (*i.e.*, vicarious liability). *Id.* (citing *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020)). Here, it is proper to analyze liability as to VHGI under the TVPRA because VHGI licensed the Americas Best Value Inn® brand to Mata Pita during the relevant period as alleged by Plaintiff—not Red Lion and Sonesta.

### i. Plaintiff does not plausibly allege that VHGI participated in a venture that trafficked her.

To establish the participation element of a civil TVPRA claim, a plaintiff must plausibly allege (1) that the franchisor directly participated in a venture that trafficked the plaintiff, or (2) that it engaged in activities that "established a pattern of conduct or could be said to have a tacit agreement" with a plaintiff's trafficker. *See, e.g., K.O. v. G6 Hosp., LLC*, 22-11450, 2024 WL 1396269, at *11 (E.D. Mich. Mar. 31, 2024) (recognizing that the franchisor liability hinges on whether a plaintiff can "establish a pattern of conduct or could be said to have a tacit agreement" with the plaintiff's trafficker); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 20-CV-00656-BLF, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) (recognizing a direct liability claim against franchisors requires that a plaintiff plausibly plead that the franchisors "directly participated in a venture that trafficked [the plaintiff]"); *Doe 1 v. Red Roof Inns, Inc.*, Case No. 1:19-cv-3840, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) (stating "[a]ssociation alone cannot establish liability; instead, knowledge and 'some participation in the sex trafficking act itself must be shown'" and finding plaintiff failed to plausibly allege the franchisor ever interacted with her (internal citation omitted)).

Here, Plaintiff does not allege that VHGI directly participated in the venture, with her, or her trafficker. The closest Plaintiff comes to making such allegations are her claims that rooms were rented through a central reservation system and that VHGI set check in procedures and policies. *See* FAC ¶ 220-203. Similar allegations have been found to be insufficient in other cases. *See Doe (K.B.) v. G6 Hosp., LLC*, No. 1:23-CV-2597-TWT, 2023 WL 8650785, at *5 (N.D. Ga. Dec. 14, 2023) (citing *Doe #1*, 21 F.4th at 726 (finding allegations that franchisors "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" insufficient to "suggest that the franchisors participated in an alleged common undertaking or enterprise with the Does' sex traffickers or others at the hotel who violated the statute")). They are likewise insufficient here.

Thus, Plaintiff must allege a pattern of conduct or tacit agreement between VHGI and the venture. "[A] plaintiff must connect the dots between her and a franchisor to satisfy the participation in a venture element . . . **and must allege more than general knowledge of sex-trafficking problems in the hotel industry, or even at defendants' franchisee hotels**." *L.H.*, 2023 WL 5725574, at *7 (cleaned up) (emphasis added). Mere observation of trafficking activity, even if it were alleged, does not rise to the level of participation in a trafficking venture. *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *4 (11th Cir. Feb. 9, 2024). Plaintiff fails to connect the dots in this case. Her allegations that "the ABV Brand Defendants regularly inspected the Paducah ABV Inn . . . [and] [u]pon information and belief, through this on-site presence . . . the ABV Brand Defendants would have observed the activity associated with T.W.'s trafficking" are omniscient assumptions not pled on personal knowledge. *See* FAC ¶¶ 198-199. Additionally, her allegations regarding VHGI's knowledge of sex-trafficking problems in the hotel industry and at Americas Best Value Inn® branded hotels are insufficient. *See, e.g.*, FAC ¶¶ 270-273.

Accordingly, she does not plausibly allege that any individual from VHGI witnessed any signs of her trafficking or that VHGI, in fact, had "boots on the ground" in the hotel.

