UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

JANE DOE (T.W.), AN INDIVIDUAL,

Plaintiff,

v.

WYNDHAM HOTELS AND RESORTS,
INC.; WYNDHAM HOTEL GROUP, LLC;
SUPER 8 WORLDWIDE, INC.; VIDHI,
LLC; RED LION HOTELS
CORPORATION; SONESTA
INTERNATIONAL HOTELS
CORPORATION; MATA PITA, INC.
D/B/A AMERICA'S BEST VALUE INN;
VHGI FRANCHISING, INC.; and VHGI,
INC.

Defendants.

CIVIL ACTION NO: 5:24-cv-00008-BJB-LLK

**RESPONSE TO THE MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OF
DEFENDANTS WYNDHAM HOTELS AND RESORTS, INC., WYNDHAM HOTEL
GROUP, LLC, AND SUPER 8 WORLDWIDE, INC.**

Plaintiff Jane Doe (T.W.) submits this response to the Motion to Dismiss the First Amended

Complaint ("FAC") filed by Defendants Wyndham Hotel and Resort, Inc., Wyndham Hotel Group,

LLC, and Super 8 Worldwide, Inc. (collectively "Wyndham")

**INTRODUCTION**

T.W. is a victim of sex trafficking who filed this lawsuit under the Trafficking Victims

Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581, *et seq.*, which creates a civil

remedy against businesses that—while not criminally liable for sex trafficking—benefit from

facilitating it. *See* 18 U.S.C. § 1595(a). In response to T.W.'s Original Complaint, Wyndham and

other Defendants filed motions under Fed. R. Civ. P. 12(b)(6). After a telephonic hearing, the Court

1

granted Defendants' motions but gave T.W. leave to amend. (ECF No. 70) On March 21, 2025, T.W. filed the First Amended Complaint ("FAC") and added many new allegations responding to issues that the Court identified at the 12(b)(6) hearing.

Despite the significantly expanded allegations, Wyndham asks the Court to dismiss the FAC. Wyndham's arguments for dismissal rest on a restrictive interpretation of § 1595(a) that clashes with its status as a remedial provision[1] as well as its generalizations about franchising relationships, which ask the Court to disregard the FAC's allegations and improperly draw inferences in Wyndham's favor. Further, Wyndham's arguments conflict with the **overwhelming weight of case** law around the country, as courts have regularly denied 12(b)(6) motions based on arguments like those Wyndham makes here, allowing claims to go forward against hotels who facilitate sex trafficking, including allowing both direct and vicarious liability claims against franchisors like Wyndham.[2] Indeed, earlier this month, a district court in the Sixth Circuit rejected

---

[1] *See Acevedo v. eXp Realty, LLC,* 713 F. Supp. 3d 740, 765 (C.D. Cal. 2024*)* ("Remedial statutes require broad interpretation. . . . Sections 1591 and 1595 also employ broad, expansive language."); *see also G.G.,* 76 F.4th at 554.

[2] *See, e.g., Doe K.R.D. v. Wyndham Hotels & Resorts, Inc.,* 24-8174, 2025 U.S. Dist. LEXIS 76129, at (D.N.J. Apr. 21, 2025); *Doe A v. Seatac Hotels LLC,* No. C24-1270, 2025 U.S. Dist. LEXIS 25543 (W.D. Wash. Feb. 12, 2025); *Doe C.M.S. v. Wyndham Hotels & Resorts, Inc.*, 24-CV-217, 2025 U.S. Dist. LEXIS 47270 (S.D. Cal. Mar. 13, 2025); *S.C. v. Hilton Franchise Holding LLC*, 2024 U.S. Dist. LEXIS 205682 (D. Nevada Nov. 12, 2024); *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 5:23-CV-235, 2024 U.S. Dist. LEXIS 165863, at *14 (E.D.N.C. Sep. 16, 2024) (*L.M. III*); *Doe M.J.J. v. Wyndham Hotels & Resorts, Inc.,* 24-6490, 2025 U.S. Dist. LEXIS 16608 (D.N.J. Jan. 30, 2025); *Doe K.E.C. v. G6 Hosp., LLC*, No. 1:23-CV-00270, 2024 U.S. Dist. LEXIS 188697 (E.D. Tex. Sep. 24, 2024); *Doe (R.A.) v. Best W. Int'l, Inc.*, No. 2:23-cv-3459, 2024 U.S. Dist. LEXIS 188174 (S.D. Ohio Oct. 16, 2024); *Doe (T.R.S.) v. Wyndham Hotels & Resorts*, No. 2:23-cv-01676, 2025 U.S. Dist. LEXIS 2988 (E.D. Cal. Jan. 6, 2025) (*T.R.S. II*); *Doe (H.E.W.) v. Radisson Hosp., Inc.*, 23-CV-1456, 2025 U.S. Dist. LEXIS 19682 (W.D. Tex. Jan. 21, 2025) adopted by *Doe H.E.W. v. Radisson Hosp., Inc.*, 1:23-CV-1456, 2025 U.S. Dist. LEXIS 30048, *5 (W.D. Tex. Feb. 19, 2025); *Doe A.L.G. v. Wyndham Hotel & Resorts, Inc.*, 1:24-cv-00285-, 2024 U.S. Dist. LEXIS 212384 (W.D. Tex. Nov. 21, 2024); *S.C. v. Hilton Franchise Holding LLC*, 2:23-cv-02037, 2024 U.S. Dist. LEXIS 205682 (D. Nev. Nov. 12, 2024); *Doe v. Scottsdale Inns LLC*, CV-23-00759, 2024 U.S. Dist. LEXIS 199680 (D. Ariz. Nov. 4, 2024) (*D.H. II*); *Doe K.R. v. Choice Hotels*, 6:23-cv-1012, 2024 U.S. Dist. LEXIS 180092 (M.D. Fla. Oct. 2, 2024) (*K.R. II*); *E.B. v.*

Wyndham's arguments for 12(b)(6) dismissal in a case involving similar allegations. *Doe (T.W.) v. JRD P'ship.*, 3:23-cv-00928, 2025 U.S. Dist. LEXIS 68737, at *2 (M.D. Tenn. Apr. 10, 2025).

## SUMMARY OF ALLEGATIONS

T.W. first met her trafficker in 2011 as a minor.  (ECF No. 83 ¶ 22). Her trafficker lured her to a hotel under false pretenses, and then required her to engage in commercial sex for his financial benefit. (*Id.* ¶ 23). He used threats, physical violence, forced drugging, isolation, and financial and emotional dependence to control T.W. for a period of several years, lasting until she escaped in October 2014. (*Id.* ¶¶ 23-27). While T.W. was being trafficked, she had no permanent residence; her trafficker moved her around between different hotels. (*Id.* ¶ 28). He carefully selected hotels where it was easy to attract business and where hotel staff made it easier for him to operate. (*Id.* ¶ 29). He brought her back to the same hotels time and again over this period of more than three years. (*Id.* ¶ 29). T.W.'s trafficker had a standard operating procedure; thus, the signs associated with T.W.'s trafficking were persistent across hotels and across time. (*Id.* ¶ 30).

