UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| JANE DOE (T.W.), AN INDIVIDUAL,<br><br>Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS AND RESORTS, INC.; WYNDHAM HOTEL GROUP, LLC; SUPER 8 WORLDWIDE, INC.; VIDHI, LLC; RED LION HOTELS CORPORATION; SONESTA INTERNATIONAL HOTELS CORPORATION; MATA PITA, INC. D/B/A AMERICA'S BEST VALUE INN; VHGI FRANCHISING, INC.; and VHGI, INC.<br><br>Defendants. | CIVIL ACTION NO: 5:24-cv-00008-BJB-LLK |

## RESPONSE TO THE MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OF DEFENDANT MATA PITA, INC.

Plaintiff Jane Doe (T.W.) submits this response to the Motion to Dismiss the First Amended Complaint ("FAC") filed by Defendant Mata Pita, Inc. ("Mata Pita")

### INTRODUCTION

T.W. is a victim of sex trafficking who filed this lawsuit under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581, *et seq.*, which creates a civil remedy against businesses that—while not criminally liable for sex trafficking—benefit from facilitating it. *See* 18 U.S.C. § 1595(a). In response to T.W.'s Original Complaint, Mata Pita and other Defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(6). After a telephonic hearing, the Court granted Defendants' motions but gave T.W. leave to amend. (ECF No. 70) On

1

March 21, 2025, T.W. filed the First Amended Complaint ("FAC") and added many new allegations responding to issues that the Court raised at the 12(b)(6) hearing.

Despite the significantly expanded allegations, Mata Pita asks the Court to dismiss the FAC. But Mata Pita's arguments are based on an unduly narrow interpretation of § 1595(a) that would collapse the distinction between criminal liability and civil liability and undermine Congressional intent to impose liability against those who **profit** by facilitating sex trafficking, as well as those who perpetrate sex trafficking.

## SUMMARY OF ALLEGATIONS

T.W. first met her trafficker in 2011 as a minor.  (ECF No. 83 ¶ 22). He lured her to a hotel under false pretenses, and then required her to engage in commercial sex for his financial benefit. (*Id.* ¶ 23). He used threats, physical violence, forced drugging, isolation, and financial and emotional dependence to control T.W. for a period of several years, lasting until she escaped in October 2014. (*Id.* ¶¶ 23-27). While T.W. was being trafficked, she had no permanent residence; her trafficker moved her around between different hotels. (*Id.* ¶ 28). He carefully selected hotels where it was easy to attract business and where hotel staff made it easier for him to operate. (*Id.* ¶ 29). He brought her back to the same hotels time and again over this period of more than three years. (*Id.* ¶ 29). T.W.'s trafficker had a standard operating procedure; thus, the signs associated with T.W.'s trafficking were persistent across hotels and across time. (*Id.* ¶ 30).

One of the hotels that T.W.'s trafficker favored was the ABV Inn Paducah, where he repeatedly and regularly trafficked T.W. (*Id.* ¶¶ 137-139). Mata Pita owned the ABV Inn Paducah and operated it, together with the ABV Inn Brand Defendants, through the America's Best Value Inn system. (*Id.* ¶¶ 13, 172). Mata Pita had an on-the-ground presence and employed the hotel staff. (*Id.* ¶ 173-174). T.W.'s trafficker chose to return to this hotel because it was easy to attract johns

at this location, and the staff did not interfere with the trafficking activity. (*Id.* ¶ 140). While T.W. cannot say exactly how many times she was trafficked here, it was multiple times every year. (*Id.* ¶ 142). They would often stay for several days or even a week at a time. (*Id.* ¶ 143).

T.W.'s trafficker was always the one to check into the hotel, so he repeatedly interacted with the front desk staff. (*Id.* ¶ 144). He always required T.W. to stay in his eyesight, so she would be standing nearby visible. (*Id.* ¶ 145). T.W. often arrived, even for extended stays with few possessions and carried what little she did have in a garbage bag. (*Id.* ¶ 142). T.W.'s trafficker always paid for the rooms with cash or prepaid gift cards, to minimize the risk of being traced. (*Id.* ¶¶ 146-147). Moreover, T.W.'s trafficker most often paid for the rooms on a day-to-day basis, returning to the front desk each day and paying with cash he collected from johns at the hotel. (*Id.* ¶ 148). It appeared to T.W. that her trafficker had a familiar relationship with the hotel staff, and her trafficker discussed the ABV Inn Paducah as a location where he believed that he could operate without interference. (*Id.* ¶ 170).

T.W.'s trafficker restricted her freedom while at the ABV Inn Paducah, always escorted her, and imposed strict rules on her behavior, a pattern that the hotel staff who they repeatedly encountered would have seen. (*Id.* ¶¶ 149, 151). T.W. was trafficked at this hotel as a minor, and the hotel staff repeatedly observed her while she was a minor with her trafficker, who had a daughter who was T.W.'s age. (*Id.* ¶ 40, 142, 153). Moreover, because her trafficker required her to use illegal drugs, T.W. would often be obviously impaired while in common areas of the hotel. (*Id.* ¶ 150). While they were at the Paducah ABV Inn, T.W.'s trafficker would often beat her, causing her to scream and cry so loudly that it is reasonable to assume that it would have been heard by hotel guests and staff at this small 41-room hotel. (*Id.* ¶ 164, 177).

T.W.'s trafficker often used the hotel's internet to post advertisements for her online. (*Id.* ¶ 154). Her trafficker required her to see around 20 johns in a day, and sometimes even more. (*Id.* ¶ 156). This generated heavy vehicle trafficking and heavy foot traffic involving men who were not registered hotel guests. (*Id.* ¶ 155). They would come and go from T.W.'s room after staying for only a brief period. (*Id.* ¶ 157). While T.W. was with these johns, her trafficker would remain in the hallway, parking lot, or other common areas of the hotel. (*Id.* ¶ 158). Then, after each john left, T.W.'s trafficker would immediately come and collect the money, meaning that he visibly walked back and forth to the room to exchange money many times a day. (*Id.* ¶ 163). T.W.'s trafficker also frequently sold drugs out of the hotel's parking lot. (*Id.* ¶ 165).