With regard to the participation in a venture prong, there is a difference between the franchisee and franchisor. *K.O.*, 2024 WL 1396269, at *22 (recognizing that despite the deeply horrifying nature of sex trafficking the court must ensure the plaintiff's claims meet the *Iqbal* plausibility standard as to the franchisor); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 562 (7th Cir. 2023) (distinguishing Salesforce's "direct and long-term contractual relationship with sex-trafficker Backpage" from hotel franchisors who were "one step removed" from sex traffickers). The court in *K.O.* considered plaintiff's allegations that there were continuous ventures occurring through the rental of rooms to her traffickers at several hotels operated under the Red Roof Inn® system, as well as other hotel systems. *Id.* at *11. It held the plaintiff's allegations may suggest that the hotel's *franchisees* had a continuous business relationship with plaintiff's traffickers, but "they do not suggest how the corporate entity Defendant Red Roof could have 'established a pattern of conduct or could be said to have a tacit agreement' with K.O.'s trafficker."[6] *Id.* (dismissing direct liability claims as to Red Roof Inns and indirect liability claims against Knights Inn (also owned by Red Lion), among other hotel brands) (citing *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1236 (N.D. Ga. 2022) (recognizing that the *operator* of a hotel is closely involved with its daily management)); *Doe #1*, 21 F.4th at 729-30 (11th Cir. 2021) (highlighting the difference between franchisees and franchisors). The court held that the plaintiff did not establish that the franchisor participated in a venture with plaintiff's traffickers and her direct liability claim failed. *K.O.* at *11. As one court noted, "while factual allegations listing indicia of

---

[6] The plaintiff alleged that staff "knew what to do with 'undesirable' guests," that she was "placed in the same hotel room every time," and that her trafficker was welcomed back by staff. *K.O.*, 2024 WL 1396269, at *11.

trafficking (i.e., condition of the hotel room, frequent male visitors) may support a theory that a hotel where Plaintiff was trafficked knew or should have known of Plaintiff's trafficking, the complaint fails to allege facts as to how Defendants []—the parent company, corporate affiliate, or franchisor of the hotel—were aware of these facts." *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938–39 (D. Or. 2020). A decision from the Northern District of Ohio suggests that if a hotel franchisor has no contact with a plaintiff's trafficker(s) and received no specific notice of her trafficking, then there can be no direct liability. *R.C. v. Choice Hotels Int'l, Inc.*, No. 5:23-CV-00872, 2024 WL 1443412, at *3 (N.D. Ohio Apr. 2, 2024) (stating "[w]ithout direct contact, there can be no direct liability," and finding the franchisor was "several steps removed from daily hotel operations").

The following types of allegations have been found insufficient to plausibly allege participation in a trafficking venture: that the franchisor received royalties for the rooms used by a plaintiff's traffickers, that the franchisor "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at subject hotels, that a franchisor investigated the hotel, that a franchisor read online reviews mentioning prostitution, and that a franchisor controlled the training of employees involved in facilitating the sex trafficking at subject hotels. *See, e.g.*, *Doe #1*, 21 F.4th at 726-27 (finding similar allegations do "nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA"); *J.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2025 WL 523894, at *5 (N.D. Cal. Feb. 18, 2025) (noting courts that have addressed TVPRA claims against franchisors have found that allegations regarding normal supervision and oversight of booking and other aspects of hotel management are not sufficient to make out a claim); *J.M. v. Choice Hotels Int'l, Inc.*, No. 222CV00672KJMJDP, 2022 WL 10626493, at *4 (E.D. Cal. Oct.

18, 2022) (finding that plaintiff overstated her factual allegations and recognizing that the franchisors "did not directly rent rooms or Wi-Fi to [Plaintiff's] traffickers; the franchisee hotels and Wi-Fi service providers did"); *B.M.*, 2020 WL 4368214, at *4 (holding that plaintiff's allegations that she showed visible signs of being trafficked, that hotel employees threatened to kick her out, and that the franchisor was generally aware of trafficking at their hotels demonstrates that the specific hotels may have participated in the sex-trafficking venture, but did not plausibly allege that the franchisor directly participated in a trafficking venture). The typical franchisor-franchisee commercial activities, such as those listed above, are not "participation" in sex-trafficking ventures under the TVPRA.