---

*Howard Johnson by Wyndham Newark Airport,* 21-2901, 2023 U.S. Dist. LEXIS 231401(D.N.J. Dec. 29, 2023); *Doe C.J. v. Cotugno,* 23-02973, 2024 U.S. Dist. LEXIS 188925, at *5 (D.N.J. 2024); *Doe (A.R.J.) v. Wyndham Hotels & Resorts, Inc.,* 1:24-cv-00109, 2024 U.S. Dist. LEXIS 156829 (W.D. Tex. Aug. 30, 2024); *T.S. v. Wyndham Hotels & Resorts, Inc.,* No. 23-CV-2530, 2024 U.S. Dist. LEXIS 151324 (D. Minn. Aug. 23, 2024); *Doe K.R. v. Choice Hotels,* 6:23-CV-1012, 2024 WL 2955728 (M.D. Fla. June 12, 2024) (*K.R. I*); *A.H. v. Wynn Las Vegas, LLC*, 2:24-cv-01041, 2024 U.S. Dist. LEXIS 234594 (D. Nev. Dec. 30, 2024); *Jane Doe (S.A.S.) v. ESA P Portfolio, LLC,* 3:23-CV-06038, 2024 WL 3276417 (W.D. Wash. July 2, 2024); *Doe v. Rickey Patel, LLC*, 0:20-60683, 2020 WL 6121939, at *4 (S.D. Fla. Sept. 30, 2020); *Jane Doe (T.D.B.) v. G6 Hospitality*, 9:23-cv-00174, ECF No. 55 (E.D. Tex. Sept. 30, 2024); *C.C. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-CV-3799, 2024 WL 1347303, at *3 (S.D. Ohio Mar. 29, 2024); *A.C. v. Red Roof, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio Jun. 16, 2020); *A.W. v. Red Roof Inns, Inc.*, No. 2:21-cv-04934, 2022 U.S. Dist. LEXIS 227437, at *27 (S.D. Ohio 2022); *J.M. v. Choice Hotels Int'l, Inc.*, 222CV00672, 2023 WL 3456619 (E.D. Cal. May 15, 2023) (*J.M. II*); *S.Y. v. Wyndham Hotels & Resorts, Inc.*, 519 F. Supp. 3d 1069 (M.D. Fla. 2021); *M. L. v. craigslist Inc.*, 19-6153, 2020 WL 549490 (W.D. Wash. Sept. 11, 2020).

One of the hotels that T.W.'s trafficker favored was the Paducah Super 8, where he repeatedly and regularly trafficked T.W. over a period of three years. (*Id.* ¶¶ 33-34). Wyndham operated this hotel together with its franchisee, VIDHI, LLC ("Franchisee"). (*Id.* ¶ 79). Wyndham also exercised pervasive control over the operation of the Paducah Super 8 such that Franchisee and the hotel staff operated as Wyndham's agents when operating the hotel. (*Id.* ¶¶ 127-131).

The Paducah Super 8 was one of the hotels that T.W.'s trafficker used most often. (*Id.* ¶ 34). While T.W. cannot say exactly how many times she was trafficked here, it was dozens of times. (*Id.* ¶ 36). They would often stay for several days or even a week at a time. (*Id.* ¶ 37). T.W.'s trafficker frequently interacted with staff at the Paducah Super 8. (*Id.* ¶ 41). He was always the one to check into the hotel, so he repeatedly interacted with the front desk staff. (*Id.* ¶ 43). He always required T.W. to stay in his eyesight, so she would be standing nearby visible. (*Id.* ¶ 43-44). T.W.'s trafficker always paid for the rooms with cash or prepaid gift cards, which he chose to do because it minimized the risk of being traced. (*Id.* ¶¶ 45-46). Moreover, T.W.'s trafficker most often paid for the rooms on a day-to-day basis, returning to the front desk each day and paying with cash he collected from johns at the hotel. (*Id.* ¶ 47). It appeared to T.W. that her trafficker had a familiar relationship with the hotel staff, and he often got his preferred rooms. (*Id.* ¶ 69, 73).

T.W.'s trafficker restricted her freedom while at the Paducah Super 8, always escorted her, and imposed strict rules on her behavior, a pattern that hotel staff whom they repeatedly encountered would have seen. (*Id.* ¶¶ 48-50, 52). T.W. was a minor, and the hotel staff repeatedly observed her with her much older trafficker who had a daughter who was T.W.'s age. (*Id.* ¶ 38-40). T.W. was terrified and extremely emotional while at the Paducah Super 8, which would have been noticeable to those observing her. (*Id.* ¶ 54). Moreover, because her trafficker required her to use illegal drugs, T.W. would often be impaired while in common areas of the hotel. (*Id.* ¶ 51). While at the Paducah

4

Super 8, T.W.'s trafficker would often beat her, causing her to scream and cry so loudly that it is reasonable to assume that the cries were heard by hotel guests and staff. (*Id.* ¶¶ 66-67).

T.W.'s trafficker often used the hotel's Wi-Fi to post advertisements for her online. (*Id.* ¶ 55). He required T.W. to see 20 or more johns in a day. (*Id.* ¶ 57). This generated heavy vehicle and foot traffic involving men who were not registered hotel guests and who would visit T.W.'s room and stay for only a brief period. (*Id.* ¶ 56-58). While T.W. was with the johns, her trafficker would remain in the hallway, parking lot, or other common areas of the hotel, sometimes conversing with hotel staff. (*Id.* ¶ 59-60). Then, after each john left, T.W.'s trafficker would come and collect the money, meaning that he visibly walked back and forth to the room many times a day. (*Id.* ¶ 65). T.W.'s trafficker also frequently sold drugs out of the hotel's parking lot. (*Id.* ¶ 68).

T.W.'s trafficker would not let housekeeping into the room they rented, even when they stayed for extended periods. (*Id.* ¶ 159). He constantly kept the "do not disturb" sign on the door. (*Id.* ¶ 62). When housekeeping came to the door, T.W.'s trafficker sometimes required T.W. to hand them trash and request that linens and towels be provided at the door. (*Id.* ¶ 63). T.W. often required extra towels and linens due to the number of johns she was seeing; thus, her trafficker frequently went to the front desk to request more. (*Id.* ¶ 64). When they checked out of the Paducah Super 8, T.W.'s trafficker did not allow an opportunity to clean up their mess; instead, they would often leave sex paraphernalia visible in the room upon check out. (*Id.* ¶ 70). All these things happened time after time as T.W. was repeatedly trafficked at this hotel for years. (*Id.* ¶¶ 71-72).

Prior to T.W.'s trafficking, there was knowledge in the hotel industry about how to detect and deter trafficking in hotels. (*Id.* ¶ 180-241). Government agencies and non-profits devoted significant efforts to educating the hospitality industry, including Wyndham, on how to identify and respond to sex trafficking in their hotels. (*Id.* ¶ 240). Sex traffickers follow well-established

patterns, which result in signs, known as "red flags," that can be detected by hotel staff performing their normal job duties. (*Id.* ¶ 242-249). The signs of T.W.'s trafficking matched up with these industry-recognized "red flags" of trafficking. (*Id.* ¶ 256).

Wyndham used numerous tools to oversee and supervise the Paducah Super 8. (*Id.* ¶¶ 96-107). It imposed a reporting protocol on Franchisee and hotel staff, and given the obvious and persistent "red flags" associated with T.W.'s trafficking, Wyndham would have received reports about it. (*Id.* ¶¶ 96-97). Moreover, the other tools that Wyndham used to collect data and information regarding the Paducah Super 8 would have put it on notice of "red flags." (*Id.* ¶¶ 98-107).