T.W.'s trafficker would not let housekeeping into the room they rented, even when they stayed for extended periods. (*Id.* ¶ 159). He constantly kept the "do not disturb" sign on the door. (*Id.* ¶ 160). When housekeeping came to the door, T.W.'s trafficker sometimes required T.W. to hand them trash and request that linens and towels be provided at the door. (*Id.* ¶ 161). T.W. often required extra towels and linens given the volume of johns she was seeing; thus, her trafficker frequently went to the front desk to request more. (*Id.* ¶ 162). When they checked out of the Paducah ABV Inn, T.W.'s trafficker did not allow an opportunity to clean up their mess; instead, they would often leave sex paraphernalia visible in the room upon check out. (*Id.* ¶ 166).

All these things happened time after time as T.W. was repeatedly trafficked at this hotel over a period of more than three years. (*Id.* ¶ 167). This was a small hotel with approximately 41 rooms, which made the activity to and from T.W.'s room particularly noticeable. (*Id.* ¶ 177). The hotel staff repeatedly observed this activity while performing ordinary duties. (*Id.* ¶ 175).

At the time that Mata Pita and its hotel staff observed this activity associated with T.W.'s trafficking, there were "red flags" of sex trafficking that were recognized by the hotel industry. (*Id.*

4

¶ 180-241). Government agencies and non-profits devoted significant efforts to educating the hospitality industry, including Mata Pita, on how to identify and respond to sex trafficking in hotels. (*Id.* ¶ 240). Sex traffickers follow well-established patterns, which result in signs, known as "red flags," that can be detected by hotel staff performing their normal job duties. (*Id.* ¶ 242-249). The hotel staff was, or at least should have been, aware of these "red flags" when interacting with and observing T.W. and her trafficker. (*Id.* ¶¶ 245-251). The signs of T.W.'s trafficking matched up with these industry-recognized "red flags" of trafficking. (*Id.* ¶ 256).

Despite observing the obvious signs of T.W.'s trafficking, Mata Pita continued renting rooms to her trafficker on an ongoing basis. (*Id.* ¶ 182). Indeed, they provided him with rooms in his preferred locations and accommodated his requests. (*Id.* ¶ 183). Mata Pita and its hotel staff operated in a way that gave T.W.'s trafficker the understanding that he could continue returning to this hotel time and against without risk of interference. (*Id.* ¶ 184, 187). This resulted in the development of an ongoing business relationship between T.W.'s trafficker and the hotel. (*Id.* ¶ 188, 316). Mata Pita's hotel-operating venture with the ABV Brand Defendants and this business relationship with T.W.'s trafficker facilitated T.W.'s trafficking at the Paducah ABV Inn. (*Id.* ¶ 320). Mata Pita benefited each time the rooms of the Paducah ABV Inn were used to traffic T.W. (*Id.* ¶ 316).

## LEGAL STANDARD

To overcome a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if a plaintiff pleads enough to "raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id.* The court must take a plaintiff's well-pled allegations as true and draw all reasonable inferences for the plaintiff. *Id.* This standard is not demanding, asking that

a plaintiff allege "only enough facts" to "nudge" a claim "across the line from conceivable to plausible." *G.G. v. Salesforce.Com, Inc.,* 76 F.4th 544, 551 (7th Cir. 2023). "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

## ARGUMENT

The TVPRA provides  trafficking victims with a civil remedy against a "perpetrator" of trafficking **or** "whoever knowingly benefits" from "participation in a venture" that the person "knew or should have known" was engaged in sex trafficking (*i.e.*, a "beneficiary"). 18 U.S.C. § 1595(a); *L.H. v. Red Roof Inn, Inc.*, 3:22-CV-625, 2023 WL 5725574, at *6 (W.D. Ky. Sept. 5, 2023)(recognizing distinct nature of beneficiary liability claim). The FAC pleads a claim against Mata Pita as both a beneficiary and a perpetrator.

### I.    T.W. pleads a beneficiary liability claim against Mata Pita.

The beneficiary liability created by § 1595(a) resulted from Congress's decision to expand the scope of civil liability under the TVPRA. *A.B. v. Marriott Int'l, Inc.,* 455 F. Supp. 3d 171, 180-9 (E.D. Pa. 2020). A key distinction from § 1591(a)(2) is that a beneficiary is liable under §1595(a) if it should have known that it was facilitating trafficking, which "evidences Congress's intent to broaden the behavior that can form the basis of civil liability[.]" *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019). This provides victims "a cause of action against those who have profited from their exploitation." *A.B.*, 455 F. Supp. 3d at 181.

Mata Pita's arguments for dismissal rest on a restrictive interpretation of § 1595(a) that clashes with its status as a remedial provision.[1] These arguments also conflict with the overwhelming

---

[1] *See Acevedo v. eXp Realty, LLC,* 713 F. Supp. 3d 740, 765 (C.D. Cal. 2024*)* ("Remedial statutes require broad interpretation. . . .  Sections 1591 and 1595 also employ broad, expansive language."); *see also G.G.,* 76 F.4th at 554.

weight of case law around the country, as courts have regularly denied 12(b)(6) motions based on arguments like those Mata Pita makes here, allowing claims to go forward against both franchisees like Mata Pita and hotel franchisors.[2] The elements of T.W.'s beneficiary claim are that Mata Pita (1) knowingly benefitted (2) from participation in a venture that (3) it knew or should have known