Moreover, "Allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture." *K.H.*, 2024 WL 505063, at *3-4 (quoting *Doe #1*, 21 F.4th at 723). In this case, the facts suggest VHGI did not even receive a financial benefit from alleged sex trafficking activity and had no incentive to participate in a sex trafficking venture. The Membership Agreement between Mata Pita and VHGI requires Mata Pita to pay a flat fee per room per month, rather than a royalty based on gross room revenues as is typical in hotel franchise agreements. (Membership Agreement, attached as Exhibit A, § 3.) This means that VHGI would receive the same amount of revenues regardless of whether the hotel rooms were rented, and VHGI had no incentive to allow or encourage the rental of rooms to sex traffickers to increase Mata Pita's revenues.

As further demonstrated below, Plaintiff does not plausibly allege participation by the licensor, VHGI, in either of the two ventures she identifies.

### a. Venture No. 1

Plaintiff's alleged "Venture No. 1" claims that "Mata Pita and the ABV Brand Defendants are liable as beneficiaries because they knowingly benefited from participating in a venture that they knew or should have known was engaged in sex trafficking through their role in the continuous business relationship between the Paducah ABV Inn and the traffickers operating there, including T.W.'s trafficker." FAC ¶ 315. On its face, this allegation implicitly defines the venture as a "sex trafficking venture," as do Plaintiff's surrounding allegations regarding this venture. *See id.* at ¶¶ 315-323. To survive a motion to dismiss, however, Plaintiff must plausibly allege that VHGI directly participated in her sex-trafficking venture or that VHGI engaged in activities that "established a pattern of conduct or could be said to have a tacit agreement" with Plaintiff's trafficker. She does not allege facts that plausibly establish that either of these occurred or that VHGI otherwise participated in the alleged venture.

In fact, Plaintiff does not identify any direct connection among VHGI, her alleged trafficker, or her trafficking. She instead alleges that "Mata Pita . . . through its on-the-ground role . . . directly observed signs associated with T.W.'s trafficking and had frequent and familiar interactions with her trafficker," and "had repeated opportunities to observe T.W.," among other allegations that may only directly tie Mata Pita to a sex-trafficking venture. *See id.* at ¶ 321. Additionally, Plaintiff alleges a flurry of "numerous, obvious, prevalent, and frequent" signs or red flags of her sex trafficking at the ABV Inn and alleges that based on these signs, "Mata Pita observed the frequent and repetitive activity associated" with Plaintiff's trafficking. *See, e.g.*, *id.* at ¶¶ 176, 179, 180, 322. Notably missing from the FAC are plausible allegations that VHGI interacted, in any capacity, with Plaintiff or her trafficker.

Furthermore, the allegations offered in support of the ABV Brand Defendant's "continuous

business relationship" with each other and Plaintiff's trafficker fail to establish a "tacit agreement" between VHGI and Plaintiff's trafficker. Such allegations are based on omniscient assumptions and do not support any beneficiary liability as to Venture 1 because they broadly speak to a franchisor-franchisee relationship. *See generally,* FAC ¶¶ 202-11. For example, Plaintiff alleges that the central reservation system demonstrates the "continuous business relationship." *Id.* at ¶ 202. Notably absent are any plausible allegations that Plaintiff's trafficker used the reservation system to rent rooms at the ABV Inn; rather Plaintiff alleges he paid for rooms in cash. *See generally id.*

Under these circumstances, Plaintiff has not plausibly connected the dots among VHGI, her trafficker, and her sex trafficking. Therefore, the participation element required for direct liability for Venture No. 1 fails as to VHGI, and consequently as to Red Lion and Sonesta too.[7]

### b. Venture No. 2

Plaintiff's alleged "Venture No. 2" claims that "[t]he ABV Brand Defendants and Mata Pita also participated in a commercial hotel operating venture with one another that facilitated sex trafficking at the Paducah ABV Inn" and that they "derived benefits from operating [the hotel] . . . ." *Id.* at ¶¶ 325-329. Again, the operational facts alleged in support of Venture 2 merely describe a franchisor-franchisee relationship and fail to "established a pattern of conduct or could be said to have a tacit agreement" with Plaintiff's trafficker. *See supra* Section A.ii; *see, e.g., K.O.*, 2024 WL 1396269, at *12. Such facts also fail to allege participation because they do not demonstrate