Despite these "red flags," Wyndham participated in a continuous business relationship with T.W.'s trafficker and in a hotel-operating venture with Franchisee that facilitated trafficking. (*Id.* ¶¶ 108-112). Wyndham's participation came through its central role in the rental of rooms and through control of the Wi-Fi that T.W.'s trafficker used to advertise her online. (*Id.* ¶¶ 108-111). Wyndham also participated in this relationship by exercising control over aspects of hotel operations related to the detection of and response to sex trafficking. (*Id.* ¶¶ 112-120). Before T.W.'s trafficking at the Paducah Super 8, Wyndham knew that sex trafficking was a problem in its operations. (*Id.* ¶¶ 258-269). It also knew there was a heightened risk of sex trafficking at the Paducah Super 8. (*Id.* ¶¶ 265-268). Despite this, Wyndham continued to operate the Paducah Super 8 in ways that it knew or should have known would continue to result in trafficking, including T.W.'s trafficking. (*Id.* ¶¶ 121-122). Wyndham received increased revenue and other benefits every time T.W.'s trafficker rented a room at the Paducah Super 8. (*Id.* ¶¶ 123-126).

## LEGAL STANDARD

To overcome a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim

is plausible if a plaintiff pleads enough to "raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id.* The court must take a plaintiff's well-pled allegations as true and draw all reasonable inferences for the plaintiff. *Id.* This standard is not demanding, asking that a plaintiff allege "only enough facts" to "nudge" a claim "across the line from conceivable to plausible." *G.G. v. Salesforce.Com, Inc.,* 76 F.4th 544, 551 (7th Cir. 2023). "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

## ARGUMENT

The TVPRA provides  trafficking victims with a civil remedy against a "perpetrator" of trafficking **or** "whoever knowingly benefits" from "participation in a venture" that the person "knew or should have known" was engaged in sex trafficking (*i.e.*, a "beneficiary"). 18 U.S.C. § 1595(a); *L.H. v. Red Roof Inn, Inc.*, 3:22-CV-625, 2023 WL 5725574, at *6 (W.D. Ky. Sept. 5, 2023)(recognizing distinct nature of beneficiary liability claim). This beneficiary liability created by § 1595(a) resulted from Congress's decision to expand the scope of civil liability under the TVPRA. *A.B. v. Marriott Int'l, Inc.,* 455 F. Supp. 3d 171, 180-9 (E.D. Pa. 2020). A key distinction from § 1591(a)(2) is that a beneficiary is liable under § 1595(a) if it should have known that it was facilitating trafficking, which "evidences Congress's intent to broaden the behavior that can form the basis of civil liability[.]" *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019). This provides victims "a cause of action against those who have profited from their exploitation." *A.B.*, 455 F. Supp. 3d at 181.

I.    **The FAC pleads a beneficiary liability claim against Wyndham directly.**

The elements of T.W.'s direct beneficiary claim are that Wyndham (1) knowingly benefitted (2) from participation in a venture that (3) it knew or should have known was engaged in sex trafficking. *M.A.*, 425 F. Supp. 3d at 964. The FAC adequately pleads each element.

A.    *T.W. pleads the "knowingly benefit" element.*

The FAC plausibly pleads the the "knowingly benefit" element, and Wyndham relegates its contrary argument to a footnote for good reason. Wyndham received increased revenue and other benefits every time T.W.'s trafficker rented a room at the Paducah Super 8. (ECF No. 83 ¶¶ 123-126). There is a consensus in the case law that this suffices.[3] While Wyndham cites *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019), that case is an outlier that has been soundly rejected as improperly importing criminal-law standards into a civil beneficiary claim and reading requirements into §1595(a) that are not supported by its plain text.[4]

B.    *T.W. pleads Wyndham's participation in a §1595(a) venture.*

Wyndham's arguments on the "participation in a venture" element rest on the improper premise that beneficiary liability requires a defendant's participation in the criminal trafficking of the plaintiff. But the "vast majority" of courts have rejected application of the criminal definition of "participation in a venture" to beneficiary liability under § 1595(a). *G.G.*, 76 F.4th at 559, n. 15 (collecting cases). Critically, the "participation in a venture" element must be interpreted in a way that does not write the "should have known" standard out of § 1595(a), meaning that the definition of "participation in a venture" cannot backdoor in a requirement that the beneficiary **know about**

---

[3] *See, e.g.*, *L.H.*, 2023 U.S. Dist. LEXIS 156293, at * 32; *G.G.*, 76 F.4th at 565, n. 20 (collecting cases); *Doe (T.W.)*, 2025 U.S. Dist. LEXIS 68737, at *11.

[4] *G.G.*, 76 F.4th at 565, n. 20 (holding that *Geiss* is an "outlier" that finds "no footing in the statutory text" and collecting cases rejecting its analysis)

or **intentionally further** sex trafficking.[5] Rather, a defendant can "participate" in a venture as a beneficiary when it facilitates sex trafficking **unknowingly** (but negligently).[6]

    1.  <u>Wyndham participated in a continuous business relationship between the Paducah Super 8 and T.W.'s trafficker.</u>

      Thus, one way for a hotel defendant to "participate in a venture" as a beneficiary is by maintaining a continuous business relationship with traffickers when the defendant at least should know that the business relationship is facilitating sex trafficking at the hotel.[7] Wyndham and Franchisee formed a continuous business relationship between the Paducah Super 8 and T.W.'s trafficker. (ECF No. 83 ¶¶ 288-294). This venture formed when Wyndham and Franchisee: (1) continued renting rooms to traffickers despite actual or constructive knowledge of the trafficking; and (2) created a favorable environment that facilitated trafficking and attracted repeat business from T.W.'s trafficker, making it one of his favored hotels. (*Id.* ¶¶ 33-37, 288-294). Wyndham participated in the venture through its central role in room rental, (*Id.* ¶ 108),[8] and through its oversight and control over and its participation in aspects of operations at the hotel relevant to detecting and responding to sex trafficking. (*Id.* ¶¶ 109-122).[9] The venture facilitated T.W.'s trafficking by continue to allow the trafficker to rent rooms for the sole purpose of trafficking her, and used these hotel rooms to drug her and beat her to gain compliance, required her to see more than 20 johns/day, and used the Wi-Fi to post advertisements for her. (*Id.* ¶¶ 55-57, 76-78, 294).

---

[5] *See, e.g., A.B.* 455 F. Supp. 3d at 180-9.

[6] *See Cassone v. The Austin Chronicle Corp.*, 1:23-CV-1197, 2024 WL 2031713, at *9 (W.D. Tex. May 7, 2024); *L.M. III,* 2024 U.S. Dist. LEXIS 165863, at 14.

[7] *L.H.*, 2023 U.S. Dist. LEXIS 156293, at * 29 (recognizing that participation in a venture can be based on a "continuous business relationship"); *M.A.*, 425 F. Supp. 3d at 964.

[8] *See A.D. I*, 2020 WL 8674205, at *4 (plaintiff alleged that franchisor participated in a venture through its role renting rooms); *J.M. II*, 2023 WL 3456619, at *1 (plaintiff alleged hotel franchisor's participation based on its role as "primary facilitator" of renting rooms).

[9] *See, e.g., A.W.*, 2022 U.S. Dist. LEXIS 227437, at *27 (franchisor "intimately involved" in operations participated in a venture); *Doe K.E.C.*, 2024 U.S. Dist. LEXIS 188697, at *26 (franchisor participated in a venture through its role in day-to-day operations).