---

[2] *See, e.g., See, e.g., Doe K.R.D. v. Wyndham Hotels & Resorts, Inc.,* 24-8174, 2025 U.S. Dist. LEXIS 76129, at (D.N.J. Apr. 21, 2025); *Doe A v. Seatac Hotels LLC,* No. C24-1270, 2025 U.S. Dist. LEXIS 25543 (W.D. Wash. Feb. 12, 2025); *Doe C.M.S. v. Wyndham Hotels & Resorts, Inc.,* 24-CV-217, 2025 U.S. Dist. LEXIS 47270 (S.D. Cal. Mar. 13, 2025); *S.C. v. Hilton Franchise Holding LLC,* 2024 U.S. Dist. LEXIS 205682 (D. Nevada Nov. 12, 2024); *Doe (L.M.) v. 42 Hotel Raleigh, LLC,* 5:23-CV-235, 2024 U.S. Dist. LEXIS 165863, at *14 (E.D.N.C. Sep. 16, 2024) (*L.M. III*); *Doe M.J.J. v. Wyndham Hotels & Resorts, Inc.,* 24-6490, 2025 U.S. Dist. LEXIS 16608 (D.N.J. Jan. 30, 2025); *Doe K.E.C. v. G6 Hosp., LLC,* No. 1:23-CV-00270, 2024 U.S. Dist. LEXIS 188697 (E.D. Tex. Sep. 24, 2024); *Doe (R.A.) v. Best W. Int'l, Inc.,* No. 2:23-cv-3459, 2024 U.S. Dist. LEXIS 188174 (S.D. Ohio Oct. 16, 2024); *Doe (T.R.S.) v. Wyndham Hotels & Resorts,* No. 2:23-cv-01676, 2025 U.S. Dist. LEXIS 2988 (E.D. Cal. Jan. 6, 2025) (*T.R.S. II*); *Doe (H.E.W.) v. Radisson Hosp., Inc.,* 23-CV-1456, 2025 U.S. Dist. LEXIS 19682 (W.D. Tex. Jan. 21, 2025) adopted by *Doe H.E.W. v. Radisson Hosp., Inc.,* 1:23-CV-1456, 2025 U.S. Dist. LEXIS 30048, *5 (W.D. Tex. Feb. 19, 2025); *Doe A.L.G. v. Wyndham Hotel & Resorts, Inc.,* 1:24-cv-00285-, 2024 U.S. Dist. LEXIS 212384 (W.D. Tex. Nov. 21, 2024); *S.C. v. Hilton Franchise Holding LLC,* 2:23-cv-02037, 2024 U.S. Dist. LEXIS 205682 (D. Nev. Nov. 12, 2024); *Doe v. Scottsdale Inns LLC,* CV-23-00759, 2024 U.S. Dist. LEXIS 199680 (D. Ariz. Nov. 4, 2024) (*D.H. II*); *Doe K.R. v. Choice Hotels,* 6:23-cv-1012, 2024 U.S. Dist. LEXIS 180092 (M.D. Fla. Oct. 2, 2024) (*K.R. II*); *E.B. v. Howard Johnson by Wyndham Newark Airport,* 21-2901, 2023 U.S. Dist. LEXIS 231401(D.N.J. Dec. 29, 2023); *Doe C.J. v. Cotugno,* 23-02973, 2024 U.S. Dist. LEXIS 188925, at *5 (D.N.J. 2024); *Doe (A.R.J.) v. Wyndham Hotels & Resorts, Inc.,* 1:24-cv-00109, 2024 U.S. Dist. LEXIS 156829 (W.D. Tex. Aug. 30, 2024); *T.S. v. Wyndham Hotels & Resorts, Inc.,* No. 23-CV-2530, 2024 U.S. Dist. LEXIS 151324 (D. Minn. Aug. 23, 2024); *Doe K.R. v. Choice Hotels,* 6:23-CV-1012, 2024 WL 2955728 (M.D. Fla. June 12, 2024) (*K.R. I*); *A.H. v. Wynn Las Vegas, LLC,* 2:24-cv-01041, 2024 U.S. Dist. LEXIS 234594 (D. Nev. Dec. 30, 2024); *Jane Doe (S.A.S.) v. ESA P Portfolio, LLC,* 3:23-CV-06038, 2024 WL 3276417 (W.D. Wash. July 2, 2024); *Doe v. Rickey Patel, LLC,* 0:20-60683, 2020 WL 6121939, at *4 (S.D. Fla. Sept. 30, 2020); *Jane Doe (T.D.B.) v. G6 Hospitality,* 9:23-cv-00174, ECF No. 55 (E.D. Tex. Sept. 30, 2024); *C.C. v. Wyndham Hotels & Resorts, Inc.,* No. 2:22-CV-3799, 2024 WL 1347303, at *3 (S.D. Ohio Mar. 29, 2024); *A.C. v. Red Roof, Inc.,* No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio Jun. 16, 2020); *A.W. v. Red Roof Inns, Inc.,* No. 2:21-cv-04934, 2022 U.S. Dist. LEXIS 227437, at *27 (S.D. Ohio 2022); *J.M. v. Choice Hotels Int'l, Inc.,* 222CV00672, 2023 WL 3456619 (E.D. Cal. May 15, 2023) (*J.M. II*); *S.Y. v. Wyndham Hotels & Resorts, Inc.,* 519 F. Supp. 3d 1069 (M.D. Fla. 2021); *M. L. v. craigslist Inc.,* 19-6153, 2020 WL 549490 (W.D. Wash. Sept. 11, 2020).

has engaged in sex trafficking. *M.A.*, 425 F. Supp. 3d at 964. The FAC adequately pleads each element.

### A. T.W. pleads the "knowingly benefit" element.

The FAC plausibly pleads the the "knowingly benefit" element. Mata Pita received increased revenue and other benefits every time T.W.'s trafficker rented a room at the Paducah ABV Inn. (ECF No. 83 ¶¶ 181, 316). There is a consensus in the case law that this suffices.[3]

### B. T.W. pleads Mata Pita's participation in a §1595(a) venture.

Mata Pita's argument that the FAC does not allege its "participation in a venture" related to T.W.'s trafficking at the Paducah ABV Inn is based on a premise that hotel defendants can only be liable as beneficiaries if they shared a common (unlawful) purpose with street-level traffickers and took some act intended to further sex trafficking. This premise is non-starter under the plain text of the statute and the relevant case law. *L.H.*, 2023 WL 5725574, at *8 (recognizing a defendant's participation in a venture based on a continuous business relationship).[4] Indeed, a key feature of beneficiary liability is that § 1595(a) expressly contemplates that a beneficiary defendant can be liable for its participation in a venture that was engaged in sex trafficking if this beneficiary defendant **did not know about this sex trafficking** (but should have). *Cassone v. The Austin Chronicle Corp.*, 1:23-CV-1197, 2024 WL 2031713, at *9 (W.D. Tex. May 7, 2024); *Doe (H.E.W.)*, 2025 U.S. Dist. LEXIS 19682, at *15; *L.M. III*, 2024 U.S. Dist. LEXIS 165863, at *18 (recognizing

---

[3] *See, e.g.*, *L.H.*, 2023 U.S. Dist. LEXIS 156293, at * 32; *G.G.*, 76 F.4th at 565, n. 20 (collecting cases); *Doe (T.W.)*, 2025 U.S. Dist. LEXIS 68737, at *11.