---

[7] *See Doe #1*, 21 F.4th at 727 (finding direct liability failed because franchisors did not participate in the sex trafficking); *B.M.*, 2020 WL 4368214, at *5 (finding plaintiff did not plausibly plead that the franchisors directly participated in her sex-trafficking venture); *R.C.*, 2024 WL 1443412, at *3 (granting summary judgment to franchisor Choice Hotels International, Inc. on direct liability).

that VHGI and Mata Pita tailored their operations to facilitate trafficking at their hotel, let alone Plaintiff's alleged trafficking. *Cf. G.G.,* 76 F.4th at 562 ("Salesforce sold Backpage targeted solutions addressed to the needs of Backpages's business, repeatedly assessed Backpage's 'operational needs,' and provided 'active, ongoing support' that was tailored to those needs.").

Accordingly, Plaintiff has failed to plausibly meet the participation element required to establish direct liability, and her direct liability claim for Venture No. 2 must also fail as to VHGI, Red Lion, and Sonesta.

### ii. Plaintiff does not plausibly allege that VHGI "knew or should have known" of the ventures.

Further, a "plaintiff must plead facts showing that the defendant knew or should have known of sex trafficking **by the particular venture** in which the defendant allegedly participated." *H.G.*, 489 F. Supp. 3d at 702 ("[T]he 'knew or should have known' language [18 U.S.C. § 1595(a)] appears in the 'which' clause, and that clause is focused directly on the 'venture' in which the defendant 'participat[ed]'.") (emphasis added); *see also Doe #1*, 21 F.4th at 725 ("[D]efendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA **as to the plaintiff**" (emphasis added)); *A.B.*, 484 F. Supp. 3d at 938–39 ("[W]hile factual allegations listing indicia of trafficking . . . may support a theory that a hotel where Plaintiff was trafficked knew or should have known of Plaintiff's trafficking, the complaint fails to allege facts as to how . . . the parent company, corporate affiliate, or franchisor of the hotel [ ] were aware of these facts"); *B.M.,* 2020 WL 4368214, at *6 (finding that plaintiff's allegations may support a theory that the staff at the franchisee hotels knew about plaintiff's trafficking, but the complaint failed to allege how the *franchisors* knew or should have known that the *plaintiff* was being trafficked); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020) ("knowledge or willful blindness of a

general sex trafficking problem in low-budget lodgings does not satisfy the *mens rea* requirements of the TVPRA" and plaintiff must allege that the franchisor "had the requisite knowledge of a specific sex trafficking venture").

The knowledge must be as to the specific venture that trafficked the plaintiff; knowledge of sex trafficking generally at branded properties, or even at the particular hotel, is insufficient. *See Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-CV-00619-PAB-SKC, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021) ("General knowledge of commercial sex activity occurring at hotels across the United States, or even defendant's properties, is insufficient on its own to demonstrate that defendant participated in the trafficking of plaintiff."); *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *2 (S.D. Tex. Mar. 30, 2021) ("Absent facts specific to her own trafficking, Plaintiff's allegation that the La Quinta exhibited "signs of trafficking" is insufficient to state a claim against Defendants."). "[T]o conclude that franchisors . . . are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisee's properties unjustifiably bridges the scienter gap between 'should have known' and "might have been able to guess." *S.J.*, 473 F. Supp. 3d at 154 (concluding that this premise makes no sense because "the liability of franchisors—which are further removed from the sex trafficking than the actual hotels are—would be much easier proven than the liability of the hotels themselves").