Wyndham makes two arguments why the allegations regarding this continuous business relationship are not enough to plead its "participation in a venture." The Court should reject both. **First**, Wyndham argues that providing commercial services—such as renting hotel rooms—is not enough for participation in a venture. But § 1595(a) contains no carve-out for commercial activity, and it applies when a business profits by knowingly or negligently facilitating sex trafficking through its commercial activities.[10] By arguing that more is required, Wyndham is effectively advocating for a requirement that a beneficiary defendant took some overt act intended to further a plaintiff's sex trafficking. But this restrictive interpretation clashes with § 1595(a)'s plain text, which expressly contemplates that a defendant can be liable for its participation in a venture **if it did not know about sex trafficking** (but should have).[11] Wyndham's contrary argument relies heavily on the narrow interpretation of "participation in a venture" adopted by *some* courts within

---

[10] *See, e.g., G.M. v. Red Roof Inns*, Inc., 2:22-CV-3788, 2024 WL 1347737, at *5 (S.D. Ohio Mar. 29, 2024) (rejecting argument that "ordinary business dealings" can never trigger beneficiary liability); *L.M. III,* 2024 U.S. Dist. LEXIS 165863, at 14 (joining the "many courts to have held that a party can 'participate' in a venture by negligently facilitating the venture's activities."); *A.D. v. Wyndham Hotels & Resorts, Inc.,* 4:19CV120, 2020 WL 8674205, at *4 (E.D. Va. July 22, 2020) (*A.D. I*) (a "hotel need not share a common purpose with the alleged trafficker" and it "assists, furthers, and facilitates the sex trafficking activity" by simply renting hotel rooms to sex traffickers").

[11] 18 U.S.C. § 1595(a). *See, e.g., E.B.*, 2023 U.S. Dist. LEXIS 231401 at *19; *A.C.*, 2020 WL 3256261, at *6 (rejecting overt act requirement); *Acevedo*, 713 F. Supp. 3d at 784; *S.Y.*, 476 F. Supp. 3d at 1256.

the Eleventh Circuit.[12] But this is a minority approach that has been questioned by courts both within and outside that Circuit.[13]

**Second**, Wyndham contends that, as a franchisor, it cannot have participated in a venture with traffickers at the Paducah Super 8. But is the specific allegations of Wyndham's involvement, not the label "franchisor," that controls the issue. While Wyndham suggests that the weight of the case law supports its arguments, which would immunize franchisors from liability even when they should know that those hotels are facilitating sex trafficking and when they reap significant financial benefit from this. Not so. One of the leading decisions on beneficiary liability in the hospitality context comes from another district court in the Sixth Circuit, the decision from the Southern District of Ohio in *M.A.*, 425 F. Supp. 3d at 964. *M.A.* and its progeny recognize that sufficient allegations of a franchisor's involvement in hotel operations can support an inference that the franchisor participated in a continuous business relationship with traffickers at its branded

---

[12] Some uncertainty exists regarding the interpretation of the Eleventh Circuit's decision in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021). In dismissing claims against hotel franchisors, the *Doe # 1* Court expressly limited its analysis to the specific nature of the venture alleged in that case—direct participation in criminal sex trafficking ventures—and acknowledged that the outcome might have differed if the plaintiff had alleged a commercial venture. Courts within and outside the Eleventh Circuit have distinguished *Doe* on this basis. *See, e.g.*, *C.T. v. Red Roof Inns, Inc.*, 2:22-cv-834, 2023 WL 3510879, at *4 (M.D. Fla. Mar. 11, 2023) (distinguishing *Doe* on this basis); *L.H.*, 2023 U.S. Dist. LEXIS 156293, at * 27 (same); *Doe v. Rajveer LLC*, 2:24-cv-00175, 2025 U.S. Dist. LEXIS 54983, *18 (M.D. Ala. Mar. 25, 2025) (same). Nevertheless, Wyndham relies on a subsequent unpublished decision from the Eleventh Circuit in *K.H. v. Riti, Inc.*, 23-11682, 2024 U.S. App. LEXIS 3127, 2024 WL 505063 (11th Cir. Feb. 9, 2024) that interpreted *Doe #1* to adopt a very narrow view of "participation in a venture" that requires a common unlawful purpose with traffickers. *Riti*'s interpretation of beneficiary liability is in sharp conflict with the text of § 1595(a) and the weight of the relevant case law.

[13] *C.B. v. Naseeb Invs., Inc.*, 1:20-cv-04213, 2024 U.S. Dist. LEXIS 213550, at *59 (N.D. Ga. Sep. 12, 2024) (applying *Riti* but questioning the reasoning of this decision and concluding "[i]n the Court's view, this construction of the statute is far more limiting than its language requires."); *L.M. III*, 2024 U.S. Dist. LEXIS 165863, at *10 (declining to follow *Riti*); *K.R. II*, 2024 U.S. Dist. LEXIS 180092 (denying defendant's request to reconsider 12(b)(6) decision in light of *Riti*, noting that it was unpublished and not precedential).

hotel. *Id.*; *A.W.*, 2022 U.S. Dist. LEXIS 227437, at *27. And the *M.A.* analysis has **repeatedly** been found to have "recognized persuasiveness for TVPRA beneficiary liability claims."[14] Courts have repeatedly rejected the notion that franchisors are exempt from liability for their role in facilitating trafficking at their branded hotels.[15] While Wyndham suggests that participation in a venture requires an in-person relationship with the street-level traffickers, this finds no support in the language of §1595(a), the applicable case law, or the reality of modern business practices. A business can facilitate sex trafficking without direct, in-person contact, and where it does so with the necessary *mens rea*, it qualifies as "participation in a venture."[16]

  2.  Venture 2: Wyndham's participation in a hotel-operating venture with Franchisee.

Wyndham was also part of a commercial venture with Franchisee operating the Paducah Super 8, with a shared objective of maximizing revenue while operating in ways that facilitated sex trafficking. (ECF No. 83 ¶¶ 299-306). This venture was engaged in TVPRA violations because the Paducah Super 8 was used to harbor, maintain, and provide T.W. (*Id.* ¶ 302).

While Wyndham argues that the case law has concluded this kind of hotel-operating venture is insufficient to plead beneficiary liability, that is not accurate. To start, this hotel-operating venture

---

[14] *Doe (S.A.S.)*, 2024 WL 3276417, at *7, n.5; *Acevedo*, 713 F. Supp. 3d at 775 ("The Court is persuaded by this precedent and, thus, addresses Defendants' arguments only insofar as it is necessary to analyze Plaintiffs' claims under the standard announced in *M. A.*"); *A.B.*, 455 F. Supp. 3d at 192 (holding that *M.A.* approach to "participation in a venture" element "best conforms to Congress's intent in amending the Act to include a civil remedy provision"); *L.H.*, 2023 WL 5725574, at *9 (W.D. Ky. Sept. 5, 2023) (noting court's analysis was "guided by *M.A.*"); *J.B. v. G6 Hosp., LLC*, 19-CV-07848, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020) (analyzing and agreeing with *M.A.*'s interpretation of § 1595 (a)); *Doe v. Rickey Patel, LLC*, 0:20-60683, 2020 WL 6121939, at *4 (S.D. Fla. Sept. 30, 2020) (finding *M.A.* analysis "persuasive").

[15] *See, e.g.*, *C.J.*, 2024 U.S. Dist. LEXIS 188925, at *6-7; *C.C.*, 2024 WL 1347303, at *6; *M.J.J.*, 2025 U.S. Dist. LEXIS 16608, at *9; *J.M. II*, 2023 WL 3456619, at *1; *Doe (A.R.J.)*, 2024 U.S. Dist. LEXIS 156829, at *8; 15; *Doe A*, 2025 U.S. Dist. LEXIS 25543; *Doe (C.M.S.)*, 2025 WL 824369, at *17; *D.H. II*, 2024 U.S. Dist. LEXIS 199680.