[4] Case law analyzing the text of § 1595(a) has repeatedly recognized that any definition of "participation in a venture" that would require actual knowledge of trafficking cannot be squared with the statute's text. *See G.G.*, 76 F.4th at 559; *A.B.*, 455 F. Supp. 3d at 182; *M.A.*, 425 F. Supp 3d at 969; *A.C. v. Red Roof Inns, Inc.*, 2:19-CV-4965, 2020 WL 3256261, at *6 (S.D. Ohio June 16, 2020); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19cv120, 2020 U.S. Dist. LEXIS 250759, at *7 (E.D. Va. July 22, 2020); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1256 (M.D. Fla. 2020). *J.C.*, 2020 WL 6318707, at *7.

that "a party can 'participate' in a venture by negligently facilitating the venture's activities"). The "participation in a venture" element must be interpreted in harmony with the "should have known" standard in § 1595(a). *See Doe (A.R.J.)*, 2024 U.S. Dist. LEXIS 156829, at *8. Faithful application of § 1595(a)'s text means that a venture need not be a criminal trafficking venture, and a beneficiary's participation need not be participation in trafficking. *M.A.*, 425 F. Supp. 3d at 968-970; *G.G.,* 76 F.4th at 561.

Thus, one way to establish a §1595(a) venture is to show a continuous business relationship between a hotel defendant and traffickers operating at the hotel, which continued even when the hotel knew or should have known they were engaged in sex trafficking. *L.H.,* 2023 WL 5725574, at *10 (allegations of continued commercial dealings that continued despite red flags of trafficking were enough to plead the defendant's participation in a venture).[5] A hotel defendant also participates in a venture under § 1595(a) when it, along with other business entities, engages in a common undertaking operating a hotel and does so in a way that facilitates sex trafficking at that hotel.[6] Mata Pita was part of a § 1595(a) venture through its role in an ongoing business relationship between the Paducah ABV Inn and T.W.'s trafficker.  Mata Pita participated when, despite observing the obvious signs of T.W.'s trafficking, Mata Pita continued renting rooms to her

---

[5] *See also, e.g.*, *Doe (H.E.W),* 2025 U.S. Dist. LEXIS 19682, *30; *Doe (A.R.J.)*, 2024 U.S. Dist. LEXIS 156829, at 22; *L.M. III*, 2024 U.S. Dist. LEXIS 165863, at *14; *E.B.*, 2023 U.S. Dist. LEXIS 231401, at *19; *C.J.,* 2024 U.S. Dist. LEXIS 188925, at *6-7; ; *M.A.*, 425 F. Supp. 3d at 964; *J.C.*, 2020 WL 6318707, at *7.

[6] *Doe (A.R.J.)*, 2024 U.S. Dist. LEXIS 156829, at *23 ("[P]articipation in a hotel-operating venture qualifies as participation in a venture under Section 1595(a) when the hotel operates in a manner that facilitates sex trafficking."); *Doe K.R.*, 2024 WL 2955728, at *8 (recognizing a venture where franchisor-defendant "participated in a commercial venture in operating the [hotel where plaintiff trafficked] with [franchisee); *D.K. v. Red Roof Inns, Inc.,* 2:22-CV-3786, 2024 WL 1332195, at *5 (S.D. Ohio Mar. 28, 2024) (recognizing franchisor's "business venture with the franchisee hotels, and both groups benefitted by renting rooms to traffickers despite having at least constructive knowledge of ongoing trafficking.");  *see also C.T. v. Red Roof Inns, Inc.,* 2:22-CV-834, 2023 WL 3510879, at *4 (M.D. Fla. Mar. 11, 2023).

trafficker on an ongoing basis. (*Id.* ¶ 182). Indeed, Mata Pita provided him with rooms in his preferred locations and accommodated his requests. (*Id.* ¶ 183). Further, Mata Pita and its hotel staff operated in a way that gave T.W.'s trafficker the understanding that he could continue returning to this hotel time and against without risk of interference. (*Id.* ¶ 184, 187). This resulted in the development of an ongoing business relationship between T.W.'s trafficker and the hotel, which in turn facilitated T.W.'s trafficking. (*Id.* ¶ 188, 316). This relationship continued as T.W.'s trafficker repeatedly returned to the Paducah ABV Inn to traffic T.W. over a period **spanning more than three years**. (*Id.* ¶ 137, 139, 182, 186-187). These allegations are more than enough to support an inference that Mata Pita participated in a continuous business relationship that formed between the Paducah ABV Inn and T.W.'s trafficker, which facilitated the trafficking of T.W.