Here Plaintiff attempts to satisfy the knowledge element with overly broad and conclusory allegations, some of which are alleged on information and belief. For example, she alleges that "Reviews of ABV Inn properties, which upon information and belief each of the ABV Brand Defendants, monitored regularly, also show . . . pervasiveness . . . and [their] knowledge . . . ." and that the "ABV Brand Defendants monitored criminal activity [at the ABV Inn]. . . ." FAC ¶¶

272-73. As stated above, the TVPRA requires that knowledge be specific to the venture and Plaintiff—as such, these allegations are conclusory and unavailing. Plaintiff also makes the legal conclusion, which is not a fact based on her personal knowledge, that "[t]he knowledge of the hotel staff is also imputed to the ABV Brand Defendants. . . ." FAC ¶ 323. She further claims that the "ABV Defendants required hotel staff and Mata Pita to report all suspected instances of crime . . . to the ABV Defendants" and "[u]pon information and belief. . . the ABV Brand Defendants would have received reports [from staff and guests] regarding the activity associated with her sex trafficking. . . ." *Id.* at ¶¶ 189-193. Despite these omniscient assumptions, she does not plausibly allege that the employees or hotel guests in fact made reports to Mata Pita regarding Plaintiff's alleged sex trafficking and that any such reports were transmitted to VHGI. *Id.* Such allegations remain too general to be plausible on their face. Ultimately, if the alleged "obvious signs" of Plaintiff's trafficking, vaguely set forth in the FAC, were within Mata Pita's or its employees' knowledge, the FAC nevertheless fails to plausibly allege how their knowledge and information became actually or constructively known to VHGI. *See generally* FAC; *see also H.G.*, 489 F. Supp. 3d at 705 (finding plaintiff's allegations fall short because she "highlights numerous facts that should have alerted Defendants' *franchisees* to sex trafficking by the venture" but did not establish the franchisors' state of mind) (emphasis in original) (citations omitted).

Accordingly, this Court should find that knowledge is not plausibly alleged. *See, e.g., B.M.*, 2020 WL 4368214, at *6 (finding the plaintiff pled plausible facts as to the staff, but not the franchisors); *A.D., v. Wyndham Hotels and Resorts, Inc.*, No. 4:19CV120, 2020 WL 8674205, at *5-6 (E.D. Va. July 22, 2020) ("These allegations are sufficient to allege that the [franchisee] hotels should have known that A.D. was the victim of a sex trafficking venture operating on their premises," however, "A.D. has failed to plead that Wyndham knew or should have known it was

participating in sex trafficking"). Because Plaintiff has failed to plausibly allege participation and knowledge, direct liability as to VHGI is implausible and cannot be imputed to Red Lion and Sonesta.

**B. Plaintiff Fails to State a Vicarious Liability Claim Against VHGI.**

Courts are generally split regarding whether state common law or federal common law applies to the question of indirect liability under the TVPRA. *L.H*., 2023 WL 5725574, at *7 (recognizing Kentucky law and federal common law agency principles); *K.O.,* 2024 WL 1396269, at *11 (applying Michigan state law because the analysis would be largely the same as under federal common law and dismissing vicarious liability claims against Knights Inn and other hotel brands). Under Kentucky law, "[a] franchisor is vicariously liable for the tortious conduct of the franchisee when it, in fact, has control or right of control over the daily operation of the *specific aspect* of the franchisee's business that is alleged to have caused the harm." *Papa John's Int'l., Inc. v. McCoy*, 244 S.W.3d 44, 56 (Ky. 2008) (reversing judgment against franchisor in vicarious liability claim) (emphasis added); *see also Johnson v. Seagle Pizza, Inc.*, No. 2015-CA-000085-MR, 2016 WL 4410705, at *9 (Ky. App. Aug. 19, 2016) (affirming summary judgment for franchisor on vicarious liability claims because the franchisor "exerted no control over the day-to-day operations at this franchise"); *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 7 (Ky. App. 2018) (affirming summary judgment for franchisor because the plaintiff failed to demonstrate that the franchisor "had control over [the] tortious conduct" of franchisee's employee); *Fant v. Beamteam, Inc.*, 2023-CA-0280-MR, 2024 WL 387729, at *3 (Ky. App. Feb. 2, 2024) ("[T]he level of control must equate with the franchisee being nothing more than an alter ego of the franchisor.").