[16] *See Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 838 (C.D. Cal. 2021) (website participated in a venture with traffickers posting advertisements on website).

is analogous to the business-to-business venture that the Seventh Circuit recognized in *G.G.*, 76 F.4th at 554.[17] Significantly, *G.G.* recognizes that the venture a defendant participated in need not be one directly with street-level traffickers. It is enough that the defendant participated in a business relationship that the defendant should have known was facilitating trafficking.[18] Moreover, while Wyndham's arguments for dismissal rely heavily on the Eleventh Circuit's decision in *Doe #1*, 21 F.4th 714, that decision's analysis is consistent with recognizing a claim based on allegations like those in Venture 2. In *Doe #1*, the court dismissed the plaintiffs' claims against the franchisors, noting that while the plaintiffs could have alleged that the franchisors participated in hotel-operating ventures with their franchisees, they instead alleged the franchisors participated in sex trafficking ventures and declined an opportunity to amend to include the former theory. 21 F.4th at 727.; *G.G.*, 76 F.4th at 561 (recognizing this limitation of *Doe #1*). Moreover,

---

[17] The *G.G.* Court found that the plaintiff had stated a § 1595(a) claim against Salesforce by alleging that it was providing ongoing commercial services (as a vendor) to Backpage even though Salesforce **should have known** that Backpage, in turn, was providing commercial services (online advertising and communication) that facilitated street-level sex trafficking. *Id.* Venture 2's allegations are similar: Wyndham was providing commercial services to operate the Paducah Super 8 even though Wyndham knew or should have known that these hotels, in turn, were providing commercial services (hotel rooms and related services) that were being used for sex trafficking. (ECF No. 83 ¶¶ 299-306).

[18] Wyndham seeks to distinguish *G.G.*, 76 F.4th 544, by alleging that the Seventh Circuit's analysis hinged on Salesforce providing "tailored" services to Backpage. However, the Seventh Circuit **rejected** any requirement that Salesforce's participation be directly linked to sex trafficking. Instead, the discussion of "tailoring" in *G.G.* was only to distinguish the ongoing business relationship between Salesforce and Backpage from an isolated off-the-shelf transaction that may not be enough to show the seller's "participation" in a venture. *Id.* at 562. The longstanding relationship between Wyndham and Franchisees was far from an off-the-shelf transaction. And *G.G.* itself recognized that a hotel-operating venture may implicate § 1595(a); indeed, the Seventh Circuit relied largely on case law from the hospitality context to support its conclusion that a commercial venture can support liability § 1595(a). *Id.* at 554.

many district courts have applied this theory of a business-to-business venture to support beneficiary claims based on hotel-operating ventures, like the one alleged here.[19]

There is no merit to Wyndham's argument that the allegations regarding Venture 2 are insufficient because they merely allege Wyndham's participation in a franchising relationship. To start, this mischaracterizes the relevant allegations. The FAC does not merely allege a franchising relationship; instead, it alleges that Wyndham actively participated in a commercial undertaking operating a hotel that facilitated T.W.'s sex trafficking ***and*** that Wyndham's role in that venture contributed to facilitating the sex trafficking. The fact that this facilitation happened *in the context* of a franchising relationship does not affect the analysis. For example, in *G.G.*, the Seventh Circuit recognized that a beneficiary's participation in a venture could be providing services through a vendor-vendee relationship if the beneficiary should have known that providing those services was facilitating sex trafficking. *G.G.*, 76 F.4th at 551. The implication of Wyndham's contrary argument is that it cannot be held liable if it did not participate in the very criminal venture that trafficked T.W. However, beneficiary liability does not require a direct connection between a defendant and the plaintiff's specific trafficking.[20] A plaintiff can show that a beneficiary defendant participated in a venture that was engaged in a TVPRA violation by showing that the defendant at least should have known that the commercial venture was facilitating trafficking.

---

[19] *See, e.g., Doe K.R. I*, 2024 WL 2955728, at *8 (recognizing a venture where franchisor-defendant "participated in a commercial venture in operating the [hotel where plaintiff trafficked] with [franchisee]); *D.K. v. Red Roof Inns, Inc.,* 2:22-CV-3786, 2024 WL 1332195, at *5 (S.D. Ohio Mar. 28, 2024) (recognizing franchisor's "business venture with the franchisee hotels, and both groups benefitted by renting rooms to traffickers despite having at least constructive knowledge of ongoing trafficking."); *C.T.*, 2023 WL 3510879, at *2 (same); *D.H. II*, 2024 U.S. Dist. LEXIS 199680, at * 9 (same).

[20] *G.G.*, 76 F.4th at 554. ("As a matter of law, such a direct connection between [beneficiary-defendant] and [plaintiff's] trafficking is not necessary.").

This does not mean, as Wyndham argues, that T.W. seeks to hold Wyndham responsible for an abstract failure to prevent sex trafficking. Instead, liability rests on the specific cause of action that Congress created under §1595(a), which imposes a duty on defendants to **stop profiting** by **facilitating** what they **should have known** was trafficking.[21] This cause of action centers on Wyndham's conduct: continued acceptance of a benefit, participation in the rental of hotel rooms, and involvement in operating the Paducah Super 8 in ways that facilitated sex trafficking.

### C.   T.W. pleads the required mens rea.

T.W. adequately pleads that Wyndham had the required *mens rea* for beneficiary liability. Wyndham's contrary arguments rest on an overly restrictive view of both the pleading standard and the substantive *mens rea* element that Congress adopted in § 1595(a). While Wyndham would require exacting specificity in the *mens rea* allegations, a defendant's state of mind may be pled generally and substantiated through circumstantial information sufficient to meet the plausibility threshold.[22] Moreover, here that pleading standard is being applied to a *mens rea* element that is broad in two respects. First, it only requires venture-level *mens rea* not victim-specific *mens rea*.[23] Second, it includes broad, negligence-based "should have known" language.[24] Not only is "should have known" less than actual knowledge, but it is also less than reckless disregard, gross negligence, and even reason to know.[25]

---

[21] *R.Z. v. Red Roof Inns,* Inc., 2:22-CV-3784, 2024 WL 1332229, at *5 (S.D. Ohio Mar. 28, 2024) (recognizing this distinction); *A.B.*, 455 F. Supp. 3d at 182 (same).

[22] *E.B.*, 2023 U.S. Dist. LEXIS 231401 at *25; *G.G.,* 76 F.4th at 555; *S.Y.,* 519 F. Supp. 3d at 1081

[23] *Doe (H.E.W.)*, 2025 U.S. Dist. LEXIS 19682, at *18, *20; *Doe A.L.G.*, 2024 U.S. Dist. LEXIS 212384, at *12; *see also G.G.*, 76 F.4th at 557 (explaining why requiring victim-specific knowledge is atextual and contrary to the purposes of the TVPRA); *Doe (T.D.B.) v. G6 Hospitality,* 9:23-cv-00174 ECF No. 55 at pp. 23-24 (E.D. Tex. Sept. 30, 2024) (victim-specific knowledge requirement is contrary to the text and purpose of § 1595(a)).

[24] *M.A.*, 425 F. Supp. 3d at 972 (recognizing this is a negligence-based standard); *K.A. v. 26th St. Hosp., LLP,* 1:23-CV-092, 2024 WL 21124806 (D.N.D. Apr. 15, 2024) (same).

[25] *See* Restatement (Second) of Torts § 12 (contrasting "should know" and "reason to know").