Mata Pita's argument that providing commercial services cannot give rise to a finding of "participation in a venture" is nothing more than another way to argue that this element requires an overt act in support of trafficking. But, for the reasons explained above, courts have consistently rejected interpretations of § 1595(a) that would import criminal liability principles (such as an overt act and common unlawful purpose requirements) into beneficiary liability.[7] Because an overt act requirement presupposes the defendant's actual knowledge of the sex trafficking, it cannot be reconciled with the "should have known" standard.[8] The absence of an overt act requirement does **not** mean, as Mata Pita argues, that T.W. seeks to hold Mata Pita responsible for observing or failing to prevent trafficking. T.W.'s claims against Mata Pita are based on the specific cause of

---

[7] *See, e.g.*, *A.D. II*, 2020 WL 9550005, at *6; *A.C. v. Red Roof Inns, Inc.*, 2:19-CV-4965, 2020 WL 3256261, at *6 (S.D. Ohio June 16, 2020); *Doe (S.C.) v. Sheraton, LLC*, 23CV00451, 2024 WL 1329422, at *2 (D.N.M. Mar. 28, 2024); *Doe K.E.C.*, 2024 U.S. Dist. LEXIS 188697, at *16 .
[8] *L.M. III,* 2024 U.S. Dist. LEXIS 165863, at *14.

action that Congress created under §1595(a), which imposed a duty on defendants to **stop profiting** by **facilitating** what they **should have known** was sex trafficking.[9]

To support its restrictive view of the "participation in a venture" element, Mata Pita also relies on its interpretation of decisions from the Eleventh Circuit. But the narrow interpretation of beneficiary liability adopted by *some*[10] courts within the Eleventh Circuit (and relied on by Mata Pita) is a minority approach that has been questioned by courts both in and outside that circuit.[11] And Mata Pita makes no attempt to show how the view of "participation in a venture" it derives from its interpretation of the Eleventh Circuit case law can be squared with the previous decision of a court in this District, *L.H.*, 2023 WL 5725574, at *8, or with the plain text of §1595(a).

---

[9] *See R.Z. v. Red Roof Inns,* Inc., 2:22-CV-3784, 2024 WL 1332229, at *5 (S.D. Ohio Mar. 28, 2024).

[10] Some uncertainty exists regarding the interpretation of the Eleventh Circuit's published decision in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021). In dismissing claims against hotel franchisors, the Eleventh Circuit expressly limited its analysis to the specific nature of the venture alleged in that case—direct participation in criminal sex trafficking ventures—and acknowledged that the outcome might have differed if the plaintiff had alleged a commercial venture. Some district courts, both within and outside the Eleventh Circuit, have distinguished *Doe* on this basis. *See, e.g., C.T.*, 2023 WL 3510879, at *4 (distinguishing *Doe* on this basis); *L.H.,* 2023 WL 5725574, at * 6. Other courts have also distinguished *Doe #1* because it was based on limited allegation about the franchisors' role in hotel operations; here, by contrast, the ESA Defendants ran on-the-ground operations at the Austin ESA Hotel. *See L.M. III, 2024 U.S. Dist. LEXIS 165863, at *9* (*Doe #1's* reasoning did not bar claim where plaintiff did not merely observe that franchisor "observed" trafficking at hotel but that franchisor's role in operations facilitated that trafficking).

[11] *C.B. v. Naseeb Invs., Inc.*, 1:20-cv-04213, 2024 U.S. Dist. LEXIS 213550, at *59 (N.D. Ga. Sep. 12, 2024) (applying the unpublished decision of the Eleventh Circuit in *K.H. v. Riti, Inc.*, 23-11682, 2024 U.S. App. LEXIS 3127, 2024 WL 505063 (11th Cir. Feb. 9, 2024) but questioning the reasoning of this decision and concluding "[i]n the Court's view, this construction of the statute is far more limiting than its language requires."); *L.M. III*, 2024 U.S. Dist. LEXIS 165863, at *10 (declining to follow the more restrictive interpretation of beneficiary liability set out in the Eleventh Circuit's unpublished opinion in *Riti*); *Acevedo*, 713 F. Supp. 3d at 775 (rejecting narrower interpretation of beneficiary liability in Eleventh Circuit case law in favor of the "more lenient" standard set out by the Southern District of Ohio case law); *K.R. II*, 2024 U.S. Dist. LEXIS 180092 (denying defendant's request to reconsider 12(b)(6) decision in light of *Riti*, noting that it was unpublished and not precedential).

Mata Pita also asserts that the dozens of paragraphs recounting T.W.'s experience being trafficked at the Paducah ABV Inn are opinion, speculation, and conjecture. But Mata Pita's unexplained assertion does not make this so. The FAC describes in detail what T.W. saw, heard, learned, and experienced while being trafficked at the Paducah ABV Inn repeatedly over a period of several years. Mata Pita cites no authority to support its contrary claim, nor does it provide any analysis why T.W. cannot make plausible factual allegations about her trafficker's behavior and her interactions with her trafficker based on her first-hand lived experience. These are factual allegations, and T.W. is entitled to have them credited *and* to have reasonable inferences drawn in her favor.

### C. T.W. pleads the required mens rea.

T.W. adequately pleads that Mata Pita had the required *mens rea* for beneficiary liability. Mata Pita's contrary arguments are based on an overly restrictive view of both the pleading standard and the substantive *mens rea* standard that Congress adopted in § 1595(a). While Mata Pita would require exacting specificity in the *mens rea* allegations, a defendant's state of mind may be pled generally and substantiated through circumstantial information sufficient to meet the plausibility threshold.[12] Moreover, here, that pleading standard is being applied to a *mens rea* element that is broad in two respects. First, it only requires venture-level *mens rea* not victim-specific *mens rea*.[13] Second, it includes broad, negligence-based "should have known" language.[14] Not only is "should

---

[12] *E.B.*, 2023 U.S. Dist. LEXIS 231401 at *25*; *G.G.*, 76 F.4th at 555*; *S.Y.*, 519 F. Supp. 3d at 1081
[13] *Doe (H.E.W.)*, 2025 U.S. Dist. LEXIS 19682, at *18, *20; *Doe A.L.G.*, 2024 U.S. Dist. LEXIS 212384, at *12; *see also G.G.*, 76 F.4th at 557 (explaining why requiring victim-specific knowledge is atextual and contrary to the purposes of the TVPRA); *Doe (T.D.B.) v. G6 Hospitality,* 9:23-cv-00174 ECF No. 55 at pp. 23-24 (E.D. Tex. Sept. 30, 2024) (victim-specific knowledge requirement is contrary to the text and purpose of § 1595(a)).
[14] *M.A.*, 425 F. Supp. 3d at 972 (recognizing this is a negligence-based standard); *K.A. v. 26th St. Hosp., LLP,* 1:23-CV-092, 2024 WL 21124806 (D.N.D. Apr. 15, 2024) (same).

have known" less than actual knowledge, but it is also less than reckless disregard, gross negligence, and even reason to know.[15]

Crediting T.W.'s allegations and drawing reasonable inferences in her favor, the FAC satisfies this broad *mens rea* element. The FAC's allegations are sufficient to support a reasonable inference that Mata Pita knew or should have known its venture at the Paducah ABV Inn was facilitating sex trafficking, including T.W.'s trafficking. Mata Pita's contrary arguments ignore and mischaracterize the FAC' sallegations. Specifically, Mata Pita asserts that renting a room to a repeat customer who pays in cash is not enough to establish actual or constructive knowledge under § 1595(a). But this is **far** from all that T.W. alleges.