Under federal common law principles, an actual agency relationship requires: "(1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the

undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking." *See L.H.*, 2023 WL 5725574, at *7 (citing *A.B.*, 484 F. Supp. 3d at 939 (dismissing trafficking claims against Red Lion) (citing Restatement (Third) of Agency § 1.01 (2006))). Typically, liability for torts committed at a franchisee's location are not imputed to a franchisor or licensor under an agency theory. *See, e.g., Walker v. Pacific Pride Servs., Inc.,* 341 Fed. Appx. 350, 351 (9th Cir. 2009) (recognizing that a franchisor must be permitted to retain some control necessary to protect its trademark, trade name, and good will, without the risk of creating an agency relationship); *R.C.*, 2024 WL 1443412, at *6 ("[S]etting standards in an agreement for acceptable service quality does not of itself create a right of control.") (citation omitted).

Here, Plaintiff alleges that the "ABV Brand Defendants subjected Mata Pita to detailed standards and requirements regarding the operation of ABV Inn through the membership agreement, through detailed written policies and manuals, and through other formal and informal protocols . . . ." FAC ¶ 216. Additionally, Plaintiff alleges that "upon information and belief, The ABV Brand Defendants exercised and reserved the right to exercise systemic and pervasive control over Mata Pita's day-to-day operation," that the "ABV Brand Defendants specifically retained control . . . with regards to aspects of operation of the subject ABV Inn that caused [Plaintiff's] harm . . . ." *Id.* ¶¶ 217-18. These allegations are conclusory, inconsistent with the Membership Agreement between VHGI and Mata Pita, and in any event fail to establish any more control than is necessary to protect the Americas Best Value Inn® brand.[8] The Membership Agreement specifically disclaims any principal-agent or joint venture relationship between VHGI and Mata

---

[8] Plaintiff refers to the Membership Agreement dated April 1, 2007 between Mata Pita and VHGI in her Complaint, and thus the Membership Agreement may properly be considered by the Court. FAC ¶ 216.

Pita. (Membership Agreement § 14.) Accordingly, Plaintiff's allegations do not demonstrate the requisite control for vicarious liability to survive this Motion under Kentucky law.

Regarding agency, Plaintiff alleges "Mata Pita and the staff at [the] Paducah ABV Inn . . . acted as the ABV Brand Defendants' actual agents or subagents. . . ." *See* FAC ¶¶ 215, 331-32. Fatally, this is an unsupported legal conclusion based on omniscient allegations that do not plausibly demonstrate a manifestation by VHGI that Mata Pita shall act as its agent. *Id.* Again, the Membership Agreement specifically states that VHGI and Mata Pita are not in an agency relationship. (Membership Agreement § 14.) Accordingly, Plaintiff's allegations offered in support of her vicarious liability and agency theories are conclusory, lack foundation, and should be dismissed.

### C.  The TVPRA does not provide for successor liability.

A court may perform a successor liability analysis at the motion to dismiss stage with the information that is before it. *See Carter v. Paschall Truck Lines, Inc.*, 324 F. Supp. 3d 900, 906 (W.D. Ky. 2019) (discovery not required to properly determine whether successor liability exists). Preliminarily, "the original purpose of the overall Trafficking Victims Protection Act in 2000 was to 'combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to **ensure just and effective punishment of traffickers**, and to protect their victims.'" *Carter v. Paschall Truck Lines, Inc.*, 364 F. Supp. 3d 732, 745-46 (W.D. Ky. 2019) (emphasis added). In *Carter*, this Court considered 18 U.S.C. §1589, the code section governing forced labor under the TVPRA and held that "it remains ambiguous as to whether finding . . . successor [liability] would align with the [policy] goals of the federal forced labor statute." *Id.* (this Court recognized that "legislative intent should be divined first and foremost from the plain language of the statute") (citation omitted). It further found that "failing to hold