Crediting T.W.'s allegations and drawing reasonable inferences in her favor, the FAC satisfies this broad *mens rea* element. To begin, the FAC's allegations support an inference that Wyndham at least should have known that its venture at the Paducah Super 8 was facilitating trafficking based on the numerous, prominent, and persistent "red flags" of T.W.'s sex trafficking and Wyndham's close involvement in and supervision over operation of that hotel. T.W. was repeatedly trafficked at the Paducah Super 8 dozens of times over a period of more than three years, with these occasions lasting as long as a week at a time. (ECF No. 83 ¶¶ 33-38). There were numerous, persistent, and obvious signs associated with trafficking, and these signs closely matched the "red flags" of sex trafficking. (*Id.* ¶¶ 38-78). Further, the FAC adequately links Wyndham to these numerous, obvious, and persistent "red flags" associated with T.W.'s trafficking. For example, the FAC alleges that Wyndham had a protocol that required Franchisee and hotel staff to report suspected criminal activity, including sex trafficking, to Wyndham. (*Id.* ¶¶ 96-97). The signs of T.W.'s trafficking were so obvious (and persistent over repeated visits spanning years) that Franchisee and hotel staff would have made reports to Wyndham. (*Id.* ¶ 97). Allegations about a franchisee's obligation to report suspected trafficking to a franchisor can support an inference that the franchisor knew or should have known about trafficking.[26] Moreover, the FAC also describes in detail the other tools that Wyndham used to supervise relevant aspects of operations at the Paducah Super 8 and how, based on these tools, Wyndham at least should have known about the "red flags" of T.W.'s trafficking. (*Id.* ¶¶ 98-107). The alleged connections between these tools and the "red

---

[26] *See Doe K.E.C.*, 2024 U.S. Dist. LEXIS 188697, at *33 (plaintiff linked franchisor to "red flags" of trafficking where she alleged reporting was *required* even where plaintiff did not allege specifically that a report was actually made); *J.M. II*, 2023 WL 3456619, at *3 (plaintiff linked franchisor to "red flags" of trafficking where she alleged employees "would have reported suspected red flags of human trafficking to [d]efendant['s] corporate executives").

flags" of T.W.'s trafficking are enough to raise a reasonable inference that Wyndham at least **should have known** that the Paducah Super 8 was being used to facilitate this trafficking.[27]

In arguing that these allegations are not sufficient to support an inference under the "should have known" standard, Wyndham argues that the Court should disregard the allegations made upon information and belief. But courts have repeatedly rejected Wyndham's argument in this regard and recognized that the use of information and belief pleading is appropriate under these circumstances.[28] This is particularly true because the FAC includes significant corroborating factual details about *why* T.W. believes that these tools would have detected her "red flags" and alleges that the specifics of Wyndham learned from using these tools is information exclusively within Wyndham's control. (ECF No. 83 ¶ 107).[29]

Further, at minimum, the FAC's allegations plead a basis for charging Wyndham with constructive knowledge that its venture at the Paducah Super 8 was facilitating trafficking, including T.W.'s, trafficking based on Wyndham's failure to exercise ordinary diligence in response to the known problem of sex trafficking in its operations.[30] It is black letter law that "should have known" encompasses what "a person of reasonable prudence and intelligence, or of the superior intelligence of the actor, would ascertain as the fact in question in the performance of

---

[27] *Doe v. G6 Hosp.*, LLC, 2:24-cv-01235, 2025 U.S. Dist. LEXIS 76546 (W.D. Wash. Apr. 22, 2025) (finding that plaintiff alleged that hotel defendant should have—at the brand level— known about her trafficking based on allegations about the data that the brand-level entity collected and maintained); *Doe C.J.*, 2024 U.S. Dist. LEXIS 188925, at *8-9 (allegations that franchisor maintained operational oversight enough to support inference of "should have known" based on obvious signs of trafficking at hotel).

[28] *T.R.S. II*, 2025 U.S. Dist. LEXIS 2988, at *25; *D.H. II*, 2024 U.S. Dist. LEXIS 199680, at *14

[29] *See Modern Holdings v. Corning Incoporated, 13-405,* 2015 U.S. Dist. LEXIS 41134, at *13 (E.D. Ky. Mar. 31, 2015) (recognizing that "information and belief" pleading is particularly appropriate when information is within defendant's control).

[30] *See M.A.*, 425 F. Supp. 3d at 964 (recognizing that a defendant can be charged with constructive knowledge based on its failure to respond to a known problem in its operations); *see also Doe (T.W.)*, 2025 U.S. Dist. LEXIS 68737, at *20 (adopting the *M.A.* framework).

their duty to another, or would govern their conduct upon the assumption that such fact exists." Restatement (Second) of Torts § 12. Thus, the "should have known" standard allows for inferences about what a defendant should have known based on the information it had notice of **plus** what reasonable diligence required it to do in response to that information.[31] Applying the negligence-based constructive knowledge standard results in a fact-bound inquiry that involves weighing various factors to determine what reasonable prudence requires.[32] Allegations relevant to the constructive knowledge standard include:

- There was a known problem with sex trafficking in the hotel industry, and Wyndham was aware of this problem. (ECF No. 83 ¶¶ 113, 258).

- Wyndham has long known about a significant problem with sex trafficking at its own hotels. (ECF No. 83 ¶ 259).

- Wyndham properties have been involved in hundreds of federal criminal trafficking cases and news sources have publicized incidences of trafficking and associated criminal activity at Wyndham hotels nationwide. (ECF No. 83 ¶ 260-262).

- Online reviews, which Wyndham monitored, provided notice of a widespread problem sex trafficking at Wyndham hotels through the country. (ECF No. 83 ¶ 263).

- Wyndham knew that there was a heightened risk for criminal activity, including trafficking, at the Paducah Super 8. (ECF No. 83 ¶ 265-268).

- Law enforcement agencies and other organizations developed "red flags" of sex trafficking in hotels, which served as indicators to the hotel industry on how to detect sex trafficking and were based on recurring patterns of how sex trafficking manifests in a hotel.  (ECF No. 83 ¶¶ 239-244).

- The nature of the "red flags" is that they are things that a hotel can detect in the course of operations. (ECF No. 83 ¶¶ 242-244, 246).

---

[31] *Doe A.R.J.*, 2024 U.S. Dist. LEXIS 156829, at *15.

[32] *Cf. Mt. States Contractors, LLC v. Perez,* 825 F.3d 274, 285 (6th Cir. 2016) (under OSHA, employer's constructive knowledge of dangerous condition can be proven through failure to exercise ordinary diligence, which is assessed through considering a variety of factors); *Thomas v. Omni Hotels Mgmt. Corp.*, 742 F. App'x 729, 732 (4th Cir. 2018) (in tort context, recognizing constructive knowledge can apply when defendant had opportunity to observe condition or when defendant's actions created a reasonably foreseeable danger).

- Wyndham was educated on the "red flags" of sex trafficking and recognized them as indicators of sex trafficking. (ECF No. 83 ¶¶ 245, 248, 251).

- There were also well-established practices known to the hotel industry about how to avoid facilitating trafficking. (ECF No. 83 ¶¶ 252-255).

- Wyndham adopted a centralized, brand-wide approach to the issue of sex trafficking. (ECF No. 83 ¶¶ 113).

- Wyndham retained control over aspects of hotel operations related to the detection of and response to sex trafficking. (ECF No. 83 ¶¶ 114-120).

- Wyndham required Franchisee and hotel staff to report criminal activity, including trafficking, to Wyndham and used numerous other tools to oversee and supervise the hotel. (ECF No. 83 ¶¶ 96-107).

- Wyndham exercised it control over the Paducah Super 8 to continue operating in ways that it knew or should have known would result in additional sex trafficking. (ECF No. 83 ¶¶ 121-122).

- There were numerous signs associated with T.W.'s trafficking at the Paducah Super 8, which happened on a recurring basis over more than three years. (ECF No. 83 ¶¶ 33-74).

- The signs of T.W.'s trafficking matched the industry-recognized "red flags" of sex trafficking. (ECF No. 83 ¶ 256).