To start, T.W. alleges that she was a minor the first several times she was trafficked at the Paducah ABV Inn and that hotel staff had a reasonable opportunity to observe her. (ECF No. 83 153). This is enough to establish that the hotel staff had the required *mens rea* as to her status as a minor. *E.M. v. Tucker Inn Inc.*, 1:22-cv-02559, 2024 U.S. Dist. LEXIS 158236, at *10 (N.D. Ga. July 15, 2024). In addition, T.W. describes numerous recurring signs of her sex trafficking that hotel staff performing their ordinary duties would have observed. T.W.'s terrified and emotional demeanor, her lack of personal possessions, the significant age discrepancy between T.W. and her trafficker, the behavioral rules her trafficker required her to follow, the constant presence of her trafficker monitoring and escorting her, the extremely high volume of johns in and out of T.W.'s room, constant use of the "do not disturb" sign, frequent requests for extra towel, the sex paraphernalia in the room upon check out, her trafficker's drug dealing activity, and loud altercations are far more than **just** use of cash. (ECF No. 83¶¶ 40, 149-166) And the FAC illustrates how these signs match up with industry-recognized "red flags" of trafficking. (*Id.* ¶¶ 245-251).

---

[15] *See* Restatement (Second) of Torts § 12 (contrasting "should know" and "reason to know).

Moreover, these signs were not fleeting but persistent. T.W. alleges that these signs presented repeatedly during her stays at the Paducah ABV Inn, which lasted up to a week at a time and occurred on a regular basis over several years. (*Id.* ¶ 167). Further, T.W. alleges that the hotel staff had a familiar relationship with her trafficker and often provided him rooms in his preferred location, which further supports an inference that Mata Pita had the required *mens rea*. (*Id.* ¶ 183). These allegations collectively support an inference that Mata Pita, at minimum, should have known about the activity associated with K.R.'s trafficking.[16]

At minimum, these allegations support charging Mata Pita with constructive knowledge of T.W.'s trafficking because a hotel defendant exercising ordinary diligence would have detected or deterred this trafficking activity. The "should have known" standard in §1595(a) is a negligence-based standard that is not limited to actual notice but, instead, includes constructive knowledge based on a defendant's failure to exercise ordinary diligence. It is black letter law that "should have known" encompasses what "a person of reasonable prudence and intelligence, or of the superior intelligence of the actor, would ascertain as the fact in question in the performance of their duty to another, or would govern their conduct upon the assumption that such fact exists." Restatement (Second) of Torts § 12. Thus, the "should have known" standard allows for inferences about what a defendant should have known based on the information it had notice of **plus** what reasonable diligence required it to do in response to that information. *Doe A.R.J.*, 2024 U.S. Dist. LEXIS 156829, at *15. A hotel defendant can be charged with constructive knowledge when it failed to respond with reasonable prudence to a known problem in its operations when there are obvious "red flags" of trafficking that would have been detectable or deterred through the exercise

---

[16] *See, e.g., Doe A,* 2025 U.S. Dist. LEXIS 25543, at *10*; T.R.S. II*, 2025 U.S. Dist. LEXIS 2988, at *24; *E.B.,* 2023 U.S. Dist. LEXIS 231401, at *24; *Doe K.E.C.*, 2024 U.S. Dist. LEXIS 188697, at *5.

of reasonable prudence, such as appropriate staff training and implementation and enforcement of appropriate policies.[17] Given (1) Mata Pita's knowledge of the problem of sex trafficking and how to detect it; (2) Mata Pita's knowledge of the heightened risk for trafficking activity at the Paducah ABV Inn; and (3) the match between the signs of T.W.'s trafficking and industry-recognized "red flags" of trafficking, Mata Pita can be charged with constructive knowledge because reasonable diligence did not allow it to continue renting the rooms used for T.W.'s trafficking without at least making further inquiry. (ECF No. 83 ¶¶ 245-251, 256, 274-276, 322).

Mata Pita argues that allegations about a general problem of sex trafficking in the hotel industry are insufficient to establish the *mens rea* required for beneficiary liability, but this is a red herring. As set out above, T.W. does **not** rely on these industry-level allegations as the direct basis for pleading that Mata Pita had the required *mens rea*. But that does not make these allegations irrelevant. These allegations inform the objective-negligence standard embedded in the constructive knowledge analysis. Specifically, they inform both (1) what steps it was reasonable for Mata Pita to take in response to the known problem of sex trafficking; and (2) what Mata Pita *should have known* based on the specific "red flags" associated with T.W.'s trafficking at the Paducah ABV Inn.

## II.   T.W. states a perpetrator claim against Mata Pita.

Indeed, not only does T.W. state a beneficiary liability claim against Mata Pita under § 1595(a), but she also pleads a claim that it is liable as a perpetrator based on violations of § 1591(a)(1) and

---

[17] *See, e.g.*, *L.H.*, 2023 WL 5725574, at *8 (same); *Doe (A.R.J.)*, 2024 U.S. Dist. LEXIS 156829, at *16 (allegations that defendant failed to respond to known problem in its operations and there were obvious signs of plaintiff's sex trafficking supported an inference of constructive knowledge); *M.A.*, 425 F. Supp. 3d at 968 (same); *See, e.g.*, *K.A. v. 26th St. Hosp., LLP*, 1:23-CV-092, 2024 WL 21124806, at *6 (D.N.D. Apr. 15, 2024) (same). (same); *K.R.*, 2024 WL 2955728 at * 8-9 (same); *M. L.*, 2020 WL 6434845, at *3 (same); *G.P. v. Wyndham Hotels & Resorts, Inc.*, 2:22-CV-2682, 2024 WL 1347407, at *6 (S.D. Ohio Mar. 29, 2024) (same).