Element Transportation liable as a successor would not 'emasculate the relief provisions' of the federal forced labor statute because other defendants remain who may be able to compensate Plaintiffs" and "'the equities in the matter' do not favor successor liability because there is not sufficient evidence that Element Transportation knew of or benefited from the alleged unlawful labor practices. . . ." *Carter*, 364 F. Supp. 3d 745-46 (the court concluded that the plaintiffs may still seek relief from the predecessor).

Here, the text of 18 U.S.C. 1591 and 1595 similarly do not provide for successor liability, and despite the four amendments to the statute since 2008, Congress has not added language allowing for successor liability. Moreover, Red Lion and Sonesta are demonstrably attenuated, in fact they are years removed, from Plaintiff's trafficking. Should the Court find that VHGI did in fact participate in Plaintiff's sex-trafficking venture, Plaintiff may seek relief from VHGI. As stated above, VHGI is still an active corporation and a defendant in this action. Accordingly, this Court should find similarly and dismiss Plaintiff's successor-in-interest claims against Red Lion and Sonesta.

### D. Red Lion and Sonesta Adopt their Previous Statute of Limitations Arguments.

Red Lion and Sonesta incorporate their previously briefed arguments regarding the statute of limitations time-barring Plaintiff's claims, in whole or in part, and how the doctrine of equitable tolling, the discovery rule, and continuing torts doctrine fail to save her claims. Additionally, Plaintiff has newly alleged, for the first time in this action, that her sex trafficking started when she was a "minor" in 2011, however, she omits proffering the year in which she achieved majority. FAC ¶ 22. Without this information, Defendants do not know when she reached 18 years of age and can neither fairly nor accurately apply the statute of limitations under 18 U.S.C. 1595. Plaintiff's failure to allege at least her birth year, prejudicially prohibits the dismissal, or partial

dismissal, of her affected claims.

### III.    CONCLUSION

For the reasons discussed herein, Red Lion and Sonesta respectfully request that the Court dismiss the FAC with prejudice under Rule 12(b)(6) and grant any other relief that the Court deems just and proper.

Dated: April 11, 2025                    Respectfully submitted,

                                        /s/ Maisa Jean Frank
                                        Eric L. Yaffe (admitted pro hac vice)
                                        Maisa Jean Frank (admitted pro hac vice)
                                        LATHROP GPM LLP
                                        600 New Hampshire Ave. NW
                                        The Watergate – Suite 700
                                        Washington, D.C. 20037
                                        Tel: 202.295.2200
                                        eric.yaffe@lathropgpm.com
                                        maisa.frank@lathropgpm.com

                                        Benjamin C. Struby (Bar No. 96940)
                                        LATHROP GPM LLP
                                        2345 Grand Blvd., Suite 2200
                                        Kansas City, MO 64108
                                        Tel: 816.292.2000
                                        benjamin.struby@lathropgpm.com

                                        Counsel for Defendants Red Lion Hotels
                                        Corporation and Sonesta International Hotels
                                        Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2025, I electronically filed *DEFENDANTS RED LION HOTELS CORPORATION AND SONESTA INTERNATIONAL HOTELS CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT* and its concurrently filed *Exhibits A* with the Clerk of the Court using the CM/ECF system which will send notification of such filings to all registered CM/ECF participants. I also certify that I caused to be served true and correct copies of the foregoing by U.S. Mail on the following Defendants:

VHGI, Inc. and VHGI Franchising, Inc.
Bernard T. Moyle
10800 West Sample Road,
Coral Springs, FL 33065

VHGI Franchising, Inc.
Judith A. Jarvis,
3300 North University Drive
Suite 500
Coral Springs, FL 33065

/s/ Maisa Jean Frank
*Counsel for Defendants Red Lion Hotels Corporation and Sonesta International Hotels Corporation*