Courts have found that similar allegations, collectively, suffice to plead constructive knowledge.[33]

Wyndham's arguments do not squarely address the application of this negligence-based standard. Instead, Wyndham resorts to a strawman argument, asserting that T.W. relies on general knowledge of sex trafficking to meet the *mens rea* standard. But, as set out above, T.W. does not rely on general industry-level knowledge of sex trafficking; instead, she details Wyndham's knowledge of a specific problem in its branded hotels, its failure to respond to that problem, and

---

[33] *See, e.g.*, *A.R.J.,* 2024 U.S. Dist. LEXIS 156829, at *15; *K.R. I,* 2024 WL 2955728 at * 8-9 (plaintiff pled plausible basis for charging franchisor with constructive knowledge based on allegations of failure to exercise ordinary diligence in response to known problem); *G.P.,* 2024 WL 1347407, at *6 (same).

how that connects to failure its failure to detect or deter T.W.'s sex trafficking specifically. This is not mere general knowledge of the problem of sex trafficking.[34] If the "should have known" standard is limited to that which a defendant had **actual notice** of, as Wyndham advocates it should be, then it is improperly collapsed with a "reason to know" standard.

Additionally, and alternatively, the Court can also find that Wyndham had the required *mens rea* based on the knowledge that the hotel staff at the Paducah Super 8 obtained in the scope of performing ordinary employment duties, which can be imputed to Wyndham. (ECF No. 83 ¶ 297). As addressed below, the FAC pleads an agency relationship. And, while an agency relationship supports a vicarious liability claim against Wyndham, it also supports imputing knowledge to support a direct liability claim against Wyndham.[35]

## II.    The FAC pleads a vicarious liability claim against Wyndham.

The FAC also alleges that Wyndham is vicariously liable for the TVPRA violation of Franchisee and the hotel staff. Wyndham's request for dismissal of this vicarious liability claim relies on generalizations about franchising relationships, inviting the Court to overlook specific allegations and instead draw inferences in Wyndham's favor. But courts in TVPRA cases regularly find that allegations like those here—or less detailed—are sufficient to plead agency.[36]

---

[34] *See Doe (T.W.)*, 2025 U.S. Dist. LEXIS 68737, at *20 (rejecting argument that this amounted to reliance on general knowledge).

[35] *L.M. III*, 2024 WL 4204906, at *6 (recognizing this as an alternate basis for finding *mens rea*); Restatement (Second) of Agency § 272; Restatement (Third) Of Agency § 5.03 cmt. a ("Imputation creates incentives for a principal to choose agents carefully and to use care in delegating functions to them. Additionally, imputation encourages a principal to develop effective procedures for the transmission of material facts, while discouraging practices that isolate the principal or coagents from facts known to an agent.").

[36] *See, e.g., Doe (A.M.G.) v. Wyndham Hotels & Resorts, Inc.*, 2:24-CV-204, 2025 WL 725268, at *9 (E.D. Va. Mar. 6, 2025); *Doe (C.M.S.)*, 2025 WL 824369, at *17; *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-CV-00672, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022) (*J.M. I*); *Doe (T.R.S.) v. Wyndham Hotels & Resorts*, 2:23-CV-01676, 2024 WL 3088722, at *10 (E.D. Cal. June 20, 2024) (*T.R.S. I*); *Doe (S.C.) v. Sheraton, LLC,* No. 23CV00451, 2024 WL 1329422, at *6

Most courts agree that federal common law governs the issue of whether vicarious liability is available under the TVPRA. *See, e.g., Doe (C.M.S.)*, 2025 WL 824369, at *17; *Doe (T.W.)*, 2025 U.S. Dist. LEXIS 68737, at *24. This adheres to the general rule that federal common law governs issues of vicarious liability under federal statutes. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 755 (1998). In any event, the FAC's allegations suffice to plead vicarious liability based on an agency relationship under either federal common law or Kentucky law.[37] In assessing agency, the key issue is the degree of control exercised by the principal. *J.C.*, 2020 U.S. Dist. LEXIS 201073, at *22. Specifically, the focus is on control exercised over the means and manner of an agent's work. *A.W.*, 2022 U.S. Dist. LEXIS 227437, at *33. A franchising relationship does not automatically create an agency relationship, but it also does not insulate a franchisor from vicarious liability under common law agency. *J.C.*, 2020 U.S. Dist. LEXIS 201073, at *24. "The question of whether a franchisor has retained sufficient control to establish an agency relationship depends entirely on the facts of each individual case." *Doe (P.B.)*, 2023 U.S. Dist. LEXIS 229076, at *11

The FAC's allegations clearly suffice to create an inference of an agency relationship. The FAC pleads that Wyndham used a franchising agreement, detailed written policies and manuals, and

---

(D.N.M. Mar. 28, 2024); *S.Y.*, 476 F. Supp. 3d at 1258; *E.B.*, 2023 U.S. Dist. LEXIS 231401; *Doe A.M.L. v. Wyndham Hotels & Resorts,* No. 8:23-cv-01554, 2023 U.S. Dist. LEXIS 229694, at *17 (C.D. Cal. 2023); *K.B. v. Inter-Cont'l Hotels Corp.*, 19-CV-1213, 2020 WL 8674188, at *7 (D.N.H. Sept. 28, 2020); *A.B.*, 455 F. Supp. 3d at 196; *C.T.*, 2023 WL 3510879, at *3; *M.A.*, 425 F. Supp. 3d at 972; *J.C. v. Choice Hotels Int'l, Inc.*, 20-cv-00155, 2020 U.S. Dist. LEXIS 201073, at *22 (N.D. Cal. Oct. 28, 2020); *Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, 23-1493, 2023 U.S. Dist. LEXIS 229076, at *11 (D.N.J. 2023); *Doe (D.H.) v. Scottsdale Inns LLC*, CV-23-00759, 2024 WL 3494375, at *4 (D. Ariz. July 22, 2024) (*D.H. I*); *T.S.*, 2024 U.S. Dist. LEXIS 151324, at *10; *T.E. v. Wyndham Hotels & Resorts, Inc.*, 2:22-cv-3185, 2024 U.S. Dist. LEXIS 21482, at *2 (S.D. Ohio Feb. 7, 2024); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 20-CV-00656, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020).

[37] *L.H.*, 2023 WL 5725574, at *8 (denying 12(b)(6) motion on issue of vicarious liability where allegations would overcome motion to dismiss under either standard).

other protocols and directives—in addition to its own direct involvement in operations—to exercise control over the means and methods used for many specific aspects of Franchisee's operation of the Paducah Super 8. (ECF No. 83 ¶ 108-120, 128). Notably, Wyndham cannot distinguish the allegations here from those at issue in *L.H.*, where the district court found the allegations were sufficient to overcome 12(b)(6) under either Kentucky law or federal common law. *L.H.*, 2023 WL 5725574, at *8.