§ 1591(a)(2). (ECF No. 83 ¶¶ 310-313). Mata Pita does not address this perpetrator claim separately from T.W.'s beneficiary-liability claim, which reflects the fact that Mata Pita's arguments collapse the distinction between criminal and civil liability standards. However, T.W.'s allegations in the FAC satisfy both standards. Under § 1595(a)(1), perpetrator liability applies to those who participate in enumerated trafficking acts—including "harboring"—knowingly or acting with reckless disregard.[18] Under § 1595(a)(2), perpetrator liability applies to those who benefit from participation in a criminal trafficking venture by knowingly assisting or facilitating a violation of § 1591(a)(1). Willful blindness or deliberate ignorance suffices to satisfy the *mens rea* standard for perpetrator liability.[19] The FAC states a claim against Mata Pita under both § 1591(a)(1) and § 1591(a)(2). Mata Pita's staff and management, which had an on-the-ground role at the Paducah ABV Inn, directly interacted with T.W. and her trafficker, and contemporaneously observed many obvious signs of trafficking at the hotel, had knowledge of the trafficking activity or at least were willfully blind to it.  (ECF No. 83 ¶¶ 311); *see Doe K.R.*, 2024 WL 2955728, at *4 (recognizing similar allegations supported inference of *mens rea* for perpetrator liability). Despite its knowledge of, or at least willful blindness to, T.W.'s trafficking, Mata Pita participated in **harboring** T.W. in violation of § 1595(a)(1) by repeatedly renting rooms used for her trafficking. (ECF No. 83 ¶ 312). Courts have found similar allegations sufficient to plead a hotel defendant was engaged in "harboring" in violation of 1591(a)(1).[20] The FAC also alleges that Mata Pita's

---

[18] *Doe K.R.*, 2024 WL 2955728, at *6 (plaintiff stated a claim against hotel under § 1595(a)(1) based on harboring).

[19] *United States v. Unpradit*, 35 F.4th 615, 625 (8th Cir. 2022) (recognizing willful blindness is a way to satisfy *mens rea* requirement under § 1591); *Doe v. MG Freesites, Ltd.*, 7:21-cv-00220, 2024 U.S. Dist. LEXIS 237987, at *42 (N.D. Ala. Dec. 19, 2024) (knowledge can be proven through deliberate ignorance).

[20] *See, e.g.*, *Doe A*, 2025 U.S. Dist. LEXIS 25543, at *13*; K.R.*, 2024 WL 2955728, at *6; *Doe R.A.*, 2024 U.S. Dist. LEXIS 142852, at *18.*

hotel staff knowingly assisted T.W.'s trafficker by renting him rooms on an ongoing basis, providing him with his preferred rooms to make it easier to operate, and creating an understanding that he could operate at the hotel without undue risk of interference. (ECF No 83¶ 313). This is sufficient to allege participation in a criminal venture under 1591(a)(2).[21]

### III.    The Court should not dismiss based on the limitations period.

Civil claims under the TVPRA are subject to a 10-year limitations period from the time "the cause of action arose." 18 U.S.C. § 1595(c), and the FAC clearly alleges that T.W. filed this lawsuit within 10 years of the end of her trafficking at the Paducah ABV Inn. The Sixth Circuit has recognized that Rule 12(b)(6) is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). The statute of limitations is an affirmative defense, and a plaintiff need not plead around it. *Id.* Only when the allegations **affirmatively show** a claim is time barred is such dismissal appropriate. Nonetheless, Mata Pita continues to ask for **partial** dismissal of T.W.'s claims based on the limitations period. The Court should reject this argument for several reasons.

To start, because Mata Pita concedes that **at least part** of T.W.'s claim is timely, the Court need not go any further at this preliminary pleading stage. A 12(b)(6) motion can be used to seek dismissal of part of a complaint—by seeking dismissal of only some **claims** but not others. However, "Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). This follows from the plain text of Fed. R. Civ. P. 12(b)(6). While Fed. R. Civ. P. 56 explicitly authorizes a party to seek

---

[21] *See J.M. II*, 2023 WL 3456619, at *2; *Ricchio v. McLean,* 853 F.3d 553, 556 (1st Cir. 2017) (recognizing claim under § 1591(a) against hotel operator); *See Doe R.A.*, 2024 U.S. Dist. LEXIS 142852, at *18; *Doe (A.R.J.)*, 2024 U.S. Dist. LEXIS 156829, at *23-*24.

summary judgment on part of a claim, Fed. R. Civ. P. 12(b)(6) has no corresponding provision. Courts have applied this rule when denying a defendant's request to carve out certain portions of a claim as barred by the statute of limitations. *See, e.g.*, *Gonzalzles v. Ferrara Candy Co.*, 23 C 13838, 2024 U.S. Dist. LEXIS 26317, *4 (N.D. Ill. Feb. 15, 2024). In TVPRA cases, courts have consistently declined to find that **part** of a claim is untimely when at least some of the trafficking happened in the 10-year period before suit was filed.[22] The Court should do the same here; any remaining questions about the scope of the claim can be addressed at later procedural stages

That said, if the Court does consider Mata Pita's arguments, it should reject them because the face of the FAC does not affirmatively show that **any portion** of T.W.'s claims are time barred. **First**, the continuing violation doctrine prevents dismissal of any portion of Plaintiff's claims. The continuing violation doctrine is relevant here because it establishes Plaintiff's *entire* claim accrued at once; thus, as long as a portion of that claim falls within the limitations period, the entire claim is timely. *See A.M.G. v. Red Roof Inns, Inc.*, 2:23-cv-04195, 2025 U.S. Dist. LEXIS 32468, *25 (S.D. Ohio 2025). The continuing violation doctrine applies when it would "be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *See Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) (applying doctrine to a claim under Section 1983). And this doctrine applies to beneficiary claims under the TVPRA.[23]

---

[22] *Doe K.R. I*, 2024 WL 2955728, at *4; *Doe (S.A.S.)*, 2024 WL 3276417, at *13.