| L.H. Analysis | T.W.'s allegations |
|---|---|
| "Indeed, the Complaint contains multiple allegations regarding L.H.'s agency theory, including that franchisor hotels provide their local hotels with brand recognition, marketing organization, listing in travel agency databases, an 800 number, revenue management tools, world-class loyalty programs, and a website, and that, through their actions, the Defendant hotels hold out their local hotels "to the public as possessing authority to act on [their] behalf." <br><br> *L.H.*, 2023 WL 5725574, at *8. | • Wyndham required Franchisee to use Wyndham owned and controlled systems for room reservations, guest check-in, and processing payments. (¶ 108). <br> • Wyndham directly made reservations for rooms at the Paducah Super 8. (¶ 108). <br> • Wyndham required Franchisee to participate in mandatory marketing and advertising programs. (¶ 108). <br> • Wyndham controlled guest loyalty programs that Franchisee had to carry out. (¶ 108). <br> • Controlled the hotel website. (¶ 130) <br> • Publicly labeled hotel employees as "our staff" or "our hotel staff" (¶130). |
| "Further, the Complaint included specific allegations regarding Red Roof's and Wyndham's control over how their local hotels "conduct[ed] daily business" through various actions, including by setting employee wages, fixing profits, and making employment decisions." <br><br> *L.H.*, 2023 WL 5725574, at *8. | • Controlling room prices. (¶ 130). <br> • Posting jobs for positions at the Paducah Super 8. (¶ 130). <br> • Providing certain benefits to staff at the Paducah Super 8. (¶ 130). <br> • Setting pay parameters, job descriptions, and job qualifications for hotel staff. (¶ 130). <br> • Influencing hiring and evaluation of hotel staff. (¶ 130). |

The FAC's allegations also go well beyond those discussed by the *L.H.* court, including specific allegations regarding Wyndham's control over aspects of operations related to sex trafficking.[38] Paragraphs 108-122 and 130-131 of the FAC collectively list **dozens** of ways that Wyndham exercised control over operation of the Paducah Super 8. (*See* ECF No. 83). They are akin to the allegations deemed sufficient earlier this month by the Middle District of Tennessee in *Doe (T.W.)*, 2025 U.S. Dist. LEXIS 68737, at *25.

The cases cited by Wyndham do not support its argument for 12(b)(6) dismissal. Wyndham mainly cites cases at the summary-judgment or post-trial stages, which are based on evidentiary records rather than allegations.[39] The only TVPRA case that Wyndham cites is *Doe (G.N.C.) v. Uniquest Hosp., LLC*, 23-cv7980, 2024 WL 4149251, at *6 (S.D.N.Y. Sept. 11, 2024). *G.N.C.* applied New York law, which it interpreted to preclude vicarious liability unless the franchisor exercised "complete" control such that the franchisee's separate existence was a "fiction." New York law clearly does not apply here. And *G.N.C.* is an outlier.[40] As shown above, the vast majority of TVPRA cases have found allegations like those here sufficient to overcome 12(b)(6).[41]

Wyndham has raised these same vicarious liability arguments in other cases, but courts from coast to coast have rejected them. Jurisdictions that have found that a TVPRA plaintiff alleged an

---

[38] Under the instrumentality doctrine, a franchisor is vicariously liable when it retained control over the specific means and methods that caused the plaintiff's harm. *See, e.g., K.B.*, 2020 WL 8674188, at *7. The FAC's allegations create an inference of agency because Wyndham "had authority to control aspects of the hotel operations connected to plaintiff's claim." *K.B.*, 2020 WL 8674188, at *7.

[39] *See, e.g., Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322, 1327-28 (7th Cir. 1979); *Mini Maid Servs. Co. v. Maid Brigade Sys.*, Inc., 967 F.2d 1516, 1520 (11th Cir. 1992); *Burnette v. Hilton Franchise Holdings LLC*, No. CV 17-12128, 2021 WL 118924, at *1 (D.N.J. Jan. 13, 2021) (applying New Jersey law at the summary judgment stage).

[40] Moreover, the *Doe (G.N.C.)* court found that the only relevant allegations were *purely conclusory* restatements of the legal standard; thus, it did not analyze the type of detailed, specific allegations that T.W. identifies in Paragraphs 108-122 and 130-131 of the FAC.

[41] *See* cases cited at footnote 31.

agency relationship between Wyndham and a franchisee include: the District of Arizona,[42] the Central District of California,[43] the Northern District of California,[44] the Southern District of California,[45] the Middle District of Florida, the District of Minnesota,[46] the District of New Jersey,[47] the Southern District of Ohio,[48] the Middle District of Tennessee,[49] the Western District of Texas,[50] and the Eastern District of Virginia.[51] Wyndham's continued attempts to use its status as a franchisor to insulate itself from vicarious liability lack merit.

### III.    The Court should not dismiss based on the limitations period.

Civil claims under the TVPRA are subject to a 10-year limitations period from the time "the cause of action arose." 18 U.S.C. § 1595(c), and the FAC clearly alleges that T.W. filed this lawsuit within 10 years of the end of her trafficking at the Paducah Super 8.  Because Wyndham concedes that **at least part** of T.W.'s claim is timely, the Court need not go any further at this preliminary pleading stage. In TVPRA cases, courts have declined to find that **part** of a claim is untimely when at least some of the trafficking happened in the 10-year period before this lawsuit was filed.[52] The Court should do the same here; it can address any remaining questions about the scope of the claim at later procedural stages. If the Court does consider Wyndham's arguments, it should reject them because the face of the FAC does not affirmatively show that **any portion** of T.W.'s claims are

[42] *D.H. I*, 2024 WL 3494375, at *4
[43] *Doe A.M.L.*, 2023 U.S. Dist. LEXIS 229694, at *17.
[44] *B.M.*, 2020 WL 4368214, at *6.
[45] *Doe (C.M.S.)*, 2025 WL 824369, at *17.
[46] *T.S.* 2024 U.S. Dist. LEXIS 151324, at *10.
[47] *E.B*, 2023 U.S. Dist. LEXIS 231401.
[48] *T.E.*, 2024 U.S. Dist. LEXIS 21482, at *2.
[49] *Doe (T.W.)*, 2025 U.S. Dist. LEXIS 68737, at *25
[50] *Doe A.R.J.*, 2024 U.S. Dist. LEXIS 156829.
[51] *Doe (A.M.G.)*, 2025 WL 725268, at *9.
[52] *Doe K.R. I*, 2024 WL 2955728, at *4; *Doe (S.A.S.)*, 2024 WL 3276417, at *13.

time barred given the application of the continuing violation doctrine and the potential application of equitable tolling and the discovery rule.[53]

## CONCLUSION

T.W. therefore respectfully requests that the Court deny Wyndham's motion to dismiss the FAC.

Respectfully submitted,

PROVOST UMPHREY LAW FIRM, L.L.P.
Guy Fisher (pro hac vice)
Bryan O. Blevins, Jr. (pro hac vice)
350 Pine Street, Suite 1100
Beaumont, TX 77701
(409) 835-6000
gfisher@pulf.com
bblevins@pulf.com

*/s/ E. Douglas Richards*
E. Douglas Richards
401 Lewis Hargett Circle, Suite 210
Lexington, Kentucky 40503
(859) 229-5851
edrichards714@yahoo.com

Michael Hamilton (pro hac vice)
PROVOST UMPHREY LAW FIRM, LLP
420 Hillsboro Pike, #303
Nashville, TN 37215
(615) 297-1932
mhamilton@pulf.com

Annie McAdams (pro hac vice)
ANNIE MCADAMS PC
2900 North Loop West, Suite. 1130
Houston, Texas 77092
(713) 785-6262
annie@mcadamspc.com
ATTORNEYS FOR PLAINTIFF

---

[53] *See A.M.G. v. Red Roof Inns, Inc.*, 2:23-cv-04195, 2025 U.S. Dist. LEXIS 32468, *25 (S.D. Ohio 2025) (recognizing continuing violation doctrine applies to TVPRA claims); *Doe (H.E.W.)*, 2025 U.S. Dist. LEXIS 19682, at *42 (recognizing that question about application of equitable tolling doctrine prevented dismissal based on the statute of limitations).

**CERTIFICATE OF SERVICE**

I certify that this document was filed on April 24, 2025, using the Court's CM/ECF system which will send notification of this filing to all counsel of record.

 */s/ E. Douglas Richards*
Counsel for Plaintiff