[23] *A.B. v. Interstate Mgmt. Co., LLC*, No. 3:23-cv-00388-IM, 2024 U.S. Dist. LEXIS 234625, at *11 (D. Or. Dec. 31, 2024) (recognizing application of this doctrine); *A.M.G.*, 2025 U.S. Dist. LEXIS 32468, at *25 ("TVPRA claims are precisely the sort to which the continuing violation doctrine should apply, such that the statute of limitations does not begin to run until the pattern of wrongful conduct has concluded.") (internal quotations omitted); *see also J.M. I*, 2022 WL 10626493, at *6 (applying doctrine to TVPRA claim); *Doe K.R.*, 2024 WL 2955728, at *3-*4 (declining to dismiss claim where this doctrine may apply to TVPRA claim).

Moreover, the potential application of the doctrine of equitable tolling also makes dismissing any portion of T.R.'s claims based on the pleadings unwarranted.[24] Equitable tolling justifies tolling the statute of limitations under federal statutes when: (1) the plaintiff has been pursuing her rights diligently; but (2) some extraordinary circumstances interfered with filing suit.[25] In applying equitable tolling, the issue to be resolved is when it would be fair for the limitations period to begin running.[26] When the doctrine of equitable tolling applies, it simply stops the clock (i.e., the limitations period) from running while the extraordinary circumstances exist.[27] The FAC describes how for more than three years T.W.—who was only a teenager—was subjected to physical violence, psychological abuse, and other severe forms of coercion. (ECF No. 83¶¶ 23-27). At minimum, these allegations raise a question about whether T.W. faced extraordinary circumstances that interfered with her ability to discover and pursue her legal rights and, if so, when these circumstances ended so that the statute of limitations started running.[28] Whether a trafficking

---

[24] *See Duke v. Cmty. Health Connections, Inc.,* 355 F. Supp. 3d 49, 57 (D. Mass. 2019) (recognizing 12(b)(6) dismissal based on limitations is generally unwarranted unless it is clear that the claim is not timely under the discovery rule or equitable tolling).

[25] *Chavez v. Carranza,* 559 F.3d 486, 494 (6th Cir. 2009); *Arce v. Garcia,* 434 F.3d 1254, 1261 (11th Cir. 2006).

[26] *Arce,* 434 F.3d at 1261 ("The doctrine of equitable tolling allows a court to toll the statute of limitations until such a time that the court determines would have been fair for the statute of limitations to begin running on the plaintiff's claims.").

[27] *Knight v. Schofield,* 292 F.3d 709, 712 (11th Cir. 2002) ("Tolling means just what it says -- the clock is stopped while tolling is in effect."); *United States v. Ibarra,* 502 U.S. 1, 4 n. 2 (1991) ("Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again ... the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped."); *Checo v. Shinseki,* 748 F.3d 1373, 1379 (Fed. Cir. 2014); *Cf. Duke v. Cmty. Health Connections, Inc.,* 355 F. Supp. 3d 49, 57 (D. Mass. 2019) ("[I]f Plaintiff is entitled to equitable tolling here, the clock would only have started to run on his claim when he overcame his addiction.").

[28] *Doe K.R. I,* 2024 WL 2955728, at *3-*4 (recognizing potential application of equitable tolling in a trafficking case); *Hongxia Wang v. Enlander,* 17 CIV. 4932, 2018 WL 1276854, at *3 (S.D.N.Y. Mar. 6, 2018) (same); *Schneider v. OSG, LLC,* 22CV7686, 2024 WL 1308690, at *5, n3 (E.D.N.Y. Mar. 27, 2024) (same).

victim's TVPRA claims should be tolled "involves fact questions that are better resolved at summary judgment." *Doe (H.E.W.)*, 2025 U.S. Dist. LEXIS 19682, at *43.

Finally, questions about the possible application of the discovery rule also preclude dismissal of any portion of T.W.'s claims based on the statute of limitations. "The discovery rule seeks to protect plaintiffs who, through no fault of their own, lacked the information to bring a claim." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022). This doctrine "protects plaintiffs who are ... struggling to uncover the underlying cause of their injuries from having their claims time-barred before they could reasonably be expected to bring suit." *Id.* (internal quotations and citations omitted). Application of the discovery rule must recognize that "discovering that a defendant caused an injury is part of discovering the injury." *Id.* at 702. The FAC raises a question about whether, *at least* during the time that T.W.'s. was trafficked, which did not end more than ten years before she filed this lawsuit, the exploitation, abuse, and control she endured while still a teenager prevented her from discovering her injuries and their legal cause.

## CONCLUSION

For these reasons, T.W. respectfully requests that the Court deny Mata Pita's motion to dismiss the FAC.

Respectfully submitted,

PROVOST UMPHREY LAW FIRM, L.L.P.
Guy Fisher (pro hac vice)
Bryan O. Blevins, Jr. (pro hac vice)
350 Pine Street, Suite 1100
Beaumont, TX 77701
(409) 835-6000
gfisher@pulf.com
bblevins@pulf.com

*/s/ E. Douglas Richards*
E. Douglas Richards
401 Lewis Hargett Circle, Suite 210
Lexington, Kentucky 40503

(859) 229-5851
edrichards714@yahoo.com

Michael Hamilton (pro hac vice)
PROVOST UMPHREY LAW FIRM, LLP
420 Hillsboro Pike, #303
Nashville, TN 37215
(615) 297-1932
mhamilton@pulf.com

Annie McAdams (pro hac vice)
ANNIE MCADAMS PC
2900 North Loop West, Suite. 1130
Houston, Texas 77092
(713) 785-6262
annie@mcadamspc.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that this document was filed on April 24, 2025, using the Court's CM/ECF system which will send notification of this filing to all counsel of record.

_/s/ E. Douglas Richards_
Counsel for Plaintiff